ACCEPTED
01-14-00906-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/20/2015 7:28:25 PM
CHRISTOPHER PRINE
CLERK

## Cause No. 01-14-00906-CV

_____

**IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/20/2015 7:28:25 PM
CHRISTOPHER A. PRINE
Clerk

**JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC,**

*Appellants,*

**v.**

**THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC.,**

*Appellees.*

Appeal from the 269th District Court of Harris County, Texas
Cause No. 2012-35162

**BRIEF OF APPELLANTS**

Douglas Pritchett, Jr.
Texas Bar No. 24007877
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, Texas 77002
(713) 222-2323 (Telephone)
(713) 222-2226 (Facsimile)

BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
Lori Hood
Texas Bar No. 09943430
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 (Telephone)
(713) 650-9701 (Facsimile)

**ATTORNEYS FOR APPELLANTS
JOHN MOORE SERVICES, INC. AND
JOHN MOORE RENOVATION, LLC**

*Oral Argument Requested*

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to Texas Rule of Appellate Procedure 38.1(a), the following is a list of all parties and the names and addresses of all counsel:

**I.     APPELLANTS:**

John Moore Services, Inc.
John Moore Renovation, LLC

*Counsel for Appellants***:**

Douglas Pritchett, Jr.
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 222-2323
Facsimile: (713) 222-2226

Lori Hood
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 (Telephone)
(713) 650-9701 (Facsimile)

**II. APPELLEES:**

The Better Business Bureau of Metropolitan Houston, Inc.

*Counsel for Appellees***:**

Lauren B. Harris
Jeffrey R. Elkin
Susan K. Hellinger
M. Harris Stamey
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6624
Facsimile: (713) 226-6224

# TABLE OF CONTENTS

|  | **Page** |
|---|---|
| IDENTITY OF PARTIES AND COUNSEL | i |
| TABLE OF AUTHORITIES | v |
| STATEMENT OF THE CASE | vii |
| ISSUES PRESENTED | viii |
| STATEMENT OF FACTS | 1 |
| SUMMARY OF THE ARGUMENT | 5 |
| ARGUMENT AND AUTHORITIES | 6 |

I. THE HOUSTON BETTER BUSINESS BUREAU DID NOT ESTABLISH ENTITLEMENT TO ATTORNEYS' FEES AND SANCTIONS ..... 6

    A. Except in the Most Simple of Cases, Documentation Is the Only Practical Means of Determining the Reasonableness of Fees ..... 6

    B. The Redactions and Bulk Billing in the Houston BBB's Invoices Result in Legally Insufficient Evidence of Attorneys' Fees ..... 10

        1. The Invoices Did Not Specifically Identify the Services Performed ..... 11

        2. The Invoices Did Not Specifically Identify the Costs of Performing Various Tasks ..... 15

    C. The Expert's *Ipse Dixit* Is Not Legally Sufficient Evidence of Necessity and Reasonableness ..... 16

II. THERE SHOULD BE A NEW TRIAL CONSIDERING THE PROPRIETY OF ATTORNEYS' FEES IN LIGHT OF JOHN MOORE'S REMAINING CLAIMS ............................................................20

    A. John Moore's Antitrust Claims Should Have Been Heard in the Same Proceeding as Its Earlier Claims ........................................................22

    B. The Antitrust Claims Were (and Remain) Legally Viable........................................................23

    C. The Splitting of John Moore's Claims Creates in Unacceptable Risk of Inconsistent Adjudications ...................................................24

PRAYER ........................................................................................26

CERTIFICATE OF COMPLIANCE..............................................28

CERTIFICATE OF SERVICE .......................................................28

APPENDIX....................................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Burroughs Wellcome Co. v. Crye*,
907 S.W.2d 497 (Tex. 1995) ................................................................17, 18

*Burrow v. Arce*,
997 S.W.2d 229 (Tex. 1999) ......................................................................19

*City of Laredo v. Montano*,
414 S.W.3d 731 (Tex. 2013) ...........................................................8, 11, 15

*City of San Antonio v. Pollack*,
284 S.W.3d 809 (Tex. 2009) ......................................................................19

*Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*,
136 S.W.3d 227 (Tex. 2004) ......................................................................16

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex. 1985) ................................................................20, 21

*El Apple I, Ltd. v. Olivas*,
370 S.W.3d 757 (Tex. 2012) .................................. 6, 7, 8, 10, 11, 12, 14, 15, 16

*Elizondo v. Krist*,
415 S.W.3d 259 (Tex. 2014) ......................................................................19

*In re Ethyl Corp.*,
975 S.W.2d 606 (Tex. 1998) ......................................................................22

*Finger v. Southern Refrigeration Servs.*,
881 S.W.2d 890 (Tex. App.—Houston [1st Dist.] 1994, writ
denied)........................................................................................................23

*Lone Star Ford, Inc. v. McCormick*,
838 S.W.2d 734 (Tex. App.—Houston [1st Dist.] 1992, writ
denied)........................................................................................................25

*Lone Star Gas Co. v. The Rd. Comm'n of Tex.*,
767 S.W.2d 709 (Tex. 1989) ........................................................................6

*Long v. Griffin*,
    442 S.W.3d 253 (Tex. 2014) ...................................................................11, 12

*Maritime Overseas Corp. v. Ellis*,
    971 S.W.2d 402 (Tex. 1998) ........................................................................16

*Natural Gas Pipeline Co. of Am. v. Justiss*,
    397 S.W.3d 150 (Tex. 2012) ........................................................................16

*Schaefer v. Tex. Empl. Ins. Ass'n*,
    612 S.W.2d 199 (Tex. 1980) ...................................................................16, 17

*Van Dyke v. Boswell, O'Toole, Davis & Pickering*,
    697 S.W.2d 381 (Tex. 1985) ........................................................................23

*Volkswagen of Am., Inc. v. Ramirez*,
    159 S.W.3d 897 (Tex. 2004) ........................................................................20

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 27.005(a) ...............................................................4

TEX. CIV. PRAC. & REM. CODE § 27.009(a) .............................................................24

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) .......................................................4

TEX. CIV. PRAC. & REM. CODE § 51.014(b) (effective June 14, 2013)................1, 23

**Rules**

TEX. R. APP. P. 43.3 ..................................................................................................6

# STATEMENT OF THE CASE

*Nature of the case:*    John Moore brought this case alleging various torts and attempted to amend its petition to add several additional claims. CR4. This appeal arises out of a judgment for attorneys' fees awarded to the Better Business Bureau of Metropolitan Houston (the "Houston BBB"). CR115.

*Course of Proceedings:*    After the court of appeals reversed the trial court's denial of the Houston BBB's motion to dismiss, the Houston BBB requested attorneys' fees, costs, and sanctions. App. E; Supp. CR _. The question was tried to a jury, and the jury returned a verdict in favor of the Houston BBB. CR108; App.N.

*Disposition:*    The trial court rendered judgment on the jury's verdict and awarded sanctions against John Moore. CR115; App.O.

# ISSUES PRESENTED

1.     The Texas Supreme Court requires evidence of specific tasks and of the time required to complete them in order to support a finding that fees are reasonable and necessary.  The Appellees' evidence obscures the tasks performed and the time required to perform them, requiring the jury to rely on the *ipse dixit* of an interested witness as to reasonableness and necessity.   Is Appellees' evidence legally sufficient?

2.     A finding that fees are reasonable and necessary depends on the results obtained.  Through the actions of the Appellees in opposing the joinder of claims (either by amendment or by consolidation), the jury was not presented with the entire dispute (namely, the antitrust claims) and could not consider the ultimate results obtained.  Must a new trial be ordered to allow the jury to consider the measure of overall success Appellee has enjoyed?

# STATEMENT OF FACTS

This is an appeal of the attorneys' fees judgment in the first lawsuit (Cause No. 12-35162) filed by John Moore. App. A; Supp. CR_ (Original Petition).[1] On September 27, 2013, while the interlocutory appeal brought by The Better Business Bureau of Metropolitan Houston, Inc. (the "Houston BBB") was pending, John Moore filed a first amended petition. CR4. The amended petition joined several new parties and new claims (significantly, claims that the Houston BBB's conduct was a restraint on trade or an attempt to monopolize). *Id.* John Moore requested and received leave to file this petition, which the Houston BBB opposed. App. B; Supp. CR _ (Order of October 11, 2013). The order granting leave to file stated that no further amendments were permitted absent leave of court. *Id.*

After the trial court granted leave to file, the Houston BBB moved to strike the amended petition. CR43. The Houston BBB argued, for the first time, that an amendment to the interlocutory appeal statute required that all proceedings be stayed. CR43 (citing TEX. CIV. PRAC. & REM. CODE § 51.014(b) (effective June 14, 2013)). On November 1, 2013, the trial court struck the amended petition and signed an order staying proceedings. App. C; Supp. CR_ (Order of November 1, 2013).

---

[1] The district clerk has indicated that the Supplemental Record is expected to be completed in a matter of days. In order to ensure the timely filing of its brief, John Moore has included key items in the Appendix.

1

John Moore preserved its claims from the amended petition by filing a second lawsuit (Cause No. 13-76215). App. M; Supp. CR_ (Order of August 11, 2014). John Moore requested that the second lawsuit be heard by the 269th District Court, which was also the court with jurisdiction over the first lawsuit. *Id.* This second lawsuit was also challenged by the Houston BBB under the Anti-SLAPP statute. *Id.*

After the mandate issued on the interlocutory appeal, the Houston BBB filed a motion seeking attorneys fees, costs, expenses and sanctions in the first lawsuit. App. E; Supp. CR_ (Motion for Award of Attorneys' Fees, Court Costs, Expenses and Sanctions). The motion was supported by an affidavit by attorney Jeffrey Elkin. *Id.*; Supp. CR_ (Exhibit C). After the hearing on the motion was set, John Moore responded, arguing that it was entitled to a jury trial on the question of the necessity and reasonableness of the fees. App. G, H; Supp. CR_ (Order of June 4, 2014), _ (Response and Objection to Defendant's Motion). The response (which was filed with leave of court) controverted the Houston BBB's affidavit with an affidavit by attorney Lori Hood. App. H; Supp. CR_ (Exhibit A); 2RR18. John Moore also moved for consolidation, but the trial court did not rule as the issue had not been set for hearing and was premature. 2RR30-31. The court requested that John Moore raise the consolidation issue again after the court had ruled on the merits of the motion to dismiss in the second lawsuit. 2RR31.

2

The attorneys' fees were tried before a jury within a month of these rulings. CR108. The Houston BBB offered several exhibits, which were admitted into evidence, including a set of heavily redacted invoices and several summaries. DX3 & 4-9. It also offered the expert testimony of Jeffrey Elkin, who opined that the attorneys' fee amounts in DX3 were reasonable and necessary based on his review and knowledge of the specific details contained in the un-redacted invoices. 3RR165, 167-74, 183, 198.

The jury found attorneys fees in the following amounts:

a.  For representation in the trial court before and during Houston BBB's original interlocutory appeal.

    Answer: $106,369.28

b.  For representation in the Court of Appeals for the original interlocutory appeal.

    Answer: $81,360.80

c.  For representation at the petition for review stage to the Supreme Court of Texas for the original interlocutory appeal.

    Answer: $37,982.08

d.  For representation in the trial court after the original interlocutory appeal was decided.

    Answer: $24,289.28

CR111-12; App.N.

The Houston BBB moved for judgment on August 4, 2014, and the motion was heard four days later. App. J; Supp. CR_ (Motion for Entry of Final Judgment); *but see* HARRIS CTY L. R. 3.3.3 (requiring 10 days notice). Meanwhile, the motion to dismiss in the second lawsuit had been overruled by operation of law. TEX. CIV. PRAC. & REM. CODE § 27.005(a) (30 days after June 27, 2014 hearing). Because John Moore believed that the motion to dismiss had been denied, it included a motion to consolidate in the response to the motion for judgment and set the motion for hearing at the same time as the Houston BBB's motion for judgment. App. K & L; Supp. CR_ (Motion to Consolidate), _ (Notice of Hearing). John Moore also asked that the jury's verdict be disregarded. *Id.*

The trial court refused to hear the motion to consolidate or the motion to disregard. 5RR22. The judgment was signed at the hearing on Friday, August 8, 2014. CR115. Meanwhile, a notice of interlocutory appeal under TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) was filed in the second lawsuit six days later, on Thursday, August 14, 2014.

## SUMMARY OF THE ARGUMENT

The Houston BBB seeks recovery of attorneys' fees, which it cannot recover for two alternative reasons: (1) its evidence is not legally sufficient to support the verdict or judgment or (2) the issue should not have been presented to the jury without consideration of all of John Moore's claims.

The Texas Supreme Court has ruled that attorneys' fees evidence in all but the simplest of cases must be sufficiently detailed to allow the jury to meaningfully evaluate the application. At a minimum, the evidence must identify the specific tasks undertaken and quantify the time expended on those tasks. The Houston BBB has obscured both of these essential elements and attempted to replace them with generalized categorization of fees, which is an approach already rejected by the Supreme Court. Furthermore, the expert opinion offered by the Houston BBB is no evidence because it is based on the assumption that the invoices would show that the fees were reasonable and necessary, an assumption not supported by the evidence.

Alternatively, a new trial is necessary in which the jury will be presented with the merits of John Moore's antitrust claims as well as the Houston BBB's claim for attorneys' fees on the claims that have been dismissed. Only then could the jury and court determine whether the fees are reasonable and necessary as well as just and equitable, respectively.

The standard of review in this case is one of legal sufficiency because John Moore argued that there was no competent evidence to support the jury's findings. Therefore, the correct disposition would be for this Court to render the judgment that the trial court should have rendered. TEX. R. APP. P. 43.3; *Lone Star Gas Co. v. The Rd. Comm'n of Tex.*, 767 S.W.2d 709, 710 (Tex. 1989) (when there is no suggestion that the evidence is not fully developed in the trial court, a remand would serve no purpose).

## I. THE HOUSTON BETTER BUSINESS BUREAU DID NOT ESTABLISH ENTITLEMENT TO ATTORNEYS' FEES AND SANCTIONS.

The Houston BBB concedes that the jury could not determine whether the Houston BBB attorneys' fees were reasonable without looking at the invoices submitted by Porter Hedges. 3RR165. Therefore, if the invoices are legally inadequate, so too is the Houston BBB's evidence.

### A. Except in the Most Simple of Cases, Documentation Is the Only Practical Means of Determining the Reasonableness of Fees.

The Houston BBB has the burden to document the hours spent on a task and the value of those hours if it seeks to recover attorneys' fees. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). The Texas Supreme Court considered whether detailed billing invoices are necessary to support an award of attorneys' fees or whether an attorney's affidavit containing general assurances that the fees

6

were reasonable and necessary may support an award of fees. *Id.* at 761-62. Rejecting the plaintiff's argument that his fees could be supported by a mere affidavit, the Court stated that "a trial court should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees." *Id.* at 762.

The Court concluded that "[w]hile Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, **the requirement has merit in contested cases under the lodestar approach**." *Id.* (emphasis added). As the Houston BBB seeks attorneys' fees in this contested case, it should provide adequately detailed records to support its claim.

Indeed, the Houston BBB concedes that the jury may best determine reasonableness by studying the billing invoices.

> Q: Where would be the best place for the jury to look to understand exactly what work was done to incur those fees?
>
> A: The invoices themselves. The monthly invoices would be the most detailed, and then the summaries try to break it up to be a little more easy to read and understand. But the detail is in the invoices.

3RR165 (referencing DX3). Thus, the only place to find what specific work the Houston BBB's attorneys performed would be in the billing invoices. The affidavit and the summaries deal only with generalities. *See infra* p. 10.

Few attorneys have such a memory that they can retain the details of what tasks were performed in even a routine case lasting more than a few days.

7

Therefore, it is necessary, "in all but the simplest cases," to keep contemporaneous records of the time spent in order to provide the required detail showing the nature of the work, who performed it, the rates, when it was performed, and the amount of time spent on the task. *El Apple I*, 370 S.W.3d at 763. This case certainly did not qualify as the most simple of cases.

Here, the Houston BBB kept billing records, but excuses its heavy redaction and the unintelligibility of those records based on privilege and confidentiality concerns. 4RR9, 28; DX3. But attorneys redact substance from their invoices at their own risk.

The Supreme Court admonished attorneys who expect to seek fees to anticipate the need and "document their time much **as they would for their own clients**." *El Apple I*, 370 S.W.3d at 763 (emphasis added). The Houston BBB should not expect its attorneys' fees  to be paid by John Moore with less information than it has demanded from its attorneys. This is a goose gander problem. Indeed, the Supreme Court requires that "[a] similar effort should be made when an adversary is asked to pay instead of the client." *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). Yet, an order requiring John Moore to pay its fees on faith is precisely what the Houston BBB expects.

Indeed, good practice confirms the Supreme Court's direction. Attorneys who seek to recover fees avoid including privileged information in the entries from the start.

> It's always been my practice to write my time so that I can show it to anybody. I oftentimes ask jurors to reimburse me or reimburse my client for attorneys' fees, and I want them to be able to see what I've done.

4RR60. The Houston BBB's own attorneys would never expect their client to pay an invoice that was redacted.

> Mr. Elkin: Now, the invoice that went to the BBB didn't have any redactions. . . . The one to the BBB showed completely what the work was done so they could review it and make sure that they thought it was appropriate.

3RR134. Yet the Houston BBB expected the jury to "make sure" that the fees were appropriate without this information.

The Houston BBB attempted to meet its burden of proof by providing billing records whose meaning was obscured by heavy redaction. It attempted to make up for the unintelligibility of the records by offering the testimony of the billing attorney, who stated that he reviewed the un-redacted records and that the fees for the tasks recorded on the invoices were reasonable and necessary. 3RR198. The question here is whether legally insufficient invoices may be bolstered by the *ipse dixit* of an expert witness. The answer is that they cannot. *See infra* pp. 14-17.

9

Good practice and the direction of the Supreme Court agree that attorneys should anticipate the need to use their invoices as evidence. Therefore, they should keep their time records in such a way that their meaning will not be obscured by the redaction of substantive information in order to protect privilege. The Houston BBB did not satisfy this standard.

**B.**     **The Redactions and Bulk Billing in the Houston BBB's Invoices Result in Legally Insufficient Evidence of Attorneys' Fees.**

A major problem that attorneys' fees evidence may have is that it can lack the "specificity" necessary to decide whether the fee is reasonable and necessary. *El Apple I*, 370 S.W.3d at 763. The Supreme Court has defined the "minimum" evidence necessary to support a finding that attorneys' fees are reasonable and necessary:

1.     documentation of the services performed;

2.     who performed them;

3.     at what hourly rate;

4.     when they were performed; and

5.     how much time the work required.

*Id.* at 764. The Houston BBB's redactions prevent the jury from evaluating what specific tasks were performed (requirement #1). The Houston BBB's bulk billing prevent the jury from determining how much time was devoted to specific tasks (requirement #5).

10

### 1. The Invoices Did Not Specifically Identify the Services Performed.

One of the minimum requirements established by the Texas Supreme Court for the recovery of attorneys' fees is that there must be documentation of the specific services that were performed. *El Apple I*, 370 S.W.3d at 764. The Court emphasized that general statements are insufficient; the party "must provide evidence of the time expended **on specific tasks** to enable the fact finder to meaningfully review the fee application." *Long v. Griffin*, 442 S.W.3d 253 (Tex. 2014) (emphasis added).

In *Long v. Griffin*, the plaintiff brought two claims that could support an award of attorneys' fees: a contract claim and a declaratory judgment action. *Id.* at 255. To support his claim for fees, the plaintiff presented affidavits that identified various general tasks (discovery, hearings, motions, and a trial) and that identified the total number of hours and the rates for the attorneys, but did not "inform the trial court the time spent on specific tasks." *Id.* at 255 (citing *El Apple I*, 370 S.W.3d at 764-65; *City of Laredo v. Montano*, 414 S.W.3d 731, 736-37 (Tex. 2013)). The Court held that the general categories identified by the evidence were legally insufficient to support an award of attorneys' fees. *Id.* at 254-55.

Here, the Houston BBB provides a general breakdown of the categories under which its fees were billed. DX7; 8RR108. The fees are broken into general categories: (a) Motion to Dismiss ($78,983.50); (b) Interlocutory Appeal (Court of

11

Appeals—$127,126.25, Texas Supreme Court—$43,902.00); (c) Written Discovery ($59,347.10); (d) Enforcing Stay of Proceedings ($37,952.00); (e) Mediation ($18,419.00). *Id.* This generic breakdown of categories is legally insufficient evidence under the holding of *Long*. *Long*, 442 S.W.3d at 255 ("no evidence accompanied the affidavit to inform the trial court the time spent on specific tasks."); *see also El Apple I*, 370 S.W.3d at 763. The summaries provided in the defense exhibits are not legally sufficient evidence. DX6, 7, 8; 8RR107-10.

The Houston BBB also provided redacted copies of its attorneys' invoices. DX3; 8RR9-105. Before June 2013, the invoices contain bulk billing entries in which it is impossible to know how much time was spent on any particular task. DX3; 8RR9-71. These entries are legally insufficient for this reason alone, *see infra* pp. 13-14, but the descriptions are also heavily redacted. The Houston BBB agrees that the full detail of the invoices is not available to the jury.

> Q.    The full detail of what you did is not discernable by us as we read this invoice, correct?
>
> A.    Correct.

3RR223.

For example, the first page of the invoices exhibit includes the task "draft and revise [BLANK] letter" and "Communications with Ms. Christiansen regarding [BLANK]." DX3; 8RR9. The second invoice bills to "meet with J. Elkin to discuss issues identified in the Petition including [BLANK];" "review the

12

Original Petition and draft [BLANK] revise same and send to J. Elkin for review and comment;" and "communication to Mr. Parsons and Ms. Christiansen forwarding [BLANK]." DX3; 8RR11-12.

The redactions after June 2013 made the invoices, if anything, less intelligible. First, the Houston BBB began to redact the name of the recipient of the invoices. DX3; 8RR72. The jury cannot even tell who was billed. Further, the tasks (despite the absence of bulk billing) become more obscure:



DX3; 8RR73. This excerpt is merely an example of the type of redaction that occurs throughout the invoices. Some tasks were not redacted at all, but the jigsaw

13

puzzle presented by the ninety-six page exhibit leaves too many holes for a jury to see the entire picture. Without all the data, the jury could not determine whether the fees as a whole were reasonable and necessary. And the Houston BBB only offered an opinion as to the fees as a whole. 3RR167-68, 174, 183. There are simply too many missing pieces to make heads or tails of the work done on this case.

The Houston BBB did not attempt to fill in these blanks with testimony. Indeed, its witness had no recollection of what these tasks involved at the time he testified.

> A: Back in June 2012, you're asking me today to tell you the time I spent "finalizing and forwarding same."
>
> Q: You can't do it, can you?
>
> A: Sitting here today. I cannot do it.

3RR196. This is precisely the problem that the Supreme Court noted in *El Apple*.

With invoices that were deliberately redacted to remove the substantive work that was done, the Houston BBB has not and cannot reconstruct the specific tasks that were performed in this representation. *Id.* The Houston BBB concedes that the invoices are the best place to find the details of the work performed, or they would be, if they were complete. 3RR165. Without complete records, there is no legally sufficient evidence that the fees were reasonable and necessary.

## 2. The Invoices Did Not Specifically Identify the Costs of Performing Various Tasks.

Another minimum requirement for the recovery of attorneys' fees is that there must be a record of the time required to complete a specific task. *El Apple I*, 370 S.W.3d at 764. The Houston BBB claims that there is no requirement to itemize the tasks, but its position is contrary to the established authority.

> [A] lodestar calculation requires certain basic proof, including **itemizing specific tasks**, the time required for those tasks, and the rate charged by the person performing the work.

*City of Laredo*, 414 S.W.3d at 736 (emphasis added). The Houston BBB's bulk billing entries fail to itemize specific tasks or the time required for them. DX3; 8RR9-71.

The first entry on the first invoice contains at least five tasks and a single time entry. DX3; 8RR9. Because of the redaction, it is impossible to exclude the possibility that it contains six tasks, but the addition of one or more tasks does not change the problem. There is no way to know how much time was spent on any of the particular tasks. *Id.* This problem repeats itself throughout the invoices until June 2013, when the invoices mostly stopped the practice of bulk billing. DX3; 8RR72. As more half of the invoices are structured in such a way that the jury cannot determine the amount of time spent on specific tasks, the invoices are legally insufficient evidence.

15

Without the ability to judge the case as a whole, the jury lacked the data necessary "to make a meaningful evaluation of the application for attorney's fees." *El Apple I*, 370 S.W.3d at 762. The invoices do not support the verdict or the judgment.

**C.     The Expert's *Ipse Dixit* Is Not Legally Sufficient Evidence of Necessity and Reasonableness.**

Generalities such as the number of pleadings filed, the amount of discovery in the case, and the length of the case "provide[] none of the specificity needed for the trial court to make a meaningful lodestar determination." *El Apple I*, 370 S.W.3d at 763. But generalities and conclusory opinions are all the evidence the Houston BBB offers to support the jury's decision.

When an expert's opinion is based on facts that are never established at trial, the opinion is no evidence and is legally insufficient to support a verdict. *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 159 (Tex. 2012) (market value opinion must be supported by a factual basis, offered into evidence); *Schaefer v. Tex. Empl. Ins. Ass'n*, 612 S.W.2d 199, 205 (Tex. 1980). An expert's bare opinion that something is reasonable is not "some evidence." *Schaefer*, 612 S.W.2d at 205. Furthermore, the requirement that evidence be legally sufficient is over and above the requirement that an expert's opinion be reliable. *Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 412 (Tex. 1998).

16

In *Schaefer*, the expert stated that there was a reasonable probability that the plaintiff had a certain disease caused by a bacteria that could be found in bird droppings. *Id.* at 202-203. The evidence was that the plaintiff's employment frequently required him to be in contact with soil contaminated by bird droppings. *Id.* at 203. However, the soil was never tested to confirm that the bacteria was, in fact, present. *Id.* Because the expert assumed that the bacteria was present at the plaintiff's workplace but the evidence never established this fact, the expert opinion was based on "possibility, speculation, and surmise." *Id.* at 204. Therefore, it was not legally sufficient evidence to support a finding in favor of the plaintiff. Here, the legal expert assumes that the details of the invoices support his conclusion that the specific tasks performed were reasonable and necessary.

In a similar case, the expert's opinion that the plaintiff's frostbite injury was caused by the application of a spray antiseptic, assumed facts that were, in fact, contradicted by the evidence. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). The expert explained that his opinion that the injury was caused by frostbite was depended on his assumption that there was no redness of the skin and that the plaintiff did not follow the directions for application. *Id.* The uncontradicted evidence was that the plaintiff's skin turned red and that she followed the directions. *Id.* Because the expert's assumptions were not supported

17

by any evidence, it had no "probative value and cannot support a verdict or judgment." *Id.*

Here, the Houston BBB's expert on legal fees states that his review of the information in the un-redacted invoices allowed him to conclude that the fees billed were reasonable and necessary.

> I would personally review each draft [invoice] in detail to make sure that, in my opinion, the work that was done was necessary and the time that was spent was reasonable and the amount charged was reasonable.

3RR135. Significantly, the opinion offered by the expert that the totality of the fees requested was reasonable and necessary is all or nothing.

> Q.    Mr. Elkin, as an expert on attorneys' fees, what is your opinion as to the reasonableness of the $375,000 that the BBB is requesting today?
>
> A.    In my opinion, it's reasonable.
>
> . . .
>
> The time spent as reflected in these invoices was reasonable.
>
> Q.    So taking into consideration these Andersen factors, is it your opinion today that $375,000 is a reasonable fee for the services that were provided by Porter Hedges to the BBB . . . in defense of a SLAPP suit?
>
> A.    Yes.  I believe so.

3RR167, 174, 83.  The expert did not opine task by task, indeed, he admittedly could not.  3RR196.  Based on the expert's opinion, the jury had to either accept

18

the entire amount or none of it. There was no guidance given to the jury in the expert's opinion that would guide it in finding some lesser amount.

The expert's opinion as to this ultimate issue is based on the truth of the specific task information contained in the un-redacted drafts. 3RR135. This specific information was never put into evidence. The expert essentially told the jurors that they should trust that he had reviewed the data supporting the total and that he found it to be reasonable, therefore, they should too. This is precisely the kind of *ipse dixit* that has been repeatedly criticized by the Texas appellate courts. "Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *Elizondo v. Krist*, 415 S.W.3d 259, 254 (Tex. 2014) (quoting *City of San Antonio v. Pollack*, 284 S.W.3d 809, 816 (Tex. 2009)); *see also Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinion alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness."). The opinion should be rejected as no evidence.

In short, when the jury is left with nothing more to rely on than the *ipse dixit* of the expert because the underlying information is not put into evidence, the opinion will not support a verdict or judgment. *Elizondo*, 415 S.W.3d at 266. As now Chief Justice Hecht has said, it is "not enough" when "the only bridge

19

between [an expert's] credentials, experience, and observations on one side, and [the expert's] opinions on the other, is [the expert's] own veracity." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 913 (Tex. 2004) (Hecht, J. concurring). The Houston BBB's evidence does nothing more than tell the jury, "trust our expert, he has seen the un-redacted invoices," but the Supreme Court says that this is not enough.

## II. THERE SHOULD BE A NEW TRIAL CONSIDERING THE PROPRIETY OF ATTORNEYS' FEES IN LIGHT OF JOHN MOORE'S REMAINING CLAIMS.

In the motion for new trial, John Moore presented the question of whether a new trial was necessary based on "the amount involved and results obtained." CR129; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985) ("A trial court's plenary jurisdiction gives it not only the authority, but the responsibility to review any pretrial order upon proper motion."). The result in question was whether the Houston BBB prevailed in seeking dismissal of John Moore's claims.

John Moore attempted to join new claims by amending its petition, and the trial court erred by refusing to permit the amendment on motion by the Houston BBB. CR43; App. C; Supp. CR_ (Order of November 1, 2013). Furthermore, in responding to the motion for entry of judgment, John Moore argued that the attorneys' fees could be fairly determined only if the cases were consolidated and the merits of all of John Moore's claims could be considered at the same time.

20

App. H at 2, 9; Supp. CR_ (Response and Objections to Defendant's Motion). The trial court expressly considered and rejected these consolidation arguments when rendering the judgment requested by the Houston BBB.

> [T]o the extent parts of your motions that I have sustained objections to also contain arguments that would be responsive to the request for a judgment, I am going to go ahead and enter a final judgment today on this.

5RR27.[2] The trial court considered and rejected John Moore's position.

Finally, John Moore moved to consolidate the two lawsuits so that the merits of all of its claims could be considered in determining the appropriate award of attorneys' fees. App. K; Supp. CR_ (Motion to Consolidate). The motion was noticed for hearing. App. L; Supp. CR_ (Notice of Hearing). The trial court improperly refused to hear the consolidation motion. 5RR22; *Downer*, 701 S.W.2d at 241 (trial court has an obligation to reconsider pretrial rulings when presented with a proper motion). The jury should have been permitted to consider the success or failure of John Moore's additional claims that are now pending in the second lawsuit when deciding on the appropriate verdict.

### A. John Moore's Antitrust Claims Should Have Been Heard in the Same Proceeding as Its Earlier Claims.

A court should not permit a claim to proceed to trial and judgment separately from a related claim when doing so results in an injustice. *In re Ethyl Corp.*, 975

---

[2] The trial court sustained the Houston BBB's objections to John Moore's motion to consolidate. 5RR22.

21

S.W.2d 606, 610 (Tex. 1998). The Texas courts have looked to the Federal Rules in determining the considerations governing consolidation. *Id.* at 611, n.1. Key considerations are:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* Thus, there are four basic considerations governing consolidation: (1) a balancing of the risks and (2) the burden, (3) time, and (4) expense of multiple trials.

The second, third, and fourth factors have already shown that consolidation would have been much more efficient. The two lawsuits have been an unnecessarily increased burden on the parties and the courts. The resolution of these matters has been extended, and there has already been one trial, with the certainty that another will follow. But this is all spilt milk for the most part. The key consideration here is the harm to John Moore that may be caused by inconsistent adjudications.

### B. The Antitrust Claims Were (and Remain) Legally Viable.

As urged in the appeal of the second lawsuit (Cause No. 01-14-00687-CV), res judicata does not apply here because John Moore's attempts to bring these

22

claims in a single suit were frustrated as the Houston BBB repeatedly blocked the efforts. *See Finger v. Southern Refrigeration Servs.*, 881 S.W.2d 890, 895-96 (Tex. App.—Houston [1st Dist.] 1994, writ denied). John Moore first brought the new claims in the first lawsuit by amendment. CR4. The Houston BBB objected and the trial court struck the pleading based on a newly enacted stay provision that applied by its own terms only to appeals filed after its effective date. CR43, 76; App. C; Supp. CR_ (Order of November 1, 2013); TEX. CIV. PRAC. & REM. CODE § 51.014(b). As there was no automatic stay in effect under the terms of the statute, the trial court erred in refusing to allow the joinder of claims.

Even if the Houston BBB were correct in its interpretation of the new statute, it cannot cause a claim to be split at its own initiative and then seek to apply res judicata. *Id.*; *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) ("the res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action."). For this and for the other reasons stated, John Moore's claims for antitrust violations are not barred by res judicata and were appropriately brought in the original lawsuit.

John Moore's antitrust claims are legally viable because it has provided prima facie proof based on clear and specific evidence of each of the elements of its claims. These arguments are detailed in the briefing in the appeal from the

23

second lawsuit (Cause No. 01-14-00687-CV). Thus, the Houston BBB has not been and will not be entirely successful in obtaining a dismissal of John Moore's legal action. TEX. CIV. PRAC. & REM. CODE § 27.009(a). Its failure should be considered by the jury at the very least, assuming that it is entitled to fees for a partial success.

### C. The Splitting of John Moore's Claims Creates an Unacceptable Risk of Inconsistent Adjudications.

The judgment for attorneys' fees create a risk of inconsistent adjudication against John Moore. The Houston BBB will receive attorneys' fees and sanctions as the prevailing party on a motion to dismiss under Chapter 27 for certain causes of action, while remaining liable to John Moore for the same underlying conduct with regard to other causes of action (namely, antitrust). Thus, John Moore would be considered a non-prevailing party in the first lawsuit and a prevailing party in the second, based on the same harmful conduct.

Most if not all of the fees incurred by the Houston BBB apply equally to both lawsuits: the research into the Anti-SLAPP statute (at the trial court level and on appeal), the discovery, the investigation of John Moore's allegations, the mediation. DX7, 8RR107. These tasks are intertwined as are the fees. The work enforcing the stay provision created the split of the claims and exposed John Moore to the inconsistent findings. DX7, 8RR109. It would be perverse to award

24

the Houston BBB attorneys' fees for creating inefficiency in a statute intended to make the process more efficient.

The Houston BBB cannot explain how it would be prejudiced or what confusion would occur were these claims to be consolidated or heard as originally pleaded in the amended petition. *Lone Star Ford, Inc. v. McCormick*, 838 S.W.2d 734, 738 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Indeed, the separation of the claims is more apt to cause confusion by suggesting to the jury that the Houston BBB was entirely successful in its motion to dismiss. Thus, the judgment forces John Moore to finance the Houston BBB's defense of John Moore's valid claims even when it has shown that there is merit to its complaint that the Houston BBB has violated the norms of conduct and caused harm.

Even if the Houston BBB had presented some evidence that its fees were reasonable and necessary, John Moore would still be entitled to a new trial. The trial court considered and rejected John Moore's argument that the fees could not be properly determined piecemeal. In other words, the Houston BBB's fees relating to its original motion to dismiss are excessive considering that John Moore's antitrust theories are valid and supportable. Furthermore, the amount of fees is contrary to justice and equity for the same reason. Therefore, a new trial should be granted in the alternative.

25

## PRAYER

WHEREFORE, PREMISES CONSIDERED, John Moore Services, Inc. and John Moore Renovation, LLC respectively request that this Court reverse the judgment of the trial court and render judgment that Appellee take nothing. In the alternative, John Moore requests that the Court reverse the judgment of the trial court and remand for a new trial on attorneys' fees and on John Moore's claims in the second lawsuit. John Moore also requests all such other and further relief, in law or in equity, to which it may be justly entitled.

Respectfully submitted,

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.
State Bar No. 24007877
dpritchett@johnsontrent.com
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, Texas  77002
(713) 222-2323 (Telephone)
(713) 222-2226 (Facsimile)

BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
Lori Hood
Texas Bar No. 09943430
lhood@bakerdonelson.com
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 (Telephone)
(713) 650-9701 (Facsimile)

**ATTORNEYS FOR APPELLANTS
JOHN  MOORE  SERVICES,  INC.  AND
JOHN MOORE RENOVATION, LLC**

27

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because the brief contains 5,833 words, excluding the parts exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface and type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font for text in the body and 12-point Times New Roman font for footnotes.

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.


## CERTIFICATE OF SERVICE

On this the 20th day of April 2015, the foregoing was served on the following persons by electronic service:

Lauren B. Harris
Jeffrey R. Elkin
M. Harris Stamey
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
*Attorneys for Appellants*

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.

406233

**Cause No. 01-14-00906-CV**

_____

**IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS**

**JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC,**

_Appellants,_

**v.**

**THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC.,**

_Appellees._

**APPENDIX**

A.    Original Petition (6-18-12)

B.    Order Granting Motion for Continuance  (10-11-13)

C.    Notice of Hearing – Motion for Reconsideration (10-21-13)

D.    Order Striking Amended Petition , Granting Motion for Reconsideration (11-01-13)

E.    Motion for Award of Attorneys' Fees (4-11-14)

F.    Second Amended Notice of Hearing – Motion for Award of Attorneys' Fees (5-27-14)

G.    Order Setting Hearing on Award of Attorneys' Fees (6-04-14)

H.    Plaintiffs' Response to Motion for Award of Attorneys' Fees (6-13-14)

I.    Order Denying Defendant's Motion for Award (6-19-14)

J.      Defendant's Motion for Entry of Judgment (8-04-14)

K.      Plaintiffs' Motion to Consolidate (8-07-14)

L.      Notice of Hearing regarding Motion to Consolidate (8-07-14)

M.      Order Granting Motion to Dismiss (8-11-14)

N.      Charge of the Court (7-22-2014)

O.      Final Judgment (8-8-2014)



Exhibit A

NO. _____

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| | § | _____ JUDICIAL DISTRICT COURT |

## JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC, herein collectively referred to as "John Moore" or "Plaintiffs," in the above numbered and styled cause, complaining of Defendant, The Better Business Bureau of Metropolitan Houston, Inc., herein referred to as "Houston BBB" or "Defendant," and in support thereof would respectfully show the Court as follows:

### I. DISCOVERY LEVEL

Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiffs request discovery be conducted under Level 3.

### II. PARTIES

1. John Moore Services, Inc. is a for-profit corporation organized and existing under the laws of the State of Texas, whose principal place of business is located in Harris County, Texas.

Certified Document Number: 52536293 - Page 1 of 19

2.　John Moore Renovation, LLC is a limited liability company organized and existing under the laws of the State of Texas, whose principal place of business is located in Harris County, Texas.

3.　The Better Business Bureau of Metropolitan Houston, Inc. is a nonprofit corporation organized and existing under the laws of the State of Texas, whose principal place of business is in Harris County, Texas. Defendant Better Business Bureau of Metropolitan Houston, Inc. may be served with citation and process by and through its Registered Agent, William Parsons, at 1333 West Loop South, Suite 1200, Houston, Texas. Service is requested at this time.

### III.　JURISDICTION AND VENUE

4.　This Court has jurisdiction over the claims stated herein in that the amount claimed by Plaintiffs exceeds the minimum jurisdictional limits of the Court.

5.　Venue of this cause of action is proper in Harris County, Texas since all or part of the causes of action set forth herein arose in Harris County, Texas.

### IV.　BACKGROUND FACTS

6.　To gain a commercial advantage for its members, Defendant has published false statements on its website about Plaintiffs. Defendant is not a government agency or one working for the good of consumers. Defendant is putatively run by a board (of its own members) but is really tightly controlled by its President, Dan Parsons ("Parsons"). The Defendant and Parsons deem it appropriate to rate direct competitors (who are not members) without any quantifiable standards or research. In this instance, Defendant has impugned the character and reputation of John Moore's business in a number of ways including publishing on its website that, based on Defendant's presumably "independent and unbiased" ratings, John Moore has "an F rating

2

currently at the BBB Houston and South Texas." This statement is false and directly impugns John Moore's credibility, skill, professionalism, character, and reputation. Plaintiffs requested Defendant remove the rating (for reasons detailed below). In response, Defendant changed its website to indicate that John Moore has "No Rating," yet it maintains the "F" rating in the notes section of the webpage and adds additional comments that wrongfully disparage Plaintiffs. Defendant asserts a misguided claim of free speech, but Defendant's actions are commercial speech, intended to obtain an economic benefit, and are false.

7.     John Moore Services, Inc. ("John Moore") was formed in 1965 as a small plumbing company. Today, it is one of Houston's largest family-owned and operated home services company with over 500 employees, serving over a half million Texas homeowners. In the past forty-seven (47) years, John Moore has grown from a modest Houston-based plumbing company to a complete home services organization in the areas of Houston, Galveston, and Bryan-College Station. John Moore specializes in air conditioning, heating, electrical, plumbing, attic insulation, pest control, water damage restoration, custom windows and doors, home security systems, lawn treatment systems and complete design/build services for home remodeling.

8.     Through the use of extensive advertising, John Moore has become a household name in Houston and the surrounding areas. Over the years, John Moore has spent millions of dollars on advertisements, including advertising on the Internet, its company website, company vehicles, radio, television, and print ads. John Moore's slogan, which is included in almost all of its mediums of advertisements is, "Call John and Get Moore"—a catchphrase that John Moore has turned into a memorable jingle in its radio and television advertisements.

3

9.      Because the household services market is so saturated and competitive in Houston and the surrounding areas, John Moore has had to spend a great deal of money on research and development ("R&D") to increase its market share and business. As a result of this R&D, John Moore has not only invested millions in advertising but has also spent money to become a member of the Better Business Bureau of Metropolitan Houston, the Better Business Bureau of Bryan-College Station, and a member of the Better Business Bureau of Dallas.

10.     The Council of Better Business Bureaus ("CBBB") is the national organization for Better Business Bureaus ("BBB") in the United States and Canada. The CBBB is a nonprofit organization whose stated mission is to instill consumer confidence in businesses, to contribute to a "trustworthy marketplace for all," and to develop and administer self-regulation programs in advertisements for the business community.

11.     The CBBB supports 116 independent BBBs across the United States. According to its advertising, these independent BBBs are supposed to serve their local communities by rating businesses in their communities for the benefit of local consumers. These BBBs are run by their dues-paying members. The Houston BBB has a board but the organization is controlled and run with an iron fist by its long time President, Dan Parsons. BBBs review/rate both accredited and non-accredited businesses. BBBs around the country have been accused, including by the Connecticut Attorney General, of using the rating system for the benefit of companies who pay for membership. This is commonly known as "pay to play."

12.     Being an "accredited" business in a BBB is equivalent to saying that a business is a "member" of that BBB. Accredited simply means that a company applied to become a member, paid their fee to join, and is now a "member" of a BBB. BBBs take it upon themselves to rate members as well as nonmembers. This is the ultimate in "pay to play" since members

4

rate nonmembers including those that are direct competitors under the theory that the BBB knows best.

13. The Better Business Bureau of Metropolitan Houston, Inc. ("Houston BBB") is one of the 116 BBBs supported by the CBBB. The Houston BBB provides services for its member businesses located in Houston and the surrounding areas.

14. John Moore was a member in good standing of the Houston BBB for thirty-one (31) years from 1971 through 2010. The CBBB implemented a new letter rating system in 2009. John Moore was consistently rated an A+ Accredited Business and received the Better Business Bureau Education Foundation's ("Education Foundation") Award for Excellence for eight (8) consecutive years.

15. John Moore was the recipient of the Award of Excellence from the years 2003-2010. Throughout all of the years that John Moore won the Award for Excellence, there were never any restrictions on advertising the award, including no restriction for the length of time a business could advertise the receipt of an Award of Excellence.[1]

16. In fact, during the years John Moore won the Award of Excellence, John Moore was strongly encouraged by the Vice President of Marketing for the BBB and by the executive director of the Education Foundation to prominently display the Award of Excellence name and logo on all of John Moore's mediums of advertising. The Education Foundation encouraged award recipients to prominently advertise its name and logo in order to increase the interest of local businesses and consumers in its awards competition. In fact, the Education Foundation even provided the artwork needed for winners to advertise their success. Even after John Moore

---

[1] In May of 2011, after John Moore had won its 2010 Award of Excellence, the Education Foundation began imposing restrictions on the advertisement of the Award of Excellence. These restrictions were not in place at anytime when John Moore won the award. In fact, discussions between the Education Foundation and the CBBB concluded that the new restrictions could not be made retroactive.

5

parted ways with the Houston BBB, the Vice President of Marketing for the BBB and the Education Foundation encouraged John Moore to continue advertising its awards. As a result, John Moore spent millions of dollars advertising with the Awards of Excellence.

17. In its last three years as a member of the Houston BBB, John Moore was rated as an A+ business, the highest rating possible, and in over thirty-one (31) years with the Houston BBB, John Moore never had a single unresolved complaint. Between 2006 and 2009, John Moore grew at an annual rate of 35%. This significant increase in business led to a proportional increase in consumer complaints, all of which were settled by John Moore. For reasons not related to the CBBB nationally prescribed formula for rating businesses, the Houston BBB on two different occasions arbitrarily changed the "A+" rating for John Moore to "Not Rated" and then back to "A+," effectively punishing John Moore for matters unrelated to its treatment of customers. Plaintiffs complained about the matter to Parsons. Parsons refused to address the matter. This rating change was in direct violation of the mathematical formula established by the CBBB for published ratings of businesses.

18. After these arbitrary ratings were made, the Houston BBB Membership Committee held a meeting to discuss the membership qualification of John Moore.[2] This meeting included a discussion of the increase in the number of complaints filed against John Moore—an increase in complaints that was proportional to John Moore's growth rate over the years, a factor the Houston BBB Membership Committee at the urging of Parsons did not take into consideration, which was in violation of the rating scale established by the CBBB. The Houston BBB Membership Committee meeting was conveniently led and steered by the owner of a direct major competitor of John Moore. The Houston BBB Membership Committee decided

---

[2] Defendant's webpage for John Moore admits that the Houston BBB was voting to revoke John Moore's membership when John Moore resigned.

to end John Moore's membership status with the Houston BBB, but before this ruling was referred to the full Executive Committee of the BBB and then to the full Board of Directors for a proper vote and before John Moore could appeal the biased decision under CBBB regulations, the Chairman of the Board of the Houston BBB and Parsons threatened John Moore that if John Moore tried to appeal this decision and did not quickly accept the vote, John Moore would pay a heavy price.

19.     Rather than engage in a war with media darling Parsons, John Moore involuntarily resigned from the Houston BBB on November 23, 2010.[3] John Moore then applied for relocation of its headquarters for membership with the Bryan-College Station BBB. After conferring with the Houston BBB, the Bryan-College Station BBB accepted and approved John Moore's application to upgrade its regular membership to headquarter status. John Moore was a member of the Bryan-College Station BBB with an A+ rating from November 2010 up until April 20, 2012. At that time Houston BBB by and through Parsons interfered and John Moore's Bryan-College Station headquarter status was revoked and sent back to the Houston BBB. Throughout 2011, John Moore had an A+ rating with the Bryan-College Station BBB with no complaints from the Houston BBB. John Moore was then accepted for membership April 10, 2012 to the Dallas BBB. John Moore's Dallas rating was an A+.

20.     A full year after John Moore's involuntary resignation from the Houston BBB, and after a full year of A+ ratings from the Bryan-College Station BBB, the Houston BBB and the Education Foundation filed a lawsuit in federal court against John Moore for, among other things, trademark infringement. The lawsuit complains of John Moore's advertisements, which display the Awards of Excellence logo received by John Moore.

---

[3] Defendant John Moore Renovation, LLC was removed by the Houston BBB sometime after November 23, 2010.

21. After the filing of its federal complaint and during the time John Moore had been an accredited A+ member of the Bryan-College Station BBB, the Houston BBB has continued to maintain a listing for John Moore on its website. Instead of placing the "usual neutral" statement on the website that John Moore is a business who is affiliated with the Bryan-College Station BBB, the Houston BBB has written extensive libelous, disparaging, and untruthful commentary under its John Moore listing. In effect, the Houston BBB has started a smear campaign against John Moore.

22. First, the Houston BBB in bold and at the top of its John Moore listing page states, "This Business is not BBB accredited," which is untrue, as John Moore is BBB accredited with the Bryan-College Station BBB and the Dallas BBB.[4] John Moore went from being an eight-time Awards of Excellence winner to no longer being an accredited business. The statement that John Moore is not BBB accredited is inaccurate and misleading and has damaged John Moore's reputation.

23. Even more suspect is the fact that John Moore went from being rated as an "A+" business to an "F" rated business overnight and now to a "No Rating" business. In fact, the Houston BBB does not even hide the reasoning for this sudden decline. Boldly listed on Defendant's webpage for John Moore as one of the factors for the sudden and abrupt lowered rating is the direct reference to the trademark litigation filed by Defendant in federal court against Plaintiffs. Specifically, Defendant complains in bold on the John Moore webpage of John Moore's "ongoing and fraudulent use of its Awards For Excellence, service marks." Defendant continues by admitting that "John Moore Services DID in fact participate, enter and win the local awards that they display. However, this use of the marks for those awards is

---

[4] Defendant now admits, in the notes section of its John Moore webpage, that John Moore is accredited in the Bryan-College Station BBB, despite listing at the top of its John Moore page that "[t]his business is not BBB accredited."

clearly laid out and may ONLY be used by CURRENT Accredited Businesses in the BBB service area in which the awards were won. John Moore Services has continuously violated the stated rules for this logo use." This issue of whether or not the rules for the advertisement of the Awards of Excellence is "clearly laid out" and that the awards may "only be used by CURRENT Accredited Businesses in the BBB service area" is a disputed fact in the federal litigation. It is clear that the Defendant is using its website to slander and disparage John Moore's business, by changing John Moore's "A+" rating to an "F" rating then to "No Rating," as a direct result of the Defendant's federal lawsuit filed against Plaintiffs.

24. In April of 2012, Houston BBB continued its vendetta against Plaintiffs by internally strong arming the Plaintiffs' headquarters away from Bryan-College Station BBB. Houston BBB did this in contradiction with the CBBB national standards. Houston BBB now maintains that it is the only BBB that can rate Plaintiffs, which means other BBBs are now forced to adopt the Houston BBB rating for John Moore. In addition, the Houston BBB asserts that it is the only BBB that is permitted to address Plaintiffs' consumer complaints.

25. The Houston BBB took its vendetta against John Moore one step further by making false and disparaging statements against John Moore through its consumer phone lines. Now, when consumers call the Houston BBB phone lines inquiring about John Moore, they are being told that John Moore is not an accredited business and in fact, would never be an accredited business, reflecting the "F" rating and "No Rating" of the business on the website. These slanderous statements by Houston BBB employees have damaged the reputation of John Moore and will continue to damage the business of John Moore until it is stopped.

26. The Houston BBB is allegedly an independent rating agency whose mission is to set standards for marketplace trust and to instill consumer confidence through its ratings.

9

According to its website, the values of the BBB are to "[b]e honest and ethical in all of [their] business activities;" "[t]reat everyone with integrity[,] . . . respect and dignity;" and "communicate with honesty." The Houston BBB is not only in violation of state laws, but it is in violation of its own mission statement and statement of values. The Houston BBB proudly labels itself as the "guardian" of honesty and integrity in business practices while willfully libeling and maligning John Moore who was an A+ rated business that has never had an unresolved complaint with the Houston BBB.

27. Plaintiffs requested that the Houston BBB remove Plaintiffs from its website. Houston BBB refused.

28. Houston BBB's actions have caused and continue to cause irreparable damage to the reputation of Plaintiffs.

## V. CAUSES OF ACTION

### A. TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

29. Plaintiffs adopt by reference and incorporate herein all factual allegations above.

30. Defendant has intentionally tortiously interfered with the existing and prospective business of Plaintiffs. Defendant is attempting to apply retroactive restrictions on Awards of Excellence won by John Moore in the years 2003-2010 in an effort to force John Moore to remove its advertisements which display that John Moore was the winner of the Awards of Excellence for those years. The removal of the Awards of Excellence from John Moore's company website, vehicles, television, radio, and print advertisements will cost John Moore millions of dollars and will reflect poorly on its existing and prospective business relationships.

31. Defendant has also intentionally tortiously interfered by attempting to force Plaintiffs from advertising that they are BBB members, even though Plaintiffs are members of

10

other cities' BBBs. If Defendant is successful in forcing Plaintiffs to remove from their company website, vehicles, television, radio, and print advertisements all references to Plaintiffs' legitimate membership in the BBB, Plaintiffs will incur millions of dollars in expenses, and the removal of the BBB name will reflect poorly on their existing and prospective business relationships.

32. Further, Defendant has intentionally tortiously interfered by failing to adhere to the CBBB's mathematical formula for determining John Moore's rating, which would have taken, in fact, into account John Moore's compound annual growth rate of 35% between 2006 and 2010. Defendant took no standards into account when it gave Plaintiff an "F" rating and "No Rating." Defendant has refused to adjust its formula, which if adjusted would reflect a proportional increase in consumer complaints with the growth of John Moore, because Defendant does not want John Moore's ratings to be high. In fact, overnight, John Moore went from being an "A+" rated business to an "F" rated business to a "No Rated" business, all in furtherance of Defendant's intent to tortiously interfere with Plaintiffs' existing and prospective business relationships.

33. Similarly, Defendant has intentionally tortiously interfered by failing to adhere to the CBBB's policy to exclude pricing complaints. Per the policies established by the CBBB, the Houston BBB is not supposed to include straight pricing complaints in a business' complaint records, nor should it include pricing complaints in its overall rating of a business. However, because of the Houston BBB's desire to tortiously interfere with Plaintiffs' existing and prospective business relationships, it has incorporated pricing complaints into its rating of John Moore, thereby unfairly decreasing the rating of John Moore.

11

34. In that same regard, Defendant has intentionally tortiously interfered by deceptively listing that there are 294 complaints against John Moore, implying 131 of those complaints occurred in the last twelve months, when Defendant had previously indicated there were only two (2) complaints against John Moore. Further, these 294 complaints make up pricing complaints and past complaints against John Moore, which have already been resolved. The listing of 294 more complaints on Defendant's website was not done until after Defendant filed a lawsuit against Plaintiffs in federal court. In John Moore's over thirty-one (31) years as a member of the Houston BBB, it never had a single unresolved complaint.

35. Defendant has intentionally tortiously interfered by enlisting a smear campaign against Plaintiffs on the Houston BBB website by writing extensive libelous, disparaging, and untruthful commentary under its John Moore listing.

36. Defendant has intentionally tortiously interfered by untruthfully writing on the Houston BBB website that Plaintiffs are not members of a BBB when in fact Plaintiffs are members of other BBBs.

37. Defendant has intentionally tortiously interfered by untruthfully telling consumers who call the Houston BBB phone lines that Plaintiffs are not accredited businesses and that Plaintiffs would never be accredited businesses with the BBB.

38. Further, Defendant has intentionally tortiously interfered by unjustifiably and maliciously changing John Moore's rating on its website from "A+" to "F" then to "No Rating" in furtherance of Defendant's intent to tortiously interfere with Plaintiffs' existing and prospective business relationships. The downgrade of John Moore's rating was predetermined based on Defendant's federal lawsuit.

12

39. Defendant's conduct and communications reflect that it will continue to tortiously interfere with Plaintiffs' business if not enjoined from doing so by this Court.

40. As a result of Defendant's tortious interference, Plaintiffs have already suffered and will continue to suffer harm to their existing and prospective business relationships. If Defendant's are not enjoined, Plaintiffs' harm will be irreparable both financially as well as to their business reputations, including lost goodwill, lost revenues, and loss of value to Plaintiffs' business in an amount which currently exceeds the minimal jurisdictional limits of this Court.

41. In addition, because the tortious acts were committed intentionally, willfully and maliciously, Defendant should be held liable for exemplary damages.

**B. FRAUD**

42. Plaintiffs adopt by reference and incorporate herein all factual allegations above.

43. Defendant, among other things, falsely represented to (1) John Moore that it could continue advertising its receipt of the Awards of Excellence, even after John Moore was no longer a member of the Houston BBB, by not placing any restrictions on the awards when they were given to John Moore from 2003 through 2010; (2) Plaintiffs that Plaintiffs cannot advertise with the BBB trademark(s), registered to the Council of Better Business Bureaus, Inc., since they are no longer members of the Houston BBB; (3) Plaintiffs that the Houston BBB would not count price complaints in a business' complaint record nor would the Houston BBB factor price complaints into the overall rating of a business; (4) Plaintiffs that the Houston BBB is an independent and unbiased rating agency; and (5) Plaintiffs that the Houston BBB follows its mission statement and values statement that claims the Houston BBB's goal is to "[b]e honest and ethical in all of its business activities;" "[t]reat everyone with integrity[,] . . . respect and dignity;" and "communicate with honesty."

13

44. Defendant made these false representations to Plaintiffs knowingly and with the intent to deceive Plaintiffs. Plaintiffs reasonably and justifiably relied on the representations made by the Defendant to their detriment. As a direct and proximate result of their reasonable and justifiable reliance on the representations made by Defendant, Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial.

## C.   BUSINESS DISPARAGEMENT

45. Plaintiffs adopt by reference and incorporate herein all factual allegations above.

46. Defendant published disparaging words about Plaintiffs' economic interests that were false. Specifically, Defendant published false statements on its website, including this statement on John Moore's page: "This Business is not BBB accredited[,]" impugning the character and reputation of John Moore's business. Defendant has also published on its website that based on Defendant's presumably "independent and unbiased" ratings, John Moore has "an F rating currently at the BBB Houston and South Texas." This statement is false and directly impugns John Moore's credibility, skill, professionalism, character, and reputation.

47. Defendant maliciously published these statements and without privilege. These false and malicious communications have played a substantial part in inducing existing and prospective consumers from hiring Plaintiffs to perform their home services needs. The Better Business Bureau name is generally widely recognized and trusted. By falsely explaining on the John Moore listing that John Moore is "F" rated, Defendant has effectively steered all consumers away from hiring John Moore whose financial health depends on the services it provides to consumers. Plaintiffs have been directly harmed and will continue to suffer damages in an amount to be determined at trial.

14

**D.** **DEFAMATION**

    **1.** **Libel**

48. Plaintiffs adopt by reference and incorporate herein all factual allegations above.

49. Defendant published false and defamatory statements of fact about Plaintiffs on its website. Specifically, Defendant published the following false fact on the John Moore link on their website: "This Business is not BBB accredited."

50. The statement is false because John Moore is a member ("accredited") in other BBBs. John Moore may not be a member ("accredited") by the Houston BBB, but it is a member ("accredited") by a BBB.

51. This statement is defamatory as libel because it is a written statement that injures the reputation of John Moore by falsely informing the public that John Moore is not BBB accredited. This statement, at a minimum, is defamatory on its face.

52. Defendant also published on its website that, based on Defendant's presumably "independent and unbiased" ratings, John Moore has "an F rating currently at the BBB Houston and South Texas."

53. This statement is false because Defendant's rating of John Moore was not based on an independent and unbiased rating scale. In fact, Defendant directly disobeyed the mathematical formula provided to it by the CBBB when rating John Moore with an "F" rating. The rating is supposed to be based on John Moore's services, not on Defendant's own vendetta against Plaintiffs, which is evidenced by Defendant's federal complaint.

54. This statement is defamatory as libel because it is a written statement that injures the reputation of John Moore by falsely informing the public that based on an unbiased rating

15

scale, John Moore went from being "A+" rated one day to "F" rated the next then to "No Rating" the next. This statement, at a minimum, is defamatory on its face.

55.  Defendant acted with actual malice and, at a minimum, with negligence in writing these false and defamatory statements.

56.  As a direct and proximate result of Defendant's words, Plaintiffs have been injured, and their injuries will be irreparable both financially as well as to their business reputations, including lost goodwill, lost revenues, and loss of value to Plaintiffs' businesses in an amount which currently exceeds the minimal jurisdictional limits of this Court.

**2.  Slander**

57.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

58.  Defendant published through oral communication slanderous statements to consumers, including existing and prospective customers of Plaintiffs. Specifically, Defendant's employees, who received their information from Defendant, made and continue to make false and disparaging statements about Plaintiffs to consumers who call the Defendant's phone lines. When consumers call the Houston BBB phone lines inquiring about Plaintiffs, they are being told by Defendant's employees that Plaintiffs are not accredited businesses and in fact, would never be accredited businesses.

59.  These statements are false, as explained previously, because Plaintiffs are members ("affiliates") of a BBB.

60.  These statements are defamatory as slander because they are spoken to third parties and injure the reputation of Plaintiffs by falsely informing the public that Plaintiffs are not BBB accredited. These statements, at a minimum, are defamatory on their face.

Certified Document Number: 52536293 - Page 16 of 19

61.    Defendant acted with actual malice and, at a minimum, with negligence in speaking these false and defamatory statements.

62.    As a direct and proximate result of Defendant's words, Plaintiffs have been injured, and their injuries will be irreparable both financially as well as to their business reputations, including lost goodwill, lost revenues, and loss of value to Plaintiffs' businesses in an amount which currently exceeds the minimal jurisdictional limits of this Court.

### E.    EQUITABLE REMEDIES

63.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

64.    The acts of Defendant are not merely unfair, but represent a deliberate, calculated and malicious course of action to unlawfully harm the business and goodwill of Plaintiffs. Additionally, Defendant benefitted from Plaintiffs' extensive advertisement of the Award of Excellence and the BBB organization. In fact, the Education Foundation encouraged award recipients to prominently advertise its name and logo in order to increase the interest of local businesses and consumers in its awards competition. Even after John Moore parted ways with the Houston BBB, the Education Foundation encouraged John Moore to continue advertising its awards to promote interest in the awards. In fact, during all the years that John Moore used the awards logo in its advertising, participation in the awards competition has grown significantly and steadily. The BBB Education Foundation has benefitted from John Moore's advertising of the awards through the logo.

65.    On equitable grounds, Defendant should not be allowed to be unjustly enriched at the expense of Plaintiffs. Plaintiffs are entitled to temporary and permanent relief, and to recover their actual damages, including reasonable attorneys' fees, which are in excess of the minimum jurisdictional limits of this Court.

17

Certified Document Number: 52536293 - Page 17 of 19

## VI. JURY DEMAND

66.    Plaintiffs demand a jury trial and tender the appropriate fee with this Petition.

## VII. CONDITIONS PRECEDENT

67.    All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## VIII. REQUEST FOR DISCLOSURES

Pursuant to Texas Rule of Civil Procedure 194, you are requested to disclose, within thirty (30) days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, JOHN MOORE SERVICES, INC. and JOHN MOORE RENOVATION, LLC, respectfully request that the Court issue citation for the Defendant, THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC., and that, upon final trial, Plaintiffs, JOHN MOORE SERVICES, INC. and JOHN MOORE RENOVATION, LLC, have judgment against Defendant, THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC., for damages in excess of the minimum jurisdictional limits of this Court, including actual and punitive damages, pre and post judgment interest thereon at the highest legal rate allowed, together with costs of Court, reasonable attorneys' fees and for such other and further relief, both general and specific, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Certified Document Number: 52536293 - Page 18 of 19

Respectfully submitted,

JOHNSON, TRENT, WEST & TAYLOR, LLP


By: _Lori Hood / KEC_____
     Lori Hood
     State Bar No. 09943430
     Brian P. Johnson
     Texas Bar No. 10685700
     919 Milam Street, Suite 1700
     Houston, Texas 77002
     (713) 222-2323
     (713) 222-2226 (*facsimile*)
     lhood@johnsontrent.com
     bjohnson@johnsontrent.com

**Attorneys for Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC**

Certified Document Number: 52536293 - Page 19 of 19



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    April 20, 2015

Certified Document Number:        52536293 Total Pages:  19

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit B

Filed 13 October 04 A10:50
Chris Daniel - District Clerk
Harris County
ED101J017752205
By: Jerri Coble

*CAFX*
*LFPLX*

NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC., ET AL. | § | |
| | § | 269th JUDICIAL DISTRICT COURT |

## ORDER

On this day came on to be heard Plaintiffs' Motion for Continuance and to Extend the Deadlines in the Docket Control Order. After considering the motion and reviewing the pleadings on file, the Court is of the opinion that the motion should be GRANTED. It is therefore,

ORDERED, that this case be reset for trial on the two week trial docket beginning on June 2, 2014 . It is further ORDERED that the clerk will issue a new Docket Control Order. *No amended pleadings may be filed without leave of Court. Defendants are granted leave to amend their answer in response to the First Amended Petition.*

SIGNED on this the 11th day of October , 2013.

JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

256783



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 20, 2015

Certified Document Number:        57785942 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



Exhibit C

Filed 13 October 21 P5:58
Chris Daniel - District Clerk
Harris County
ED101J017781339
By: Jerri L. Coble

**CAUSE NO. 2012-35162**

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| | § | 269TH JUDICIAL DISTRICT COURT |

**NOTICE OF HEARING**

Please take notice that Defendant The Better Business Bureau of Metropolitan Houston, Inc.'s Motion for Reconsideration and to Vacate Prior Rulings, Strike Plaintiffs' Amended Petition, and Quash Discovery has been set for oral hearing before the 269th Judicial District Court, Harris County, Texas, on Friday, November 1, 2013, at 10:00 a.m.

Dated: October 21, 2013.

Respectfully submitted,

**PORTER HEDGES LLP**

    /s/ Jeffrey R. Elkin

By:  Jeffrey R. Elkin
      State Bar No. 06522180
      jelkin@porterhedges.com
      M. Harris Stamey
      State Bar No. 24060650
      hstamey@proterhedges.com
      Jonna N. Summers
      State Bar No. 24060649
      jsummers@porterhedges.com
      1000 Main Street, 36th Floor
      Houston, Texas 77002
      (713) 226-6617 – Office
      (713) 226-6217 – Fax

ATTORNEYS FOR DEFENDANT, THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC.

1

3486979v1

Certified Document Number: 57898801 - Page 1 of 2

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of foregoing document has been served upon all counsel of record on the 21st day of October 2013, as follows:

Lori Hood
Tamara Madden
919 Milam Street, Suite 1700
Houston, TX  77002
(713) 222-2323 (telephone)
(713) 222-2226 (facsimile)
lhood@johnsontrent.com
tmadden@johnsontrent.com
**Attorneys for Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC**

☐    By facsimile transmission
☒    By electronic transmission
☐    By deposit in the United States Mail
☒    By CMRRR
☐    By hand-delivery

/s/ Jeffrey R. Elkin
Jeffrey R. Elkin

2

3486979v1

Certified Document Number: 57898801 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    April 20, 2015

Certified Document Number:        57898801 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit D

Certified Document Number: 58115848 - Page 1 of 2



$$P.2$$
$$JTPLX$$
$$QUDEX$$

CAUSE NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and JOHN MOORE RENOVATION, LLC Plaintiffs, | § § § | IN THE DISTRICT COURT OF |
| V. | § § | HARRIS COUNTY, TEXAS |
| THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC. Defendant. | § § § § | 269TH JUDICIAL DISTRICT COURT |

**FILED**
Chris Daniel
District Clerk

NOV 0 1 2013

Time: _____
Harris County, Texas
By _____
Deputy

## ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION AND TO VACATE PRIOR RULINGS, STRIKE PLAINTIFFS' AMENDED PETITION, AND QUASH DISCOVERY

Before the Court is Defendant The Better Business Bureau of Metropolitan Houston, Inc.'s Motion for Reconsideration and to Vacate Prior Rulings, Strike Plaintiffs' Amended Petition, and Quash Discovery ("the Motion"). Having considered the Motion, any response and reply thereto, the pleadings, and the applicable law, the Court finds that the Motion should be, and hereby is, GRANTED in its entirety. It is, therefore,

ORDERED that Plaintiff's First Amended Original Petition is stricken in its entirety. It is further,

ORDERED that the Order on Plaintiffs' Motion for Continuance and to Extend the Deadlines in the Docket Control Order signed October 11, 2013, is hereby vacated. It is further,

ORDERED that the Trial Preparation Order signed October 11, 2013, is hereby vacated. It is further,

ORDERED that the Docket Control Order signed October 15, 2013, is hereby vacated. It is further,

ORDERED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. is not required to respond or object to Plaintiffs' Second Request for Production to Defendant

RECORDER'S MEMORANDUM
This instrument is of poor quality at the time of imaging

1

Better Business Bureau of Metropolitan Houston, Inc. until further order of this Court, if any. It is further,

ORDERED that Plaintiffs' Notice of Intention to Take Deposition on Written Questions of American Residential Services a/k/a ARS Rescue Rooter ("ARS") and subpoena *duces tecum* is hereby quashed in its entirety and that Plaintiffs are required to immediately notify ARS of same.

SIGNED this 1st day of November, 2013.

_____
JUDGE PRESIDING

Certified Document Number: 58115848 - Page 2 of 2

2

3484638



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 20, 2015

Certified Document Number:        58115848 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit E

CAUSE NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| Plaintiffs, | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| Defendant. | § | 269TH JUDICIAL DISTRICT COURT |

## DEFENDANT THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC.'S MOTION FOR AWARD OF ATTORNEYS' FEES, COURT COSTS, EXPENSES, AND SANCTIONS AND FOR ENTRY OF FINAL JUDGMENT

Defendant The Better Business Bureau of Metropolitan Houston, Inc. ("Houston BBB") files this Motion for Award of Attorneys' Fees, Court Costs, and Expenses, and Sanctions, and for Entry of Final Judgment, and in support thereof would show the Court as follows:

I.    THE HOUSTON BBB IS ENTITLED TO RECOVER ITS FEES, COURT COSTS, EXPENSES, AND SANCTIONS UNDER CHAPTER 27.

Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code ("Chapter 27"), the Houston BBB moves to recover its reasonable and necessary attorneys' fees, court costs, and expenses incurred in defending this legal action brought by Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC (collectively "John Moore"). The Houston BBB also seeks at least $50,000 in sanctions to deter John Moore from bringing similar actions in the future.

Section 27.009(a) of the statute provides that "[i]f the court orders dismissal of a legal action under this chapter, the court *shall award* to the moving party:

(1)    court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require;

1

Certified Document Number: 60397672 - Page 1 of 11

3691198

(2)     sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter."

TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West 2014) (emphasis added).

On July 16, 2013, the First Court of Appeals held that the Houston BBB "satisfied its burden under [Chapter 27] to show that John Moore's claims against it are based on, relate to, or are in response to, the exercise of [its] free speech rights," and that John Moore "failed to sustain its burden to show, by clear and specific evidence, a prima facie case for each essential element of its claims...." *The Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, No. 01-12-00990-CV, 2013 WL 3716693, *12 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). It "remand[ed] the case to the trial court for further proceedings" under Section 27.009(a) of Chapter 27. *Id.*[1] Upon remand, the trial court is to grant the "motion[] to dismiss and award [the defendant] reasonable attorney's fees and court costs in accordance with section 27.009(a)." *Fitzmaurice v. Jones*, 417 S.W.3d 627, 634 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

A.     **The Award of Fees, Costs, and Expenses to the Houston BBB is Mandatory, Equitable, and Just.**

It has been established that this legal action against the Houston BBB improperly interfered with the Houston BBB's exercise of its right to free speech, and that John Moore did not have sufficient evidence to present even a *prima facie* case in support of its claims. *John Moore Servs., Inc.*, 2013 WL 3716693 at *12. As a result, under Section 27.009(a), the award of attorneys' fees, costs, and expenses to the Houston BBB is mandatory. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a); *Sierra Club v. Andrews County*, 418 S.W.3d 711, 720 (Tex. App.—El Paso 2013, pet. filed) ("As the prevailing party, Sierra Club is entitled [under Chapter 27] to an

---

[1]     John Moore's petition for review to the Texas Supreme Court was denied on February 14, 2014, and mandate issued from the First Court of Appeals on April 3, 2014. *See* **Exhibit A,** Mandate.

2

3691198

award of reasonable attorney's fees and costs established by the evidence."); *Alphonso v. Deshotel*, 417 S.W.3d 194, 200 (Tex. App.—El Paso 2013, no pet.) ("[Chapter 27] mandates the award of attorney's fees and costs to a successful movant."); *see also Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998) ("Statutes providing that a party 'may recover,' 'shall be awarded', or 'is entitled to' attorney fees are not discretionary.").[2]

Moreover, during the course of this legal action, John Moore refused to take reasonable steps to limit the litigation costs; *e.g.*, John Moore refused to agree to stay discovery during the pendency of the Houston BBB's interlocutory appeal, John Moore served extensive written discovery on the Houston BBB including seventy-six (76) separate requests for documents which required the Houston BBB to review and produce over 5,000 pages of documents, and John Moore attempted to add causes of action and defendants to the lawsuit even after the First Court of Appeals ruled in favor of the Houston BBB and a mandatory statutory stay of all proceedings was in place.[3] Given that the Houston BBB prevailed in the face of John Moore's conduct, the award of fees, costs, and expenses is equitable and just under the circumstances.

## B. The Attorneys' Fees, Court Costs, and Expenses Incurred by the Houston BBB are Reasonable and Necessary.

The Houston BBB submits the affidavit of its attorney-in-charge, Jeffrey R. Elkin, along with all of the invoices reflecting the legal work performed by Porter Hedges LLP ("Porter Hedges") on behalf of the Houston BBB in connection with this legal action as evidence of the

---

[2] *Citing D.F.W. Christian Television, Inc. v. Thornton*, 933 S.W.2d 488, 490 (Tex.1996) (applying TEX. CIV. PRAC. & REM.CODE § 38.001(8)); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (discussing "reasonable and necessary attorneys' fees" under TEX. BUS. & COM. CODE § 17.50(d)); *Ragsdale v. Progressive Voters League*, 790 S.W.2d 77, 86 (Tex. App.—Dallas 1990), *aff'd in part and rev'd in part on other grounds*, 801 S.W.2d 880 (Tex.1990) (applying former TEX. ELEC. CODE § 251.008, recodified as § 253.131).

[3] Plaintiffs' First Amended Petition ("Amended Petition") was filed on September 27, 2013 (attached as **Exhibit B**), two months after the July 16, 2013 decision by the First Court of Appeals (Ex. A, Mandate).

3

3691198

reasonable and necessary attorneys' fees, court costs, and expenses incurred by the Houston BBB. *See* **Exhibit C**, Affidavit of Jeffrey Elkin ("Elkin Aff."), with Invoices attached as Ex. 2.

Whether fees are reasonable and necessary is a question of fact. *Bocquet*, 972 S.W.2d at 20–21. The Texas Supreme Court has delineated the following factors courts must consider when determining the reasonableness of a fee:

(a)    the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(b)    the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(c)    the fee customarily charged in the locality for similar legal services;

(d)    the amount involved and the results obtained;

(e)    the time limitations imposed by the client or by the circumstances;

(f)    the nature and length of the professional relationship with the client;

(g)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(h)    whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY R. OF PROF'L CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. (STATE BAR RULES art. X, § 9)). "A litigant need not present evidence on each of these factors. The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the

4

3691198

relative success of the parties." *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.).[4]

The reasonableness of a fee can be established as a matter of law where clear, direct, and uncontroverted evidence is submitted and the opposing party fails to disprove the testimony despite having had the opportunity to do so. *Cleveland v. Taylor*, 397 S.W.3d 683, 701 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Since this action was filed on June 18, 2012, the Houston BBB has incurred $390,858.35 in legal fees, $62.35 in court costs, and $6,237.77 in expenses defending against John Moore's claims. **Ex. C**, Elkin Aff. ¶¶ 8, 11. The fees, costs, and expenses are broken out on a monthly basis as follows:

| Month/Year | Fees | Court Costs | Expenses | Monthly Totals |
|---|---|---|---|---|
| June 2012 | $4,017.50 | $0.00 | $0.00 | $4,017.50 |
| July 2012 | $11,224.50 | $0.00 | $132.01 | $11,356.51 |
| August 2012 | $37,314.50 | $28.00 | $155.80 | $37,498.30 |
| September 2012 | $25,056.00 | $0.00 | $481.79 | $25,537.79 |
| October 2012 | $7,017.00 | $2.35 | $40.80 | $7,675.15 |
| November 2012 | $459.50 | $0.00 | $581.32 | $1,040.82 |
| December 2012 | $4,109.00 | $0.00 | $70.64 | $4,179.64 |
| **2012 Total** | **$89,198.00** | **$30.35** | **$1,462.36** | **$91,305.71** |
| January 2013 | $29,035.00 | $0.00 | $235.48 | $29,270.48 |
| February 2013 | $62,205.25 | $0.00 | $827.01 | $63,032.26 |
| March 2013 | $22,745.50 | $19.00 | $443.60 | $23,208.10 |
| April 2013 | $41,732.10 | $0.00 | $1,474.92 | $43,207.02 |
| May 2013 | $34,886.00 | $13.00 | $251.26 | $35,150.26 |
| June 2013 | $5,751.50 | $0.00 | $55.22 | $5,806.72 |
| July 2013 | $12,927.50 | $0.00 | $0.00 | $12,927.50 |
| August 2013 | $3,727.50 | $0.00 | $0.00 | $3,727.50 |
| September 2013 | $4,177.50 | $0.00 | $0.00 | $4,177.50 |
| October 2013 | $46,198.50 | $0.00 | $268.17 | $46,466.67 |
| November 2013 | $5,837.50 | $0.00 | $125.76 | $5,963.26 |
| December 2013 | $11,553.00 | $0.00 | $595.42 | $12,148.42 |
| **2013 Total** | **$280,776.85** | **$32.00** | **$4,276.84** | **$285,085.69** |
| January 2014 | $13,348.50 | $0.00 | $498.57 | $13,847.07 |

---

[4] *Citing Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Rapid Settlements, Ltd. v. Settlement Funding, LLC*, 358 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

5

3691198

Certified Document Number: 60397672 - Page 5 of 11

| Month/Year | Fees | Court Costs | Expenses | Monthly Totals |
|---|---|---|---|---|
| February 2014 | $821.50 | $0.00 | $0.00 | $821.50 |
| March 2014 | $6,713.50 | $0.00 | $0.00 | $6,713.50 |
| GRAND TOTAL | $390,858.35 | $62.35 | $6,237.77 | $397,773.47 |

*Id.* A detailed description of the professional services performed by Porter Hedges for the Houston BBB on a day-to-day basis in defending against Plaintiffs' legal action is contained in the monthly invoices attached to Mr. Elkin's affidavit. *Id.* at ¶ 9, Ex. 2.

In addition to the foregoing fees and expenses, the Houston BBB expects to incur at least $30,000 in legal fees after March 31, 2014 in connection with (i) finalizing this motion; (ii) reviewing and responding to any response filed by Plaintiffs; and (iii) preparing for and attending a hearing on the motion, if required. *Id.* at ¶ 12. In the event of an appeal of the fee award, the Houston BBB seeks $50,000 for fees, costs, and expenses to defend the award in the court of appeals, and an additional $50,000 if a petition for review is filed in the Texas Supreme Court. *Id.*

As explained in Mr. Elkin's affidavit, based on the knowledge and professional experience he has gained as a commercial trial attorney practicing in Harris County, Texas for the past 26 years, the circumstances of the case including the novelty and complexity of the Chapter 27 motion practice, and the *Arthur Andersen* factors, the fees, expenses, and costs incurred by the Houston BBB in defending against John Moore's legal action are reasonable and were necessary. *Id.* at ¶¶ 13–31. It is also Mr. Elkin's professional opinion that the estimated additional fees to be incurred in connection with this motion, any associated hearing, and an appeal, if any, are reasonable based on the course and conduct of the litigation thus far and should likewise be awarded by the Court in accordance with section 27.009(a). *Id.* at ¶¶ 13–31.

3691198

Certified Document Number: 60397672 - Page 6 of 11

Because John Moore will be unable to offer any material evidence to the contrary, the Houston BBB's fees, costs, and expenses should be awarded in full.

**C.    The Court Should Impose at least $50,000 in Sanctions Against John Moore to Deter It From Bringing Similar Actions.**

In addition to attorneys' fees, "Section 27.009(a)(2) provides that if the court orders dismissal, it 'shall award to the moving party ... sanctions against the party who brought the legal action as the court determines sufficient to deter the party ... from bringing similar actions.'" *Kinney v. BCG Attorney Search, Inc.*, 03-12-00579-CV, 2013 WL 4516106, *1 (Tex. App.— Austin Aug. 21, 2013, no pet.) (mem. op.) (*citing* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2)).

An award of sanctions against John Moore is appropriate here because John Moore has already demonstrated its continued willingness to try to improperly limit the Houston BBB's legitimate exercise of its right of free speech. First, John Moore filed – more than two months *after* the First Court of Appeals held that the Houston BBB's Motion to Dismiss should be granted and that this legal action should, therefore, be dismissed – the Amended Petition which improperly sought to join nine (9) new defendants and add thirteen (13) causes of action. *Compare* Ex. A, Mandate to Ex. B, Amended Petition. The Amended Petition was based upon the same set of facts alleged in its Original Petition, including the Houston BBB's business review and rating of John Moore. Ex. B. Amended Petition ¶¶ 15–41.

Second, after the Court struck the Amended Petition due to John Moore's violation of the statutory stay of all trial court proceedings (*see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(b)), John Moore continued its attack on the Houston BBB's exercise of its right of free speech by filing a new legal action (the "Second Legal Action") against the Houston BBB and its officers and volunteer directors that is practically identical to the Amended Petition, arises out of

7

Certified Document Number: 60397672 - Page 7 of 11

3691198

the same set of core facts as John Moore's Original Petition here, and, importantly, centers around the Houston BBB's exercise of its right of free speech through its business reviews and ratings. *See* John Moore's First Amended Original Petition in Cause No. 2013-76215 ("New Petition"), attached hereto as **Exhibit D**.[5] John Moore's filing of the Second Legal Action demonstrates that sanctions need to be imposed to deter John Moore from continuing to interfere with the Houston BBB's exercise of its right to free speech through publishing its business reviews and ratings.

An award of $75,000 in sanctions pursuant to Chapter 27 was recently upheld by the Austin Court of Appeals in a similar action where the plaintiff had filed a second lawsuit in Texas after its claims were dismissed in California under California's version of the Anti-SLAPP statute. *Kinney*, 2013 WL 4516106, *9–10, a copy of which is attached as **Exhibit E**. The plaintiff in *Kinney*, like John Moore, had filed multiple actions against the defendant for the same harm asserted under various legal theories, and in one of those actions a court had awarded the defendant $45,000 in attorneys' fees. *Id.* at *10. Acknowledging that Section 27.009(a)(2) "gives the trial court broad discretion to determine what amount is sufficient to deter the party from bringing similar actions in the future[,]" the Austin Court of Appeals concluded that the sanction of $75,000 had a direct relationship to the plaintiff's conduct and that the trial court did not abuse its discretion in determining that a lesser sanction would have been insufficient to deter further actions by the defendant. *Id.*

Given that John Moore has demonstrated its intent to continue to file and prosecute meritless lawsuits against the Houston BBB that improperly seek to restrict the Houston BBB's

---

[5] Although Plaintiffs' Original Petition in Cause No. 2013-76215 was initially filed in the 129th Judicial District Court of Harris County, Texas, the lawsuit was transferred upon the granting of an agreed motion by the parties to this Court. As of the filing of this Motion, the Houston BBB's Chapter 27 Motion to Dismiss in Cause No. 2013-76215 is pending and set to be heard on May 23, 2014.

8

3691198

exercise of its right of free speech (*see* Ex. A, Mandate; Ex. D, New Petition), and the fact that the Houston BBB has already incurred over $90,000 in attorneys' fees in defending against the Second Legal Action (Ex. C, Elkin Aff. at ¶ 31), an award of at least $50,000 in sanctions against John Moore is necessary and appropriate under section 27.009(a)(2) to deter John Moore from bringing any subsequent legal actions prohibited by Chapter 27.

## II.     CONCLUSION AND PRAYER

Plaintiffs' lawsuits against the Houston BBB are precisely the type of legal actions that Chapter 27 is designed to discourage. The First Court of Appeals ruled that the Houston BBB's motion to dismiss should be granted and that the case be remanded back to this Court for further proceedings under Section 27.009(a), which mandates the award of attorney's fees, court costs, expenses, and sanctions in favor of the Houston BBB. Therefore, the Houston BBB prays for the following:

1.     The admission into evidence of the Affidavit of Jeffrey R. Elkin and the exhibits attached thereto;

2.     The denial of any objections to the Affidavit of Jeffrey R. Elkin and/or the exhibits attached thereto by John Moore;

3.     An award of $390,858.35 in attorneys' fees, $62.35 in court costs, and $6,237.77 in expenses, to be paid by John Moore to the Houston BBB within 90 days of the date final judgment is entered;

4.     An award of an additional $30,000 for anticipated legal fees, court costs, and expenses associated with this Motion, any hearing hereon, and the entry of final judgment;

5.     An award of $50,000 for attorneys' fees and costs in the event an unsuccessful appeal is filed, and an award of $50,000 for attorneys' fees and costs if a petition for review is sought in the Texas Supreme Court;

6.     That sanctions be imposed against John Moore and awarded to the Houston BBB of not less than $50,000 to discourage John Moore from filing of any similar actions against the Houston BBB in the future;

3691198

7.     Entry of final judgment that Plaintiffs take nothing by their claims and causes of action against the Houston BBB; and

8.     For such other and further relief to which it may be entitled.

Dated: April 11, 2014.

Respectfully submitted,

**PORTER HEDGES LLP**

By:       /s/ Jeffrey R. Elkin
                Jeffrey R. Elkin, SBN 06522180
                M. Harris Stamey, SBN 24060650
                1000 Main Street, 36th Floor
                Houston, Texas 77002-6336
                Telephone:  (713) 226-6617
                Telecopier:  (713) 226-6217
                jelkin@porterhedges.com
                mstamey@porterhedges.com

**ATTORNEYS FOR DEFENDANT,
THE BETTER BUSINESS BUREAU OF
METROPOLITAN HOUSTON, INC.**

Certified Document Number: 60397672 - Page 10 of 11

3691198

10

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of foregoing document has been served upon all counsel of record on the 11th day of April, 2014, as follows:

| | | |
|---|---|---|
| Lori Hood | ☐ | By facsimile transmission |
| Tamara Madden | ☒ | By electronic transmission |
| Brian P. Johnson | ☐ | By deposit in the United States Mail |
| 919 Milam Street, Suite 1700 | ☐ | By CMRRR |
| Houston, TX 77002 | ☐ | By hand-delivery |
| (713) 222-2323 (telephone) | | |
| (713) 222-2226 (facsimile) | | |
| lhood@johnsontrent.com | | |
| tmadden@johnsontrent.com | | |
| bjohnson@johnsontrent.com | | |

**ATTORNEY FOR PLAINTIFFS, JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC**


/s/ Jeffrey R. Elkin
Jeffrey R. Elkin

Certified Document Number: 60397672 - Page 11 of 11

11

3691198



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 20, 2015

Certified Document Number:        60397672 Total Pages:  11

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Exhibit F

NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | 269th JUDICIAL DISTRICT COURT |

## SECOND AMENDED NOTICE OF ORAL HEARING

Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC, hereby file this, their Second Amended Notice of Oral Hearing on Defendant, the Better Business Bureau of Metropolitan Houston, Inc.'s Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and For Entry of Final Judgment. The oral hearing, originally set for Friday, May 30, 2014 at 3:00 p.m., was moved to June 27, 2014 at 3:00 p.m. and then moved by the Court to June 6, 2014; however, due to scheduling conflicts, the hearing will go forward on *June 27, 2014, at 3:00 p.m.*

Respectfully submitted,

JOHNSON, TRENT, WEST & TAYLOR, LLP

By: /s/ Lori Hood
Lori Hood
Texas Bar No. 09943430
Tamara Madden
Texas Bar No. 00783720
919 Milam Street, Suite 1700
Houston, Texas 77002
(713) 222-2323
(713) 222-2226 (*facsimile*)
lhood@johnsontrent.com
tmadden@johnsontrent.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record pursuant to Rule 21 and Rule 21(a) of the TEXAS RULES OF CIVIL PROCEDURE on this 27th day of May, 2014.

Jeffrey R. Elkin                                                          *Via E-Service and Facsimile*
M. Harris Stamey
Porter Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
jelkin@porterhedges.com
mstamey@porterhedges.com


/s/ Lori Hood
LORI HOOD


313986.1-04162014

2

```
        *********************
        ***  TX REPORT  ***
        *********************

    TRANSMISSION OK

    TX/RX NO              0755
    RECIPIENT ADDRESS     227*7132266217
    DESTINATION ID
    ST. TIME              05/27 15:02
    TIME USE              01'03
    PAGES SENT            3
    RESULT               OK
```



**JohnsonTrent**

919 Milam, Suite 1700
Houston, TX 77002

(713) 222-2323 Telephone
(713) 222-2226 Facsimile

### FACSIMILE TRANSMITTAL

Number of Pages (including cover): _____3_____        Date: May 27, 2014

| Recipient | Fax Number | Telephone Number |
|---|---|---|
| Jeffrey R. Elkin | (713) 226-6217 | (713) 226-6617 |

From: **Lori Hood**                 Telephone: **(713) 860-0547**

| MESSAGE: |
|---|
| Re:    Cause No. 2012-35162; *John Moore Services, Inc., et al v. The Better Business Bureau of Metropolitan Houston, Inc.*; 269th Judicial District Court of Harris County, Texas <br><br> **PLEASE SEE ATTACHED. THANK YOU.** |

**Confidentiality Notice:** The documents accompanying this facsimile transmission contain confidential information which is legally privileged and intended only for the use of the recipient named below. We request immediate notification by telephone of misrouted facsimile transmissions so that we can arrange for return of those documents to us. If you receive this facsimile in error, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this faxed information is strictly prohibited.

Any Difficulties, Please Call 713.222.2323

 **JohnsonTrent**

919 Milam, Suite 1700
Houston, TX 77002

(713) 222-2323 Telephone
(713) 222-2226 Facsimile

FACSIMILE TRANSMITTAL

Number of Pages (including cover): ___3___        Date: May 27, 2014

| Recipient | Fax Number | Telephone Number |
|---|---|---|
| Jeffrey R. Elkin | (713) 226-6217 | (713) 226-6617 |

From: **Lori Hood**                    Telephone: **(713) 860-0547**

| MESSAGE: |
|---|

Re:    Cause No. 2012-35162; *John Moore Services, Inc., et al v. The Better Business Bureau of Metropolitan Houston, Inc.*; 269th Judicial District Court of Harris County, Texas

**PLEASE SEE ATTACHED. THANK YOU.**

---

**Confidentiality Notice:** The documents accompanying this facsimile transmission contain confidential information which is legally privileged and intended only for the use of the recipient named below. We request immediate notification by telephone of misrouted facsimile transmissions so that we can arrange for return of those documents to us. If you receive this facsimile in error, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this faxed information is strictly prohibited.

Any Difficulties, Please Call 713.222.2323

Charge:  Client No.: ___323___
         Matter No.: ___00001___

Print this page

# Case # 201235162

## Case Information

| | |
|---|---|
| Location | Harris County - 269th Civil District Court |
| Date Filed | 05/27/2014 02:42:57 PM |
| Case Number | 201235162 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Lori Hood |
| Firm Name | Johnson Trent West & Taylor LLP |
| Filed By | Alexandria Chaffin |
| Filer Type | Attorney |

## Fees

| | |
|---|---|
| Convenience Fee | $0.06 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $2.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $2.06 |

## Payment

| | |
|---|---|
| Account Name | Johnson Trent EFile |
| Transaction Amount | $2.06 |
| Transaction Response | |
| Transaction ID | 2268941 |
| Order # | 001367403-0 |

## No Fee Documents Not Answers

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | No Fee Documents Not Answers |
| Filing Description | Second Amended Notice of Hearing |
| Reference Number | 323.1 |
| Comments | |
| Status | Submitting |

## Fees

Court Fee                    $0.00

Service Fee                  $0.00

## Documents

*Lead Document*              2nd Amended Notice of Hearing.pdf                    [Original]

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| M. Harris Stamey hstamey@porterhedges.com | Porter Hedges, LLP | EServe | Not Sent | No | Not Opened |
| Jeffrey R. Elkin jelkin@porterhedges.com | Porter Hedges LLP | EServe | Not Sent | No | Not Opened |
| Jeffrey Elkins jelkin@porterhedges.com | | EServe | Not Sent | No | Not Opened |
| Tamara M. Madden tmadden@JohnsonTrent.com | Johnson, Trent, West & Taylor, L.L.P. | EServe | Not Sent | No | Not Opened |
| Lori Hood lhood@johnsontrent.com | | EServe | Not Sent | No | Not Opened |
| M. Harris Stamey mstamey@porterhedges.com | | EServe | Not Sent | No | Not Opened |

Exhibit G

NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. *et al.*, | § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC., | § | |
| *Defendant.* | § | 269TH JUDICIAL DISTRICT |



## ORDER SETTING HEARING

The Court held a telephone conference this afternoon to resolve the scheduling differences that the Parties have confronted over when to hear Defendant's Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and for Entry of Final Judgment. Lead counsel agreed that all sides are available to attend a hearing at 9:00 a.m. on Thursday, June 19, 2014.

Therefore, the Court *ORDERS* that it will hold a hearing on Defendant's Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and for Entry of Final Judgment on **Thursday, June 19, 2014 at 9:00 a.m.**

The Court *ORDERS* that this hearing may not be reset except by Court order.

The Court further *ORDERS* Plaintiff to serve and file any response to Defendant's motion by Thursday, June 12, 2014.

The Court further *ORDERS* that each Party serve a copy of this Order immediately on all other Parties by facsimile and either certified mail, return-receipt requested or hand-delivery. The Court further *ORDERS* each Party to file a Certificate of Service with the Court describing the manner in which the Party served the Order.

*SIGNED* at Houston, Texas this 4th day of June, 2014.

Hon. Dan Hinde
Judge, 269th Judicial District Court

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Exhibit H

NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | 269th JUDICIAL DISTRICT COURT |

## PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES, COURT COSTS, EXPENSES, AND SANCTIONS AND FOR ENTRY OF FINAL JUDGMENT AND PLAINTIFFS' MOTIONS TO CONSOLIDATE AND TO COMPEL

Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC, ("John Moore" or "Moore") hereby file this their Response and Objection to Defendant, The Better Business Bureau of Metropolitan Houston, Inc.'s ("Houston BBB" or "BBB") Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and for Entry of Final Judgment ("Motion") and, in support thereof, state as follows.

### SUMMARY OF THE ARGUMENT

The Houston BBB, by and through its counsel Porter Hedges, LLC, ("Porter Hedges"), seeks an award of $390,858.35 in fees, $6,237.77 in expenses, $62.35 in court costs, and $50,000 in sanctions. There are two considerations to an award of attorneys' fees under Chapter 27: (1) whether they are reasonable and necessary and (2) whether they are equitable and just.[1] The first consideration is a question for the factfinder, which in this case is a jury. The second is a question for the judge sitting in equity.

---

[1] While section 27.009 says "reasonable attorney's fees," necessity is inseparable under Texas jurisprudence from reasonableness. *See infra*, at p.6. In other words, unnecessary fees would be unreasonable. Therefore, this motion includes the concept of necessity when discussing the fact issues that must be decided.

Certified Document Number: 61188586 - Page 1 of 21

The primary issue before the trier of fact will be whether the amount sought by Porter Hedges in its Motion is reasonable and necessary. TEX. CIV. PRAC. & REM. CODE § 27.009(a). As the Houston BBB seeks nearly $400,000.00 in fees and expenses, close examination and careful consideration of its Motion and evidence is indeed warranted. It is against this backdrop that the trier of fact is asked to review the fees and expenses at issue. Even if the Houston BBB has presented some evidence that the fees are reasonable and necessary, it has not presented conclusive evidence. Therefore, a fact finding will be required, and John Moore has requested a jury and paid the jury fee in this case.

The primary issue before the judge will be whether the amount sought by Porter Hedges is just and equitable and whether John Moore must bear sanctions. TEX. CIV. PRAC. & REM. CODE § 27.009(a), (b). Because the Houston BBB has not achieved a dismissal of all claims that John Moore has brought, it is not at all clear that it would be just or equitable to award attorneys' fees or sanctions based on the Houston BBB's partial victory. Furthermore, the Houston BBB's own arguments emphasize the uncertainty that the parties confronted with this newly enacted statute. There was a great amount of uncertainty in 2012 whether Chapter 27 should be interpreted to apply to the claims made in this lawsuit, or what standard of proof John Moore would be required to establish to survive a motion to dismiss. Under these circumstances, it is neither equitable nor just to award almost half a million dollars in fees and sanctions against John Moore.

**BACKGROUND**

John Moore filed suit against the Houston BBB for reputational torts, fraud, and interference with prospective and existing contracts. The BBB argued that the claims against it arose out of its right to participate in government by freely speaking, associating, and petitioning

2

and filed a motion to dismiss under section 27.005 of the Texas Civil Practice and Remedies Code (the Anti-SLAPP statute).

During the pendency of the Anti-SLAPP motion, this Court allowed only limited discovery, *i.e.*, the production of BBB consumer complaints.

In response to the Anti-SLAPP motion, John Moore argued that the statute did not apply under the circumstances, and presented evidence in support of each essential element of its claims. The Court signed an order denying the BBB's motion to dismiss.

In response to this Court's denial of its motion, the Houston BBB elected to file an interlocutory appeal. As the Houston BBB notes, the preparation of this case for trial continued. Both parties engaged in discovery. In the end, the First Court of Appeals reversed this Court's order, and John Moore's petition for review was denied. The case was remanded to the trial court for further proceedings.

In light of the court of appeals' decision, John Moore amended it petition to assert causes of action (1) that were supported and suggested by the evidence discovered after the motion to dismiss was denied and (2) that would not implicate the Houston BBB's speech rights. Pursuant to the Houston BBB's motion, that amended petition was struck, forcing John Moore to file the causes of action in a separate suit and giving the Houston BBB another bite at the Chapter 27 apple.

Defendant now seeks recovery of attorney's fees, expenses and court costs under section 27.009(a) of the Anti-SLAPP statute. The statute provides that costs and "reasonable" attorney's fees shall be awarded to the moving party as "justice and equity may require." *Id.* As noted below, the determination as to the reasonableness of fees is a fact issue for the trier of fact. John Moore reiterates its demand from its original petition that a jury consisting of twelve good and

3

Certified Document Number: 61188586 - Page 3 of 21

lawful jurors be duly qualified, tested, selected, and impaneled and the case proceed to trial on the reasonableness and necessity of the requested attorney's fees, expenses and court costs and any and all other fact issues.

John Moore also asks that the court consolidate the cases.

## ARGUMENT

The Houston BBB does not state the basis for its motion. In the latest conference with the Court, the Houston BBB has characterized it as a motion for judgment in preparation for a bench trial. At other times, the Houston BBB's attorneys have characterized it as a motion for summary judgment. In either event, the motion cannot be granted.

First, a bench trial is not appropriate. John Moore filed a jury demand, paid the fee, and this case is pending on the jury docket. Reasonableness of attorneys' fees is a question for the fact finder, which, in this case, is a jury. Second, the Houston BBB has not presented conclusive evidence that the fees are reasonable and necessary. Indeed, it is not certain that the Houston BBB has presented competent evidence at all. Finally, an award of fees would be neither just nor equitable at this time, and the question of sanctions is premature and overreaching as to amount.

## I.    REASONABLENESS OF ATTORNEYS' FEES IS AN ISSUE FOR THE JURY.

John Moore is entitled to a jury trial on the question of reasonableness of attorneys' fees. Chapter 27 requires a determination of "reasonable attorney's fees." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Because this is a fact issue and because John Moore has requested a jury trial in this case, this issue cannot be tried to the bench. The BBB even admits in its Motion that whether fees are reasonable and necessary is a question of fact, citing *Bocquet v. Herring*, 972 S.W.2d 19, 20-21. (Tex. 1998). *See* Motion, p. 4.

4

Fee shifting provisions in which the reasonableness of a fee must be determined present a jury issue. The Texas Supreme Court has consistently interpreted similar fee shifting provisions to raise fact questions on the issues of reasonableness and necessity that entitle the party against whom the fees are to be assessed to demand a jury trial. *See Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 213 (Tex. 2011) (and cases cited therein); *see also Commerce & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 748-49 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (reversing and remanding for a jury trial the bench trial judgment awarding attorneys' fees). Chapter 27 is indistinguishable from other similar fee shifting provisions as discussed below.

Like the Citizens' Participation Act, the Texas Labor Code mandates that "the court" award attorneys' fees to a workers' compensation claimant under a fee shifting provision. *Crump*, 330 S.W.3d at 213. The injured worker submitted his attorneys' fees to the bench and the trial court awarded fees, but the insurer argued that it was entitled to a jury determination under the statute. *Id.* at 214. The Texas Labor Code provides:

> An insurance carrier . . . is liable for reasonable and necessary attorney's fees . . . if the claimant prevails on an issue on which judicial review is sought . . . . **[T]he court** shall apportion and award fees to the claimant's attorney only for the issues on which the claimant prevails. In making that apportionment, **the court** shall consider the factors prescribed . . . .

TEX. LAB. CODE § 408.221 (emphasis added). The Texas Supreme Court noted that the statute mentioned "the court" but was "silent on the critical judge-or-jury question." *Crump*, 330 S.W.3d at 229. The Court considered this silence to create an ambiguity and relied on the common law interpretations of other fee-shifting provisions to resolve the ambiguity. *Id.*

The Court noted that fee shifting provisions generally raise a fact issue. *Id.* at 230 ("In general, the reasonableness of statutory attorney's fees is a jury question."). For example, the Public Information Act also states that "the court" is to assess the amount of reasonable and

5

necessary fees. *Id.* at 230 (citing TEX. GOVT. CODE § 552.323). The Texas Supreme Court determined this to be a jury question. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000).

Likewise, the Declaratory Judgment Act permits "the court" to award reasonable and necessary fees. TEX. CIV. PRAC. & REM. CODE § 37.009. Because reasonableness and necessity are both fact issues, they are questions that are committed to a jury. *Crump*, 330 S.W.3d at 231 (citing *Bocquet*, 972 S.W.2d at 21). Applying this general rule to the statute in *Crump*, the Court decided that the Texas Workers' Compensation Act's fee shifting provision preserved the right to "submit the issue of the reasonableness and necessity of a claimant's attorney's fees, where disputed, to a jury." *Id.* at 231.

Thus, in three other fee shifting provisions mandating or authorizing "the court" to award fees, the Texas Supreme Court has determined that "the court" means the jury when it comes to the questions of reasonableness or necessity.[2] Just like those provisions, section 27.009 of the Civil Practice and Remedies Code requires "the court" to award "reasonable attorney's fees." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Section 27.009 should be interpreted consistently with the fee shifting provisions discussed above. Therefore, "the court" must mean "the jury" on the issue of reasonableness.

As set forth in the Hood Affidavit, there is at least a fact issue as to whether the Houston BBB's fees are reasonable. Ex. A (Affidavit of Lori Hood). John Moore has requested a jury and paid the jury fee. This case is on the jury docket. John Moore is entitled to have a jury find these facts.

---

[2] On the other hand, "the court" refers to the judge when it comes to determining whether justice or equity would permit the award of fees. *Crump*, 330 S.W.3d at 231.

6

## II. THE HOUSTON BBB HAS NOT PRESENTED CONCLUSIVE EVIDENCE THAT THE ATTORNEYS' FEES ARE REASONABLE AND NECESSARY.

The Houston BBB's evidence of attorneys' fees is not conclusive. Indeed, it may not even be legally sufficient.

### A. The Houston BBB Must Provide Sufficient Evidence to Allow the Fact Finder to Make a Determination.

The Anti-SLAPP statute mandates the award of "reasonable" attorneys' fees in an amount that satisfies "justice and equity." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Texas jurisprudence has always considered reasonableness and necessity together. *See*, *e.g.*, *El Apple I, Ltd. v. Oivas*, 370 S.W.3d 757, 762-63 (Tex. 2012) (considering necessity of the fees as a component of reasonableness). Thus, the Houston BBB is tasked with providing evidence that its attorneys' fees are both reasonable and necessary.

For the fact finder to make a meaningful determination and for the Court to conduct a meaningful review, the Houston "must provide sufficient details of the work performed." *Id.* at 764. This includes, "at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Id.* The *El Apple* requirements have been elaborated upon to require "evidence of the time spent on specific tasks." *Long v. Griffin*, __ S.W.3d __, 2014 WL 1643271, at *3 (Tex. April 25, 2014).

The BBB bears the burden of proof in support of its Motion, and cannot simply provide general statements of the time spent multiplied by the hourly rate to the trier of fact. *Id.* The Texas Supreme Court has provided further guidance in the form of factors that should be considered when determining whether the requested compensation is reasonable. These guidelines are known as the "*Anderson* Factors" and are set forth below:

7

Certified Document Number: 61188586 - Page 7 of 21

Certified Document Number: 61188586 - Page 8 of 21

a. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

b. the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

c. the fee customarily charged in the locality for similar legal services;

d. the amount involved and the results obtained;

e. the time limitations imposed by the client or by the circumstances;

f. the nature and length of the professional relationship with the client;

g. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

h. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Anderson & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).

John Moore objects to the BBB's purported evidence in support of its Motion, *see infra*, pp. 15-17, and asserts that the jury is entitled to assess the credibility of the BBB's witnesses and determine the weight of the evidence and decide whether the BBB has met its burden of proof to recover fees and expenses in this matter.

**B. The Houston BBB Does Not Even Purport to Present Conclusive Evidence That Its Fees Are Reasonable and Necessary.**

Even if the Houston BBB's evidence passes the legal sufficiency test, it is certainly not conclusive. Indeed, the fees may well be unreasonable as a matter of law.

**1. The Houston BBB's proposed fee award is "patently unreasonable" according to Justice Hecht.**

In a case involving an eight-day trial, three depositions, and approximately 2,500 pages of document production, Justice Hecht opined that 890 hours of attorney time at a rate of over $500 per hour was "patently unreasonable." *El Apple I, Ltd.*, 370 S.W.3d at 765 (Hecht, J. concurring, joined by Wainwright, J. and Willet, J.). Justice Hecht also found it significant that

8

the attorneys for the opposing side spent only 266.7 hours at less than half the billing rate. *Id.* at 766. As Justice Hecht said, "Statutory fee-shifting is not a bonanza. It should take into account what the market should." *Id.*

In this case, the Houston BBB prepared and filed eight contested pleadings and motions in this Court including its 3-page answer and 10-page motion to dismiss. Ex. A ¶ 13. The Houston BBB also produced approximately 12,000 pages of documents and participated in several hearings. *Id.* In the appellate courts, the Houston BBB prepared and filed a brief of appellant, a reply brief of appellant, and a response to petition for review. *Id.* There was no trial. Discovery was limited, and no depositions were taken. *Id.* The Houston BBB seeks a bonanza for its attorneys that is not consistent with the market.

Furthermore, the fee invoices covering the periods from June 2012 through May 2013 (from the invoice dated July 23, 2012 through the invoice dated June 16, 2013) do not satisfy the most basic requirement by showing the time billed and the rate for that time.

> That proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the service and their rate, (3) approximately when he services were performed, and (4) the number of hours worked.

*El Apple*, 370 S.W.3d at 763. These invoices do not show the rate for the persons performing the work at the time they performed the work. Although the Elkin Affidavit provides billing rates for certain attorneys and legal staff, it does not provide the rates for all of the persons identified in the invoices, and it does not provide the rates that were in effect at the time of the invoice. Therefore, these invoices may not be considered.

Finally, the Houston BBB's evidence of reasonableness does not satisfy the *Long v. Griffin* standard. *Long*, at *2. The billing invoices provided include 610 entries. Of those, only 373 provide the time spent on a specific task as required by the Texas Supreme Court. *Id.*; *See*

9

Ex. B-1 (Affidavit of Amelia Irving). The other 267 combine multiple tasks and actions into a single time entry (*i.e.*, block billing), making it impossible to determine whether the time was well-spent or wasted. *Id.* This form of block billing does not even permit the fact finder to break the hours spent down into general categories such as discovery, research, pleadings, witnesses, etc., and even if this kind of general breakdown were possible, it is inadequate under Supreme Court precedent. *See El Apple*, 370 S.W.3d at 763 (holding that such categorization "provides none of the specificity needed for the trial court to make a meaningful lodestar determination.").

Without even the ability to consider the time spent on general activities, much less specific tasks, the invoices are insufficient to support a finding that the fees included therein are reasonable and necessary.

### 2. The Houston BBB has not produced conclusive evidence that the fees represented in the invoices have been incurred.

Section 27.009 only allows recovery of fees that have been "incurred." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). The Elkin Affidavit does not establish which, if any, of the fees invoiced were actually incurred by the Houston BBB in the sense that they were paid or that there is an obligation to pay them in full. The Elkin Affidavit states that "Porter Hedges has received payment for all work," but it does not specify what that payment amount was. Therefore, the Elkin Affidavit does not conclusively establish that the fees requested were incurred.

### 3. The Houston BBB has not produced conclusive evidence that the proposed fee award is reasonable and necessary.

As discussed above, the Houston BBB's invoices and the Elkin Affidavit do not satisfy the Texas Supreme Court's specificity requirements and are, therefore, not even some evidence of the reasonableness of fees, much less conclusive evidence. Indeed, much of the Elkin Affidavit is conclusory, *see infra*, pp. 15-17, because it is largely an expression of opinion

10

without the underlying facts necessary to support the conclusion. *Hou-Tex., Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Even if the evidence were competent and were considered, it would raise a fact issue at best.

The reasonableness of the time spent in representing the Houston BBB is discussed only in general terms in paragraphs 7 through 9. Paragraph 7 lists the kinds of legal tasks that one would expect in any lawsuit, but only in vague terms. Paragraph 8 includes a chart of the month-by-month billing. Paragraph 9 is intended to prove up the invoices. In paragraph 10, the time is divided into four overlapping general categories. Paragraph 11 restates the total fees, costs, and expenses allegedly incurred. Paragraph 12 provides a conclusory estimate of future legal fees. None of these paragraphs discuss the reasonableness of the fees, much less relate the entries on the invoices to any particular tasks and explain why they are reasonable. In short, they do not provide any evidence that would allow a finder of fact to make a determination as to reasonableness.

Following is a review of the *Anderson* factors and the Houston BBB's treatment of each in the Elkin Affidavit.

> **a.** **The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.**

The work on this case was not complex or difficult for the Houston BBB. Ex. A ¶¶ 16-17. Chapter 27 was designed to allow a defendant to easily and efficiently impose an immediate burden on the plaintiff to present "clear and specific prima facie evidence" of the elements of its claim. *Id.* The Houston BBB accomplished this with a short, ten page motion to dismiss.

While Chapter 27 was a new statute in Texas, it was based on a model that has been adopted in many states, and there had already been a number of other cases in Texas in which it had been used by other Better Business Bureaus (notably Dallas) as a defensive tactic. *Id.* ¶ 17.

11

Certified Document Number: 61188586 - Page 11 of 21

Therefore, the Houston BBB did not have to reinvent the wheel. Furthermore, the legal briefing on the interpretation of the statute in the trial court and the court of appeals involved a straightforward application of well-known and long-established precedent. *Id.* ¶ 16. This text-based statutory construction was not difficult and involved legal authority that is so well known that little research should have been necessary to supply the principles. *Id.*

**b.    The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.**

Porter Hedges acknowledges in the Elkin Affidavit, that taking on this engagement did not prevent the firm from accepting any other clients.

**c.    The fee customarily charged in the locality for similar legal services.**

For a company the size of the Houston BBB, the rates indicated in the Elkin Affidavit and, presumably, charged in the attached invoices were excessive. Ex. A ¶ 15. In the stratified Houston legal market, small businesses like the Houston BBB (an in particular, non-profits) simply do not engage firms that charge fees in the upper range of the market. *Id.* If they do engage such firms, they do so at substantially discounted rates or as a pro bono matter. *Id.* For example, the rates charged by John Moore's attorneys were as much as 40% lower, resulting in total fees incurred by John Moore of only $165,000 for precisely the same litigation. *Id.*

**d.    The amount involved and the results obtained.**

Except for a handful of days in the fall of 2013, before its First Amended Original Petition was struck, John Moore did not seek a damage multiplier. Ex. A ¶ 19. Therefore, with the exception of the fees incurred to contest this filing, Porter Hedges' rationale that it spent extra time on the case for the other 21 months of litigation due to this pleading is disingenuous. *Id.*

12

Certified Document Number: 61188586 - Page 12 of 21

Furthermore, Porter Hedges has obtained only a partial dismissal of John Moore's claims to date. This result, while beneficial to the Houston BBB, does not justify the suggestion that the Houston BBB's position has been fully vindicated or that John Moore's claims have no merit. An award of attorneys' fees is premature on this factor.

> **e.  The time limitations imposed by the client or by the circumstances.**

There were no onerous time limits imposed in this litigation. Ex. A ¶ 20. Chapter 27 allows 60 days to prepare and file a motion to dismiss. TEX. CIV. PRAC. & REM. CODE § 27.003(b). The Houston BBB had ample time to prepare the ten-page motion. Ex. A ¶ 20.

In the interlocutory appeal, the Houston BBB requested and received two extensions of time to file its principal brief, which John Moore did not oppose. *Id.* In the end, the Houston BBB had 108 days to prepare and file its brief of appellant. *Id.* John Moore filed its brief in response 35 days later. *Id.* After yet another extension of time, the Houston BBB had 27 days to prepare and file a brief in reply. *Id.* There was no time pressure in the appeal.

> **f.  The nature and length of the professional relationship with the client.**

Porter Hedges states that it has an almost 20 year relationship with the Houston BBB. The Houston BBB is a not-for-profit enterprise that markets itself as a performer of good works for the consumers of Houston. Ex. A ¶ 15. These types of clients are often represented pro bono or at substantially discounted rates and/or capped legal fees. *Id.* The Houston BBB's evidence is silent on its billing arrangement with the Porter Hedges. But the length of this relationship and the nature of the Houston BBB's activities suggest that, in the market, it would be able to engage counsel for substantially less than the amount that it now suggests that it incurred. *Id.* ¶ 21.

13

Paragraph 14 set out the experience of some of the timekeepers who appear on the invoices. But there are many entries that include timekeepers whose experience is unstated. There is no evidence of reputation or of ability for any timekeeper.

Assuming that the lawyers involved were all "able" to a degree that is proportionate to their experience, it appears that the time spent on this matter is not reflective of that ability. Ex. A ¶ 22. For example, the appeal primarily involved basic, well-understood statutory construction principles. *Id* ¶ 16. No new legal ground was explored in the textual analysis. *Id.* It was simply a plain meaning-based legal argument. *Id.* The number of Texas Supreme Court cases setting out the plain language standard of interpretation are so numerous, it would be difficult not to know at least one off the top of the head. It is clear to John Moore that this legal argument should not have required so much time to prepare both in terms of research and of drafting such that it required two additional months of work. *Id.* ¶¶ 20, 22.

h.   Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

The Houston BBB states that its fee agreement was fixed, but the agreement is not provided. Therefore, it is not certain what fees were incurred by the Houston BBB. The Elkin Affidavit states that "payment" has been made, but does not specify the amount of that payment.

Furthermore (and this may be an error, it is so unusual), the Elkin Affidavit states that the fees are billed to the nearest six-tenths of an hour. If correct, this policy would be a substantial departure from customary practice in the Houston legal market, and it would result in an inordinate inflation of the Houston BBB's legal invoices that would not be reasonable. Ex. A ¶ 23.

14

**III. AN AWARD OF FEES AT THIS JUNCTURE WOULD BE NEITHER JUST NOR EQUITABLE.**

For two reasons, the award of fees suggested by the Houston BBB would be neither equitable nor just. First, the application of Chapter 27 to John Moore's claims was not certain and there is no serious dispute that John Moore has been harmed by the Houston BBB's actions. Ex. A ¶¶ 7-10.

Second, John Moore still has viable claims against the Houston BBB that arise out of this transaction, which, but for the Houston BBB's insistence, would be joined to this same lawsuit. Under these circumstances, an award of over $400,000 in fees would serve neither justice nor equity and would be premature.

Indeed, as the Houston BBB has repeatedly stated, the claims in the second suit (Cause No. 2013-76215) arise out of the same transaction. The Houston BBB's motion to strike John Moore's First Amended Original Petition in the fall of 2013 caused a *de facto* severance of John Moore's claims into separate cases, and John Moore objects that such a splitting of its claims is improper and would result in prejudice to John Moore in the form of improper attempts by the Houston BBB to assert *res judicata*.

John Moore does not believe that *res judicata* would apply under the circumstances. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) ("res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action"); *Dolenz v. Continental Nat'l Bank*, 620 S.W.2d 572, 575 (Tex. 1981) (res judicata does not apply when conduct by a party estops it from asserting the prior active jurisdiction); *see also Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). But even though *res judicata* does not apply, the splitting of John Moore's cause of action is not consistent with Texas policy and should be corrected now that all statutory stays preventing a consolidation have expired. *See Pierce v. Reynolds*, 329 S.W.2d 76, 78 (Tex. 1959)

15

Certified Document Number: 61188586 - Page 15 of 21

(claim splitting is improper); *Ryland Group, Inc. v. White*, 723 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1986, no writ) (compulsory claims that arise out of the same transaction cannot be split into a separate cause).

Under the circumstances, John Moore moves for consolidation of Cause No. 2013-76215 with this case. TEX. R. CIV. P. 174(a); *cf. Wyatt.*, 760 S.W.2d at 247 (when the claims in a second lawsuit should have been brought in a previously-filed case, the second suit should be abated so the pleadings in the first suit can be amended to join the new claims). A consolidation will allow the entire controversy to be decided at one time by a single jury.

**IV.  JOHN MOORE OBJECTS TO THE ELKIN AFFIDAVIT AS LEGALLY INSUFFICIENT TO SUPPORT AN AWARD OF ATTORNEYS' FEES.**

The Elkin Affidavit contains general and highly conclusory statements which are legally insufficient to support an award of attorneys' fees. A conclusory statement is "one that does not provide the underlying facts to support the conclusion." *Hou–Tex, Inc.*, 26 S.W.3d at 112 (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)). A general statement by an attorney that an amount sought is reasonable is not conclusive proof on the question of reasonableness. *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 149 (Tex. App. —Houston [1st Dist.] 1986, no writ); *see also*, *Burrow v. Acre*, 997 S.W.2d 229, 236 (Tex. 1999) (expert must support opinion by reasoned basis). Furthermore, an agreement to pay an attorney a certain sum per hour is not proof of its reasonableness. *Leal v. Leal*, 628 S.W.2d 168, 171 (Tex. App.—San Antonio 1982, no writ).

John Moore's objections include but are not limited to Elkin Affidavit paragraphs 6, 20 and 25, which state that Porter Hedges billing rates are customary, reasonable and comparable to similar law firms in Harris County, Texas. These statements are conclusory and provide no underlying facts to support the conclusion.

16

Certified Document Number: 61188586 - Page 16 of 21

John Moore further objects to Elkin Affidavit paragraph 8, which concludes that Moore has asserted numerous, meritless claims. This is a factually unsupported opinion and does not provide a valid basis for the award of attorneys' fees.

The Elkin Affidavit is also objectionable as to paragraph 9 and the referenced invoices attached as Exhibit 2. Specifically, the invoices contain multiple redactions to allegedly prevent disclosure of attorney-client privileged material. The sheer number of redactions suggests that the BBB, by and through its counsel, is not protecting attorney-client privilege but rather hiding duplicative billing entries and unnecessary work product. John Moore objects that Elkin Affidavit's reliance on the invoices contained in Exhibit 2 is based on insufficient, unreliable and conclusory evidence.

John Moore further objects to Elkin Affidavit paragraph 12, which contains an unsupported and conclusory opinion that the BBB will incur $130,000.000 in legal fees to defend and argue its Motion and any related appeals.

John Moore objects to Elkin Affidavit conclusory paragraphs 17, 18 and 22 which allude to the "complexity" of the Lawsuit without providing factual evidence of how Chapter 27 is a complex statute and delineating with specificity what legal analysis and research were required to prosecute the BBB's Motion.

John Moore further objects to Elkin Affidavit paragraph 21 which contains the conclusory statement that the hours expended by Porter Hedges, as reflected in the invoices attached as Exhibit 2, were reasonable. John Moore re-asserts its objections to reliance on the heavily redacted invoices as constituting insufficient and unreliable evidence.

17

Certified Document Number: 61188586 - Page 17 of 21

John Moore objects to Elkin Affidavit paragraph 24 which concludes, without any supporting factual evidence, that Porter Hedges professionals were precluded from other employment due to the acceptance of this case.

John Moore further objects to Elkin Affidavit paragraph 28, which references the experience, reputation and ability of Porter Hedges without providing any factual support. John Moore also objects to the conclusory statement that Porter Hedges' billing rates were reasonable based on said experience.

John Moore objects to Elkin Affidavit paragraph 31, which states that Porter Hedges expenses are reasonable based on the length and complexity of this litigation. These statements are conclusory and provide no underlying facts to support the conclusion.

Finally, John Moore objects to Elkin Affidavit paragraph 32 as irrelevant to the BBB's Motion and unsupported by any evidence proffered in this matter.

In sum, the Elkin Affidavit contains conclusions unsupported by any reasoning connecting them to the facts as to the time and rates billed on specific tasks that would support a finding that the claimed attorneys' fees are reasonable and necessary. Thus, the statements in the Elkin Affidavit regarding attorneys' fees are conclusory and there is no evidence to support the reasonableness of these fees. *Coastal Terminal Operators v. Essex Crane Rental Corp.*, 2004 Tex. App. LEXIS 7257 at pp. 21-24 (Tex. App.—Houston. [14th Dist.] 2004, no pet) (citing *Burrow*, 997 S.W.2d at 235-37).

**MOTION TO COMPEL RESPONSES TO MOORE'S DISCOVERY**

John Moore objects to Defendant's request for fees and expenses incurred prosecuting its Motion to Dismiss. Among other reasons, these fees and expenses should be denied by the trier of fact because Porter Hedges has provided no substantive discovery responses to John Moore

18

regarding these requests, despite the fact that John Moore specifically requested such information in a request for production to the Houston BBB. Ex. C.

Defendant is in possession, custody or control of documents and information responsive to John Moore's request for production, yet Porter Hedges has produced no information regarding fees and expenses it has incurred beyond the firm's heavily redacted billing records. John Moore is entitled to discovery on these fees and expenses in order to test their reasonableness and necessity, and the Houston BBB should not be allowed to profit from its blatant disregard for its discovery obligations. John Moore thus seeks an Order overruling the Houston BBB's objections and compelling production of the requested documents.

## RESERVATION OF RIGHTS

John Moore expressly reserves the right to amend, modify, or supplement its Response to Defendant's Motion, and to assert additional grounds for objecting to the Motion, to the extent discovery and expert analysis reveal additional issues concerning the propriety of compensation sought in the Motion.

## PRAYER

WHEREFORE, John Moore respectfully requests that this Court deny Defendant's Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and for Entry of Final Judgment and sustain John Moore's objections to the evidence offered by Defendant contained herein. John Moore further requests that the Court grant its motion to consolidate and consolidate Cause No. 2013-76215 into this case and for the trier of fact to hear evidence to determine the facts raised by the parties. Finally, John Moore requests that the Court grant its motion to compel a response to its discovery requests. John Moore also requests that this Court grant such other and further relief as is equitable and just.

Certified Document Number: 61188586 - Page 19 of 21

Certified Document Number: 61188586 - Page 20 of 21

20

Respectfully submitted,

JOHNSON, TRENT, WEST & TAYLOR, LLP


By:    */s/ Lori Hood*
      Lori Hood
      Texas Bar No. 09943430
      Brian P. Johnson
      Texas Bar No. 10685700
      Tamara Madden
      Texas Bar No. 00783720
      919 Milam Street, Suite 1700
      Houston, Texas 77002
      (713) 222-2323
      (713) 222-2226 (*facsimile*)
      lhood@johnsontrent.com
      bjohnson@johnsontrent.com
      tmadden@johnsontrent.com

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record pursuant to Rule 21 and Rule 21(a) of the TEXAS RULES OF CIVIL PROCEDURE on this 12th day of June 2014.

Jeffrey R. Elkin                                        *Via E-Service*
M. Harris Stamey
PORTER HEDGES, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
jelkin@Porter Hedges.com
mstamey@Porter Hedges.com


*/s/ Tamara Madden*
TAMARA MADDEN

Certified Document Number: 61188586 - Page 21 of 21

329881

21



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 20, 2015

Certified Document Number:        61188586 Total Pages:  21

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



Exhibit I

CAUSE NO. 2012-35162

John Moore Services, Inc. et al.,

§

Plaintiff(s),

§
§
§

IN THE DISTRICT COURT OF

v.

§
§

HARRIS COUNTY, TEXAS

The Better Business Bureau of
Metropolitan Houston, Inc.,

§
§
§

Defendant(s)

§

269th JUDICIAL DISTRICT

## ORDER

The following matters are pending before the Court:

(1) Defendant's Motion for Award of Attorneys' Fees, Court
(2) Costs, Expenses, and Sanctions, and for Entry of Final
(3) Judgment.
(4) _____

It is *ORDERED* that the Motion is DENIED without prejudice
to being heard by trial by jury or motion for summary
judgment.

SIGNED this 19th day of June, 2014.

FILED
Chris Daniel
District Clerk

JUN 19 2014

Time: _____
Harris County, Texas

By _____
Deputy

_____
Hon Dan Hinde
Judge, 269th District Court

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Certified Document Number: 61265745 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 20, 2015

Certified Document Number:        61265745 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit J

CAUSE NO. 2012-35162

| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| Plaintiffs, | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| Defendant. | § | 269TH JUDICIAL DISTRICT COURT |

### DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT AND FOR AWARD OF COURT COSTS, EXPENSES, AND SANCTIONS

Defendant The Better Business Bureau of Metropolitan Houston, Inc. ("Defendant") files this Motion for Entry of Final Judgment and for Award of Court Costs, Expenses, and Sanctions against Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC (collectively "Plaintiffs" or "John Moore") and in support thereof would show the Court as follows:

### I. REQUEST FOR JUDGMENT ORDERING DISMISSAL OF PLAINTIFFS' CLAIMS

Pursuant to the judgment rendered by the First Court of Appeals on July 16, 2013, and the mandate issued by that court on April 4, 2014, Defendant respectfully requests that the Court enter a final judgment dismissing all of Plaintiffs' claims against Defendant with prejudice and ordering that Plaintiffs take nothing on all of their claims. *See The Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, No. 01-12-00990-CV, 2013 WL 3716693, *12 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

### II. REQUEST FOR JUDGMENT ON JURY VERDICT FOR ATTORNEYS' FEES

Pursuant to Section 27.009(a)(1) of the Texas Civil Practice and Remedies Code ("Chapter 27"), the Court is required to award to the Defendant "the reasonable attorney's fees ... incurred in defending against this legal action ...." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1) (West 2014). On July 22, 2014, a jury rendered a verdict for $250,001.44 as the

1

3818625

amount of reasonable attorney's fees incurred by the Defendant in defending against this legal action. *See* **Exhibit A**. Accordingly, Defendant respectfully requests that the Court enter a final judgment requiring Plaintiffs to pay to Defendant its attorney's fees in at least the amount of $250,001.44.[1]

## III. REQUEST FOR JUDGMENT AWARDING COURT COSTS, EXPENSES, AND SANCTIONS

Chapter 27 also requires the Court to award to the Defendant "court costs … and other expenses incurred in defending against the legal action …." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1) (West 2014). In addition, Chapter 27 calls for the Court to award "sanctions against the party who brought the legal action as the court determines sufficient to deter the party … from bringing similar actions described in this chapter."[2]

### A. Trial Court Costs

Defendant requests that the Court enter a final judgment taxing all costs of court expended or incurred in this lawsuit to Plaintiffs.

### B. "Other Expenses"

Defendant requests that the Court enter a final judgment awarding Defendant $6,237.77 for expenses incurred in defending against Plaintiffs' legal action, as established by the testimony and exhibits (Defendant's Trial Exhibits 1, 3-4, 6) entered into evidence during the July 21-22 jury trial.

---

[1] Defendant agrees only to the form of judgment it is submitting to the Court and is not, in seeking entry of a final judgment, concurring with the jury's verdict or the content and result of the final judgment. *First Nat'l Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989) (per curiam).

[2] Section 27.009(a) states that "[i]f the court orders dismissal of a legal action under this chapter, the court *shall award* to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) *sanctions* against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a) (West 2014) (emphasis added).

3818625

## C.    Sanctions

Defendant requests that the Court enter a final judgment awarding at least $415,000.00 in sanctions against Plaintiffs.

An instructive case is *Kinney v. BCG Attorney Search, Inc.*, 03-12-00579-CV, 2014 WL 1432012, *9-10 (Tex. App.—Austin April 11, 2014, pet. filed) (mem. op.), where the Austin Court of Appeals ruled that it was not an abuse of discretion for the trial court to award sanctions pursuant to Chapter 27 in an amount equal to 1.66 times the defendant's attorney's fees. (affirming sanctions of $75,000 based upon attorney's fees award of $45,000) (copy attached as **Exhibit B**).   In *Kinney*, the plaintiff filed a SLAPP lawsuit in Texas state district court that "arose from the same factual background" as a previously filed SLAPP lawsuit in California state court which the California court had dismissed. *Kinney*, 2014 WL 1432012, *8. The Texas district court granted in part and denied in part the defendant's motion to dismiss under Chapter 27, and awarded $75,000 in sanctions under section 27.009(a)(2). *Id.* On appeal, the Austin Court of Appeals reversed the trial court's denial in part of the motion to dismiss and otherwise affirmed the trial court's ruling "in all other respects," including the $75,000 award of sanctions. *Id.* at *1, 9-10.

With regard to the trial court's sanctions award, the Austin court initially observed that:

> Section 27.009(a)(2) requires the trial court to award sanctions if it dismisses a claim pursuant to section 27.003 and gives the trial court broad discretion to determine what amount is sufficient to deter the party from bringing similar actions in the future. It does not expressly require the trial court to explain how it reached its determination.

*Id.* at *9 (citations omitted).   Noting that the California court had awarded the defendants $45,000 in attorney's fees in connection with the dismissal of the California lawsuit, the *Kinney* court held:

3

3818625

> The record also shows a culmination of multiple actions ... concerning claims for the same harm asserted under various legal theories and that one of the prior actions resulted in an award of attorney's fees against [plaintiffs] in the amount of $45,000. Given the history of the litigation, the trial court could have reasonably determined that a lesser sanction would not have served the purpose of deterrence. In light of the trial court's findings and the record before us, as well as the broad discretion afforded the trial court by section 27.009, we conclude that the sanction has a direct relationship to [plaintiffs'] sanctionable conduct and that the trial court did not abuse its discretion in determining that a lesser sanction would have been insufficient to deter further actions by [plaintiff].

*Id.* (citations omitted). The appellate court added that the $45,000 in attorney's fees awarded to the defendant in the California SLAPP litigation served as an effective "guidepost" of the economic impact of the plaintiffs' sanctionable conduct in filing a SLAPP lawsuit in Texas and provided support for the trial court to conclude that "a sanction of $75,000 was necessary to deter [plaintiffs] from bringing similar actions in the future." *Id.* at *10.

Under the rationale and holding in *Kinney*, an award of sanctions against Plaintiffs in the amount of at least $415,000 is appropriate. Like the plaintiffs in *Kinney*, Plaintiffs here have demonstrated their intent to bring multiple SLAPP lawsuits against the Houston BBB that are based on the "same factual background," concern "the same harm," and assert causes of action that could have been averred here. *Id.* at *8-9. First, Plaintiffs filed—more than two months *after* the First Court of Appeals ruled in favor of Defendant—Plaintiffs' First Amended Original Petition ("Amended Petition")—which improperly sought to join nine new defendants and add twelve causes of action. The Amended Petition was based upon the same set of facts and circumstances alleged in Plaintiffs' Original Petition, the Houston BBB's business review and rating of John Moore—and merely reflected counsel's ability to "conceive of different theories

4

of relief based upon the same factual background.". *Id.* at \*8; Plaintiffs' First Amended Original Petition ¶¶ 15–159 (Image No. 57565523).

Second, after the Court struck the Amended Petition due to Plaintiffs' violation of the statutory stay of all trial court proceedings (*see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(b)), Plaintiffs filed a separate lawsuit (the "Second Legal Action") that is essentially identical to the Amended Petition, alleges the same set of core facts and circumstances as the Original Petition here, and, importantly, asserts the same harm (loss of business revenue) and seeks the same relief (money damages for such loss) as Plaintiffs sought in this lawsuit. *See* Plaintiffs' First Amended Original Petition, filed with this Court in Cause No. 2013-76215 ("New Petition").[3]

In short, Plaintiffs' filing of the Second Legal Action, like the filing of the Texas SLAPP lawsuit by the plaintiffs in *Kinney*, supports a conclusion by this Court "that a lesser sanction would not ... serve[] the purpose of deterrence." *Id.* at \*9 ("Given the history of the litigation, the trial court could have reasonably determined that a lesser sanction would not have served the purpose of deterrence."). .

In *Kinney*, the appellate court ruled that it was not an abuse of discretion for the trial court to award sanctions under Chapter 27 in an amount equal to 1.66 times the amount of attorney's fees awarded to the defendant in the first SLAPP lawsuit. *Id.* at \*10. Here, the jury determined the reasonable attorney's fees amount to be $250,001.44. That amount multiplied by 1.66 equals $415,000. Accordingly, Defendant requests that the Court (1) find that Plaintiffs brought this lawsuit to deter or prevent Defendant from exercising its right of free speech, that Plaintiffs have filed a subsequent lawsuit for the same purpose, and that, considering the above,

---

[3]  The Defendant requests that the Court take judicial notice of all of the papers on file and all of the proceedings in Cause No. 2013-76215 in connection with its awarding sanctions against Plaintiffs.

3818625

sanctions in at least the amount of $415,000 are necessary to deter Plaintiffs from bringing subsequent SLAPP lawsuits and (2) based on the above, enter a final judgment requiring Plaintiffs to pay to Defendant at least $415,000 in sanctions under Section 27.009(a)(2). TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1) (West 2014).

## IV.   CONCLUSION

In consideration of the foregoing, Defendant respectfully requests that the Court enter a final judgment which provides for the following:

1.   an order that Plaintiffs' claims against Defendant be dismissed with prejudice in their entirety and that Plaintiffs take nothing on all of their claims;

2.   an award to Defendant of attorneys' fees incurred by Defendant in defending this legal action in an amount of at least $250,001.44;

3.   that all costs of court incurred in this cause be taxed against Plaintiffs;

4.   an award to Defendant of $6,237.77 for expenses incurred by Defendant in defending this legal action;

5.   an award to Defendant of not less than $415,000 in sanctions against Plaintiffs; and

6.   For such other and further relief to which it may be entitled.

Dated: August 4, 2014.

Respectfully submitted,

**PORTER HEDGES LLP**

By:  _____/s/ Jeffrey R. Elkin_____
Jeffrey R. Elkin, SBN 06522180
M. Harris Stamey, SBN 24060650
1000 Main Street, 36th Floor
Houston, Texas 77002-6336
Telephone:  (713) 226-6617
Telecopier:  (713) 226-6217
jelkin@porterhedges.com
mstamey@porterhedges.com

3818625

ATTORNEYS FOR DEFENDANT
THE BETTER BUSINESS BUREAU OF
METROPOLITAN HOUSTON, INC.

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs and Defendant have conferred in a reasonable effort to resolve the dispute without the necessity of Court intervention, and the effort failed. Therefore, it is presented to the Court for determination.

                                                  /s/ M. Harris Stamey
                                                  M. Harris Stamey

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of foregoing document has been served upon all counsel of record on the 4th day of August, 2014, as follows:

Lori Hood                                    ☐    By facsimile transmission
Tamara Madden                                ☒    By electronic transmission
Brian P. Johnson                             ☐    By deposit in the United States Mail
919 Milam Street, Suite 1700                 ☐    By CMRRR
Houston, TX 77002                            ☐    By hand-delivery
(713) 222-2323 (telephone)
(713) 222-2226 (facsimile)
lhood@johnsontrent.com
tmadden@johnsontrent.com
bjohnson@johnsontrent.com

**ATTORNEY FOR PLAINTIFFS, JOHN
MOORE SERVICES, INC. AND JOHN
MOORE RENOVATION, LLC**

                                                  /s/ M. Harris Stamey
                                                  M. Harris Stamey

7

3818625

CONFIRMED FILE DATE: 7/22/2014

CAUSE NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC., | § | |
| | § | |
| *Defendant.* | § | 269th JUDICIAL DISTRICT |

## CHARGE OF THE COURT

**Members of the Jury:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict   You may discuss the case with other jurors only when you are all together in the jury room

Remember my previous instructions  Do not discuss the case with anyone else, either in person or by any other means.   Do not do any independent investigation about the case or conduct any research.  Do not look up any words in dictionaries or on the Internet.  Do not post information about the case on the Internet   Do not share any special knowledge or experiences with the other jurors   Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use.  You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations.  Your notes are not evidence.  Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating.  The bailiff will give your notes to me promptly after collecting them from you.  I will make sure your notes are kept in a safe, secure location and not disclosed to anyone.   After you complete your deliberations, the bailiff will collect your notes.  When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Certified Document Number: 61635811 - Page 1 of 7

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**F I L E D**
Chris Daniel
District Clerk

JUL 2 2 2014

Time:_____

By_____

Harris County, Texas

Deputy

1

# EXHIBIT A

# I. INSTRUCTIONS FOR ANSWERING THE QUESTIONS

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions  Do not consider or discuss any evidence that was not admitted in the courtroom

3. You are to make up your own minds about the facts.  You are the sole judges of the credibility of the witnesses and the weight to give their testimony.  But on matters of law, you must follow all of my instructions

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important.  No one should say that any question or answer is not important.

6. Answer "Yes" or "No" to all questions unless you are told otherwise.  A "Yes" answer must be based on a preponderance of the evidence unless you are told otherwise.  Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless you are told otherwise

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case.  If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."  A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence.  For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true

   A fact may be established by direct evidence or by circumstantial evidence or both.  A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken.  A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision.  Answer each question carefully without considering who will win.  Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount.  Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers.  For example, do not say, "I will answer this question your way if you answer another question my way."

2

Certified Document Number: 61681158 - Page 2 of 7

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## II. DEFINITIONS

As used in this Charge, the following words have the following meanings:

1) "Houston BBB" means The Better Business Bureau of Metropolitan Houston, Inc.

2) "John Moore" means John Moore Services, Inc and John Moore Renovations, LLC.

3

Certified Document Number: 61681158 - Page 3 of 7

## Question No. 1

What is a reasonable fee for the necessary services of Houston BBB's attorneys in defending against John Moore's legal action, stated in dollars and cents?

> You are instructed that the following factors should be considered when determining the amount of attorneys' fees:

> a.    the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

> b.    the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

> c    the fee customarily charged in the locality for similar services;

> d.    the amount involved and the results obtained;

> e.    the time limitations imposed by the client or the circumstances;

> f.    the nature and length of the professional relationship with the client,

> g    the experience, reputation and ability of the lawyer or lawyers performing the services; and

> h.    whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

a.    For representation in the trial court before and during Houston BBB's original interlocutory appeal.

Answer: $ 106,369.28

b.    For representation in the Court of Appeals for the original interlocutory appeal.

Answer: $ 81,360.80

c.    For representation at the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal.

Answer: $ 37,982.08

4

d.   For representation in the trial court after the original interlocutory appeal was decided.

Answer: $ _24,289.28_

e.   For representation after this trial in the Court of Appeals.

Answer: $ _∅_

f.   For representation after this trial at the petition-for-review stage in the Supreme Court of Texas.

Answer: $ _∅_

g.   For representation after this trial at the merits-briefing stage in the Supreme Court of Texas.

Answer: $ _∅_

h.   For representation after this trial through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer. $ _∅_

Certified Document Number: 61681158 - Page 5 of 7

## IV. INSTRUCTIONS REGARDING THE PRESIDING JUROR

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror

2. The presiding juror's duties are to:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations—meaning to manage the discussions and see that you follow these instructions;

   c. give written questions or comments to the bailiff, who will give them to the judge;

   d. write down the answers on which you agree;

   e. get the signatures for the verdict certificate, and

   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## V. INSTRUCTIONS FOR SIGNING THE VERDICT CERTIFICATE

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

3. If 11 jurors agree on every answer, those 11 jurors sign the verdict.

4. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

5. All jurors should deliberate on every question   You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

Hon  Dan Hinde
Judge, 269th District Court

6

Certified Document Number: 61681158 - Page 6 of 7

# CERTIFICATE

We, the jury, have answered the foregoing questions as indicated and return our answers into court as our verdict.

I certify that the jury was unanimous in answer to the following questions:

Answer "All" or list question, including subparts: _____*All*_____

_____*Clyde E. Coxie Jr.*_____
Juror Presiding

_____*Clyde E. Coxie Jr.*_____
Printed Name of Juror Presiding

If the answers to some questions were not unanimous, the jurors who agreed to those answers must certify as follows.

We agree to the answers to the following questions:

List questions, including subparts: _____

| | SIGNATURE | NAME PRINTED |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| 11. | | |

7

Certified Document Number: 61681158 - Page 7 of 7



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   August 4, 2014

Certified Document Number:        61681158 Total Pages: 7

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

2014 WL 1432012

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

### MEMORANDUM OPINION
Court of Appeals of Texas,
Austin.

Appellant, Robert KINNEY//Cross–Appellants, BCG Attorney Search, Inc.; and Professional Authority, Inc. d/b/a Legal Authority
v.
Appellees, BCG ATTORNEY SEARCH, INC.; and Professional Authority, Inc. d/b/a Legal Authority//Cross–Appellee, Robert Kinney.

No. 03–12–00579–CV. | April 11, 2014.

From the District Court of Travis County, 353rd Judicial District, No. D–1–GN–12–001521, Gary Harger, Judge Presiding.

**Attorneys and Law Firms**

Daniel H. Byrne, Ariel Henderson, Dale L. Roberts, Eleanor Ruffner, Fritz, Byrne, Head & Harrison, PLLC, Austin, TX, for Appellant, Robert Kinney//Cross–Appellants, BCG Attorney Search, Inc .; and Professional Authority, Inc. d/b/ a Legal Authority.

Martin J. Siegel, Law Office of Martin J. Siegel, P.C., Houston, TX, Greggory A. Teeter, Teeter Law Firm, Dallas, TX, for Appellees, BCG Attorney Search, Inc.; and Professional Authority, Inc. d/b/a Legal Authority//Cross– Appellee, Robert Kinney.

Robert E. Kinney, Austin, TX, pro se.

Before Chief Justice JONES, Justices GOODWIN and FIELD.

### Opinion

### MEMORANDUM OPINION

MELISSA GOODWIN, Justice.

**\*1** We withdraw our opinion and judgment dated August 21, 2013, and substitute the following in its place. Appellees' motion for rehearing is denied.

This is an interlocutory appeal from the trial court's partial denial, and cross-appeal from its partial grant, of a motion to dismiss under chapter 27 of the Texas Civil Practices and Remedies Code. *See generally* Tex. Civ. Prac. & Rem.Code §§ 27.001–.011. Chapter 27, known as the Texas Citizens Participation Act (TCPA), is an "anti-SLAPP" statute that permits defendants targeted by "Strategic Lawsuits Against Public Participation" or SLAPP suits to move for dismissal if the action relates to the defendant's exercise of the right of free speech, right to petition, or right of association. *See id.* § 27.003. BCG Attorney Search, Inc., and Professional Authority, Inc. d/b/a/ Legal Authority (sometimes jointly BCG) sued Kinney for breach of contract, breach of fiduciary duty, and violations of the Lanham Act, *see* 15 U.S.C. § 1125(a), based on statements Kinney made in a post on an internet website. Kinney filed a motion to dismiss pursuant to section 27.003 of the TCPA. The trial court granted the motion as to BCG's Lanham Act claim and awarded sanctions against BCG. *See* Tex. Civ. Prac. & Rem.Code § 27.009(a) (2) (if trial court orders dismissal, it shall award sanctions as it determines sufficient to deter party from bringing similar actions). The trial court denied the motion as to BCG's breach of contract and breach of fiduciary duty claims. For the reasons that follow, we reverse the trial court's denial of the motion as to the breach of contract and fiduciary duty claims, render judgment dismissing those claims, and affirm the order in all other respects.

### FACTUAL AND PROCEDURAL BACKGROUND

BCG and Legal Authority are two of more than 100 affiliated job search websites, employment services, recruiting firms, online employment news magazines, and student loan companies owned by Andrew Harrison Barnes. From 2002 to 2004, Kinney worked for BCG, a legal recruiting company. Kinney contends his employment agreement with BCG was oral, confirmed by an offer letter that asked him to keep the terms of the offer confidential. According to Barnes, the terms of Kinney's employment were governed by a written employment agreement signed by Kinney. The employment agreement, on which Kinney maintains his signature was forged, includes a confidentiality provision. After leaving BCG, Kinney formed a legal recruiting firm, Kinney Recruiting, Inc. In May 2008, Kinney made a single post to an internet website describing BCG's business operations "based on his experience as a former employee" and stating negative opinions of Barnes and his companies.

**EXHIBIT B**

The post was made anonymously and contained no reference to Kinney or his business.

Barnes, BCG, and other related companies (jointly Barnes and BCG) brought suit in California state court against Kinney, Kinney Recruiting, and other defendants who had posted comments concerning Barnes and BCG on the internet, asserting claims for libel, unfair competition, and intentional interference with economic advantage. In the complaint, Barnes and BCG alleged that the statements were false and defamatory, had damaged the reputations of Barnes and his companies, and had caused them to lose customers and business opportunities, resulting in damages in the amount of at least $10 million. Kinney filed a motion to strike under California's anti-SLAPP statute. *See* Cal.Civ.Proc.Code §§ 425.16–.18. The California court held that, with the exception of BCG, the plaintiffs had failed to demonstrate a probability that they would prevail on the merits. *See id.* § 425.16(b)(1) (cause of action arising from defendant's right of petition or free speech subject to motion to strike unless court determines plaintiff has established probability of prevailing on merits).

*2 As reasons for its conclusion, the court stated that (1) notwithstanding the allegations of unfair competition and interference with economic advantage, the gravamen of the action was libel and the complaint was barred by the one-year statute of limitations for libel, *see id.* § 340(c), because Kinney and Kinney Recruiting had not been added as defendants until more than one year after the posting of Kinney's comments and (2) the defendants had produced evidence that there was already a good deal of online discussion regarding plaintiffs' businesses when Kinney posted his remarks, which were based on first-hand knowledge and were statements of opinion that are privileged communications under section 47 of the California Civil Code, [1] *see id.* § 47(c) (defining privileged communication to include one made without malice by interested party to interested party). The California court also awarded Kinney and Kinney Recruiting more than $45,000 in attorney's fees and costs as the prevailing parties. *See id.* § 425.16(c). As for BCG, the court reasoned that it was Kinney's competitor and was therefore exempt from the anti-SLAPP statute. *See id.* § 425.17(c). Subsequently, however, the court dismissed BCG's claims as barred by limitations because BCG had not been added as a plaintiff until after the one-year statute of limitations for libel had expired, *see id.* § 340(c), and the court of appeal affirmed. [2]

[1] BCG contends that the second reason stated by the California court for concluding that plaintiffs had not demonstrated a probability of prevailing on the merits was "dicta." We do not agree with that construction of the court's order.

[2] *BCG Attorney Search v. Kinney,* No. B223326, 2011 Cal.App. Unpub. LEXIS 5460, 2011 WL 2936773 (July 21, 2011) (not certified for publication) (cited for purposes of case history and res judicata analysis only). *See* Cal. R. Court 8.1115(b)(1).

In May 2012, BCG filed this action against Kinney asserting breach of the employment contract and breach of fiduciary duty for Kinney's disclosure of confidential information and violations of the Lanham Act for false and defamatory statements in Kinney's single online post. BCG alleged that it had suffered reputational injury and lost revenues and profits as a result of the post and sought damages of at least $1 million. [3] Kinney filed a motion to dismiss pursuant to section 27.003 of the TCPA. The trial court heard the motion on July 3, 2012, and on that same day issued a "Court's Rendition on Defendant's First Amended Motion to Dismiss and for Other Relief." Two days later the trial court issued and filed with the clerk a document entitled "Amended Court's Rendition on Defendant's First Amended Motion to Dismiss and for Other Relief," in which the court "render[ed]" that (1) the conduct alleged regarding the Lanham Act or other claims of libel or disparagement is protected speech governed by the TCPA and (2) the breach of contract and breach of fiduciary duty claims stem from an alleged employment agreement, the validity of which is a matter of fact, not law, to be determined by the trier of fact. Consequently, the trial court "render[ed] dismissal" of the Lanham Act claim and denial of the motion to dismiss as to the claims for breach of contract and breach of fiduciary duty. In connection with the dismissal of the Lanham Act claim, the trial court awarded $75,000 in sanctions against BCG. *See* Tex. Civ. Prac. & Rem.Code § 27.009(a)(2).

[3] Between the dismissal of the California action and the institution of this action, BCG sought arbitration of certain claims, but the arbitration did not occur. The parties offer differing explanations for why there was no arbitration.

*3 In the cover letter transmitting the amended rendition to the parties, the trial court asked counsel for Kinney to prepare an order consistent with the rendition. Kinney submitted an order, to which BCG objected and proposed revisions. Kinney filed his notice of appeal on August 31, 2012, and BCG filed a "conditional" notice of cross-appeal on September

14, 2012.[4] On November 9, 2012, the trial court signed the order as submitted by Kinney. The order included additional findings not contained in the rendition, including that (1) the Lanham Act claims had been brought to deter or prevent Kinney from exercising his constitutional rights and for the improper purpose of harassing Kinney and (2) considering finding (1) and the previous litigation between the parties, sanctions in the amount of $75,000 were necessary to deter BCG from bringing similar actions.

[4]   In filing a "conditional" notice of cross-appeal, BCG reserved its right to argue that the trial court's failure to sign the order until more than 30 days after the hearing resulted in denial of the entire motion by operation of law under sections 27.005 and 27.008, an issue we address below. *See* Tex. Civ. Prac. & Rem.Code §§ 27.005(a), .008(a).

## DISCUSSION

### Standard of Review

The parties' issues concerning the TCPA present matters of statutory construction, which is a question of law that we review de novo. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex.2011). Of primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex.2010). "We generally avoid construing individual provisions of a statute in isolation from the statute as a whole [,]" *Texas Citizens*, 336 S.W.3d at 628, and we must consider a provision's role in the broader statutory scheme, *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex.2008). We presume that "the entire statute is intended to be effective [,]" Tex. Gov't Code § 311.021(2), and we interpret it so as to give effect to every part, *Parker*, 249 S.W.3d at 396.

### Jurisdiction over Interlocutory Appeal

#### *Application of Amendment to TCPA*

As a preliminary jurisdictional matter, we consider whether the TCPA authorizes this interlocutory appeal and cross-appeal. Since the enactment of chapter 27, our sister courts have wrestled with the question of whether section 27.008

provides for interlocutory appeal of a trial court's express ruling on a motion to dismiss and have come to differing conclusions. *Compare KTRK TV, Inc. v. Robinson*, 490 S.W.3d 682, 688 (Tex.App.-Houston [1st Dist.] 2013, pet. denied) (finding jurisdiction over order denying motion); *San Jacinto Title Servs. of Corpus Christi, LLC v. Kingsley Props., LP.*, ——S.W.3d ——, No. 13–12–00352–CV, 2013 Tex.App. LEXIS 5081, at *15, 2013 WL 1786632 (Tex.App.-Corpus Christi Apr. 25, 2013, pet. denied) (same); *Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14–12–00896–CV, 2013 Tex.App. LEXIS 1898, at *8–9, 2013 WL 407029 (Tex.App.-Houston [14th Dist.] Jan. 24, 2013, order) (finding jurisdiction over order granting motion that was interlocutory because of pending counterclaims) *with Jennings v. Wallbuilder Presentations, Inc.*, 378 S.W.3d 519, 528–29 (Tex.App.-Fort Worth 2012, pet. denied) (finding no jurisdiction over order denying motion); *Lipsky v. Range Prod. Co.*, No. 02–12–00098–CV, 2012 Tex.App. LEXIS 7059, at *2, 2012 WL 3600014 (Tex.App.-Fort Worth Aug 23, 2012, pet. denied) (mem.op.) (same). In its 2013 session, however, the legislature made several revisions to the TCPA, including a corollary revision to chapter 51 of the Civil Practices and Remedies Code, to address the apparent ambiguity in chapter 27 concerning interlocutory appeals. *See* Act of May 24, 2013, 83d Leg., R.S., H.B. 2935, § 4 (codified at Tex. Civ. Prac & Rem.Code § 51.014(a)(12)) (the amendment). The amendment to chapter 51 expressly provides for interlocutory appeal of a trial court's denial of a motion to dismiss filed under section 27.003. *See id.* The amendment is not expressly retroactive, nor does it contain a savings clause for pending suits. *See id.* Because it received a vote of two-thirds of all the members elected to each house,[5] the amendment became effective immediately. *See* Act of May 24, 2013, 83rd Leg., R.S., H.B. 2935, § 6. Thus, we are faced with the question of whether to apply the amendment to this case retroactively.

[5]   *See* http://www.capi tol.state.tx.us/BillLookup/ History.aspx? LegSess= 83R & Bill=HB2935 (Actions/ Record Vote).

*4 The Texas Constitution provides that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made." Tex. Const. art. I, § 16. "However, not all statutes that apply retroactively are constitutionally prohibited." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.* 84 S.W.3d 212, 219 (Tex.2002). A retroactive statute violates the constitution only if, when applied, it takes away or impairs vested rights. *Id.* Generally, courts presume that the legislature intends

statutes and amendments to operate prospectively unless they are expressly made retroactive. Tex. Gov't Code § 311.022; *City of Austin v. Whittington,* 384 S.W.3d 766, 790 (Tex.2012); *University of Tex. Sw. Med. Ctr. v. Estate of Arancibia,* 324 S.W.3d 544, 547 (Tex.2010). However, this general rule does not apply when the statute or amendment is procedural, remedial, or jurisdictional because such statutes generally do not affect vested rights. *Whittington,* 384 S.W.3d at 790; *Estate of Arancibia,* 324 S.W.3d at 548. Procedural, remedial, and jurisdictional laws should be enforced as they exist at the time the judgment is rendered. *Whittington,* 384 S.W.3d at 790; *Estate of Arancibia,* 324 S.W.3d at 547–48; *Texas Mun. Power Agency v. Public Util. Comm'n,* 253 S.W.3d 184, 198 (Tex.2007) (jurisdictional statutes should be applied as they exist at time of judgment).

In providing for interlocutory appeal, the amendment does not take away or impair the parties' vested rights. Rather, it is a jurisdictional statute that "speaks to the court's power rather than to the parties' rights or obligations." *See Subaru of Am.,* 84 S.W.3d at 220. It does not take away substantive rights but simply changes the time at which an appellate court can hear the case. *See id.* (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 274 (1991) (new statute conferring or ousting jurisdiction merely changes tribunal that is to hear case and applies to existing cases)). Statutes like the amendment that do not deprive the parties of a substantive right and address the power of the court rather than the rights or obligations of the parties should be applied in cases pending when the statute is enacted. *See Whittington,* 384 S.W.3d at 790; *Estate of Arancibia,* 324 S.W.3d at 548. Accordingly, we conclude that we must apply the amendment to this case, *see Whittington,* 384 S.W.3d at 790; *Estate of Arancibia,* 324 S.W.3d at 548, and would have jurisdiction over this interlocutory appeal if the TCPA were properly invoked.

### *Application of TCPA*

Because it also implicates our jurisdiction over this matter, we turn next to BCG's second issue on cross-appeal: whether the TCPA applies to Kinney's statements. BCG argues that Kinney did not establish that the action relates to Kinney's right of free speech or to petition.[6] *See* Tex. Civ. Prac. & Rem.Code § 27.003(a). Although BCG does not argue this issue as one of jurisdiction, if Kinney failed to invoke the provisions of the TCPA, then this Court has no jurisdiction over an interlocutory appeal brought pursuant to its provisions. An interlocutory order is not appealable unless a statute expressly provides for appellate jurisdiction. *Stary*

*v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998). If Kinney's statements do not fall within the provisions of the TCPA, then the amendment providing for interlocutory appeal when a trial court denies a motion to dismiss filed under the TCPA cannot apply. *See id.*

6     Kinney contends that BCG has waived this argument by not presenting it in the trial court. However, because it pertains to this Court's jurisdiction, we will address it. *See Freedom Communs., Inc. v. Coronado,* 372 S.W.3d 621, 623 (Tex.2012) (appellate court must consider its jurisdiction even if consideration is sua sponte); *Minton v. Gunn,* 355 S.W.3d 634, 639 (Tex.2011) (appellate court must determine its jurisdiction to consider appeal before reaching merits).

**\*5** Section 27.003 provides that a party may file a motion to dismiss if a legal action "is based on, relates to, or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem.Code § 27.003(a). Section 27.001(3) defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Matter of public concern" is defined as including an issue related to "a good, product, or service in the marketplace." *Id.* § 27.001(7)(E). Section 27.005(b) provides that a court "shall dismiss a legal action against a moving party if the moving party shows by a preponderance of the evidence" that the action is based on, relates to, or is in response to the moving party's exercise of the right of free speech, right to petition, or right of association. *Id.* § 27.005(b).

BCG contends that Kinney's statements do not relate to free speech because they were false and defamatory and thus not constitutionally protected. Kinney argues that determining whether a communication meets the statutory definition of the "exercise of the right of free speech" does not entail deciding whether the speech is true. We agree. Whether Kinney's statements were defamatory and thus actionable is reviewable in the second part of an appellate court's analysis, under section 27.005(c), which precludes dismissal if the plaintiff establishes by clear and specific evidence a prima facie case for each essential element of its claim. *See id.* § 27.005(c); *In re Lipsky,* 411 S.W.3d 530, 543 (Tex.App.-Fort Worth 2013, orig. proceeding). However, "[t]he statutory definitions for the exercise of the right of free speech and the exercise of the right to petition do not include language requiring us to determine the truth or falsity of communications [in our threshold determination of] whether a movant for dismissal has met its preliminary preponderance of the evidence burden

under section 27.005(b)." *In re Lipsky,* 411 S.W.3d at 543; *see also Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.,* 283 S.W.3d 838, 846 (Tex.2009) (court should not add language to statute when construing it).

Under section 27.001, a communication need only be "in connection with a matter of public concern," which includes issues "related to a good, product, or service in the marketplace." Tex. Civ. Prac. & Rem.Code § 27.001(3), (7)(E). The record shows that Kinney's online statements related to services BCG provides to the public and that BCG's claims are based on those statements. Considering the plain language of the TCPA, *see Marks,* 319 S.W.3d at 663, and construing section 27.005 as a whole and in the context of the full statute, *see Texas Citizens,* 336 S.W.3d at 628, we conclude that Kinney has met his initial burden of showing by a preponderance of the evidence that his statements were made in connection with a matter of public concern and that this action relates to those statements so that the TCPA applies, *see* Tex. Civ. Prac. & Rem.Code §§ 27.001(3), (7)(E), .005(b); *Avila v. Larrea,* 394 S.W.3d 646, 655 (Tex.App.-Dallas 2012, pet. denied) (allegedly false and defamatory broadcast statements about lawyer's services constituted exercise of right of free speech and TCPA applied); *see also Lipsky,* 411 S.W.3d at 543 (declining to decide whether statements were defamatory when determining whether plaintiff had shown statements fell within provisions of TCPA).

*6 BCG also argues that the TCPA does not apply because Kinney's statements are exempt under section 27.010(b). *See* Tex. Civ. Prac. & Rem.Code § 27.010(b). Section 27.010(b) provides that:

> This chapter does apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.* [7] Section 27.010(b) thus provides, in relevant part, that a statement is exempt from the TCPA if the action is against a person primarily engaged in selling services and the statement arises from the sale of services. This provision has been construed to mean that for the exemption to apply,

the statement must be made for the purpose of securing sales in the goods or services of the person making the statement. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71, 88–89 (Tex.App.-Houston [1st Dist.] 2013, pet. filed) (following four-prong analysis devised by Supreme Court of California in *Simpson Strong–Tie Co., Inc. v. Gore,* 49 Cal.4th 12, 109 Cal.Rptr.3d 329, 230 P.3d 1117, 1129 (Cal.2010) for determining whether exemption applied under essentially identical California anti-SLAPP statute and concluding statements did not arise out of sale of goods or services of defendant); *see also Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc .,* No. 01–12–00990–CV, 2013 Tex.App. LEXIS 8756, at *12–13, 2013 WL 3716693 (Tex.App.-Houston [1st Dist.] July 16, 2013, pet. denied) (construing section 27.010(b) in context of Better Business Bureau's statements concerning its selling of its memberships). In *Newspaper Holdings,* the court applied the analysis of the California Supreme Court and concluded that the plaintiffs had the burden to show that the exemption applied. 416 S.W.3d at 89; *see also Better Bus. Bureau of Metro. Dallas v. BH DFW, Inc.,* 402 S.W.3d 299, 309 (Tex.App.-Dallas 2013, pet. denied) (applying general rule that burden of proving statutory exception rests on party seeking benefit from exception to construction of section 27.010(b)). The court then applied the *Simpson* four-pronged test and held that the plaintiffs had not met their burden as to Newspaper Holdings (NHI), concluding that the "complained-of statements d[id] not arise out of the lease or sale of the goods or services that NHI sells—newspapers." 416 S.W.3d at 89.

7    Section 27.010(b) has been referred to as the "commercial speech" exemption. *See Pena v. Perel,* 417 S.W.3d 552, 555 (Tex.App.-El Paso 2013, no pet.); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71, 88 (Tex.App.-Houston [1st Dist.] 2013, pet. filed).

We agree with the reasoning of our sister courts in *Newspaper Holdings* and *BH DFW, Inc.* that the plaintiff has the burden under section 27.010(b) to show that the statements arise from the sale of the defendant's services so that the exemption applies. BCG does not dispute that the statements must arise from the sale of Kinney's services but contends that his online statements did "arise out of" the sale of those services because Kinney is in the business of selling legal recruiting services and it is "obvious" that Kinney would not have made the post had it not been for the fact that he and BCG were competitors. [8] On the facts of this case, we do not find this argument persuasive.

8     Although BCG initially states that the entire subject of Kinney's post concerns legal services that are identical to those sold by Kinney, it ultimately argues that Kinney made the statements because he was a competitor of BCG and the statements therefore " 'arise out of' Kinney's sale of services."

**\*7** Here, Kinney's statements were made anonymously and made no reference whatsoever to his business or the sale of his services. BCG offered no evidence that the post was " 'for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, [Kinney's] goods or services or in the course of delivering [Kinney's] goods or services.' " *See Newspaper Holdings,* 416 S.W.3d at 88 (quoting *Simpson* four-prong test); *see also BH DFW,* 402 S.W.3d at 309 (plaintiff offered no evidence statements arose out of defendant's commercial transaction and failed to establish exemption). We therefore conclude that BCG has not met its burden of showing that the statements arose out of the sale of Kinney's services so as to be exempted from the TCPA under section 27.010(b) and that, consequently, the TCPA was properly invoked. We overrule BCG's second issue on cross-appeal as to the application of the TCPA.

### Effect of Trial Court's Rendition

The final issue that implicates our jurisdiction over this appeal is BCG's first issue in its cross-appeal. BCG contends that because the trial court did not sign an order until more than 30 days after the hearing, Kinney's entire motion to dismiss was overruled by operation of law. Section 27.005(a) provides that the trial court "must rule" on a motion to dismiss no later than the 30th day following the date of the hearing on the motion, and section 27.008(a) provides that if the trial court does not "rule on a motion to dismiss ... in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law...." Tex. Civ. Prac. & Rem.Code §§ 27.005(a), .008(a). BCG argues that a signed order is required under section " 27.005, that the rendition is not a signed order, and that the trial court's request for counsel to prepare an order indicates the rendition was not final. Consequently, BCG contends, the trial court did not rule within 30 days of the hearing, and the motion to dismiss was overruled in its entirety by operation of law. *See id.* § 27.008(a).

We do not find these arguments persuasive. Under sections 27.005(a) and 27.008(a), the court need only "rule" within 30 days of the hearing. *See id.* §§ 27.005(a), .008(a). Although

the TCPA does not define "rule," the plain meaning of the verb is "to decide a legal point." *See Black's Law Dictionary* 1446 (9th ed.2009); *see also Marks,* 319 S.W.3d at 663 (we apply plain meaning unless meaning is supplied by legislature). In the rendition, the trial court expressly decided the legal points as to dismissal of each claim and rendered its decision or "ruling." *Cf.* Tex. Fam.Code § 101.026 (" 'Render' " means the pronouncement by a judge of the court's *ruling* on a matter.") (emphasis added). Further, in looking at the TCPA as a whole, *see Texas Citizens,* 336 S.W.3d at 628, we observe that section 27.008(b) refers not to the trial court's "ruling" but to its "order." *See* Tex. Civ. Prac. & Rem.Code § 27.008(b) (appellate court shall expedite appeal from a trial court's order on a motion to dismiss). If the legislature had intended to require the trial court to sign an order within 30 days, it could have done so; instead the plain language of the statute requires only that the trial court "rule" within 30 days. *See Marks,* 319 S.W.3d at 663.

**\*8** In *Greene v. State,* 324 S.W.3d 276, 280–82 (Tex.App.-Austin 2010, no pet.), this Court drew a similar distinction between a trial court's ruling and order, holding that a "letter ruling" stating that "judgment is rendered for the plaintiffs" and requesting counsel to prepare a judgment for the court's signature, while insufficient to serve as an appealable order, can serve as the rendition of judgment if it is filed with the clerk. *Id.* at 281. Here, the trial court rendered its decision in writing, signed the rendition, and delivered it to the clerk. We conclude that the amended rendition, signed two days after the hearing, was a timely "ruling" within the meaning of "rule" in sections 27.005 and 27.008 and the motion to dismiss was not overruled by operation of law under section 27.008(a). *See id.* We overrule BCG's first issue on cross-appeal and conclude that we have jurisdiction over this interlocutory appeal and cross-appeal.

### Res Judicata

We turn, then, to Kinney's first issue on appeal. Kinney contends that this action is barred by res judicata based on the California court's order, an affirmative defense he asserted below. As a preliminary matter, BCG argues that the TCPA does not require it to overcome Kinney's affirmative defenses. In the 2013 revisions to the TCPA, the legislature added subsection (d) to section 27.005 providing that the trial court "shall dismiss" a case "if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *See* Act of May 24, 2013, 83d Leg., R.S., H.B. 2935, § 2 (codified at Tex. Civ. Prac. & Rem.Code § 27.005(d)). Thus, as amended,

section 27.005 requires a nonmovant to overcome a movant's affirmative defenses to avoid dismissal. *See id.* However, even prior to the addition of section 27.005(d), the plain language of section 27.006 required the court to consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability *or defense* is based." *See* Tex. Civ. Prac. & Rem.Code § 27.006(a) (emphasis added); *Marks*, 319 S.W.3d at 663. Therefore, without reaching the question of whether new subsection (d) applies to this case, we conclude that under either version of the statute, the result is the same and BCG is required to overcome any affirmative defenses Kinney established. *See* Tex. Civ. Prac. & Rem.Code § 27.006(a); Act of May 24, 2013, 83d Leg., R.S., H.B. 2935, § 2; Tex.R.App. P. 47.1. Therefore, while neither section 27.006(a) nor new subsection (d) changes the fact that Kinney had the burden of proof on his affirmative defense of res judicata, *see Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651 (Tex.App.-Houston [14th Dist.] 2010, no pet.), under either section 27.006(a) or new section 27.005(d), it was proper, under the plain language of either version of the statute, for the trial court to consider the pleadings and evidence relevant to res judicata in ruling on Kinney's motion to dismiss. [9] *See Navellier v. Sletten*, 106 Cal.App.4th 763, 131 Cal.Rptr.2d 201, 205 (Cal.Ct.App.2003) (applying language in California anti-SLAPP statute identical to that in section 27.006(a) and concluding that "[i]n deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant"). [10]

[9] In addition, construing the TCPA to preclude a trial court's consideration of affirmative defenses in determining motions to dismiss under section 27.003 would contravene the statute's purpose-to protect free speech by enabling the early dismissal of meritless lawsuits that threaten that right. *See* Tex. Civ. Prac. & Rem.Code § 27.003; *Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14–12–00896–CV, 2013 Tex.App. LEXIS 1898, at *2, 2013 WL 407029 (Tex.App.-Houston [14th Dist.] Jan. 24, 2013, order).

[10] We also observe that BCG could have requested limited discovery relevant to the motion and Kinney's affirmative defenses. *See* Tex. Civ. Prac. & Rem.Code § 27.006(b).

**\*9** We next consider whether Kinney met his burden of proof by establishing the elements of the affirmative defense of res judicata. "To determine the preclusive effect of a judgment of another state's court, Texas courts

apply the res judicata principles of that state." *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, 281 S.W.3d 237, 242 (Tex.App.-Dallas 2009, pet. denied) (citing *Purcell v. Bellinger*, 940 S.W.2d 599, 601 (Tex.1997)). Under California law, res judicata applies if "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the *same cause of action* as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Villacres v. ABM Indus. Inc.*, 189 Cal.App.4th 562, 117 Cal.Rptr.3d 398, 410 (Cal.Ct.App.2010). The issue of res judicata is a question of law. *See Cornette v. Department of Transp.*, 26 Cal.4th 63, 109 Cal.Rptr.2d 1, 26 P.3d 332, 341 (Cal.2001) (" 'While all [the res judicata] issues may have factual predicates, they are peculiarly legal determinations.' " (quoting and distinguishing *Windsor Square Homeowners Assn. v. Citation Homes*, 54 Cal.App.4th 547, 62 Cal.Rptr.2d 818, 825 (Cal.Ct.App.1997))).

Kinney argues that all three elements of res judicata are met in this case. While BCG does not dispute that the California order is final or that there is privity between the plaintiffs in the California action and the plaintiffs here, it does contend that the California court's determination was not on the merits and that the two proceedings do not involve the same causes of action. Concerning whether the California order was a determination on the merits, BCG argues that the California court based its decision on procedural grounds only and its statements that the plaintiffs had not established a probability of prevailing on the merits and that Kinney's statements were privileged were mere dicta. As we have already noted, we do not agree with BCG's reading of the California court's ruling. Citing section 47 of the California Civil code, *see* Cal.Civ.Proc.Code § 47(c), the California court order stated:

> In addition to being time barred, plaintiffs have not provided sufficient evidence to establish a probability of prevailing on the merits. Defendants have presented evidence that there was already a good deal of on-line discussion regarding plaintiffs' businesses when defendant Kinney posted his remarks, which were based on his first hand knowledge. Kinney's statements of opinion are privileged communications amount [sic] interested parties. CC47(c).

Considering this language, we conclude that the California court's holding was based on the alternative grounds of limitations and privilege. The privilege under section 47 is "an 'absolute' privilege, and it bars all tort causes of action except a claim of malicious prosecution." *Flatley v. Mauro,* 39 Cal.4th 299, 46 Cal.Rptr.3d 606, 139 P.3d 2, 16 (Cal.2006). Further, dismissal under the California anti-SLAPP statute is essentially equivalent to dismissal on the merits on summary judgment. *See Navellier,* 131 Cal.Rptr.2d at 205; *cf. Boeken v. Philip Morris USA, Inc.,* 48 Cal.4th 788, 108 Cal.Rptr.3d 806, 230 P.3d 342, 345 (Cal.2010) (for res judicata purposes, dismissal with prejudice is equivalent of final judgment on merits); *Federal Home Loan Bank of San Francisco v. Countrywide Fin. Corp.,* 214 Cal.App.4th 1520, 1528, 154 Cal.Rptr.3d 873 (Cal.Ct.App.2013) (dismissal with prejudice is determinative of issues). Therefore, we conclude that the California court's order was an adjudication on the merits. [11]

[11] Although the California dismissal on the merits was as to Legal Authority only, and not to BCG, BCG admits that it is an affiliate of Legal Authority and does not dispute that it is in privity with Legal Authority. Therefore, for purposes of res judicata, the California order on the merits as to Legal Authority was also a determination on the merits as to BCG, and BCG is bound by the order. *See Arias v. Superior Court,* 46 Cal.4th 969, 95 Cal.Rptr.3d 588, 209 P.3d 923, 932 (Cal.2009); *Villacres v. ABM Indus. Inc.,* 189 Cal.App.4th 562, 117 Cal.Rptr.3d 398, 410, 422 (Cal.Ct.App.2010).

**\*10** Regarding whether the two proceedings involve the same causes of action, BCG argues that in the California action, it asserted only libel, unfair competition, and intentional interference with prospective economic relations claims—which were based on Kinney's false and defamatory statements—not the claims for breach of contract and breach of fiduciary duty—which are based on Kinney's true statements disclosing confidential information—or the statutory claims under the Lanham Act that it asserts in this case. However, California law is settled that " 'a prior final judgment on the merits not only settles issues that were actually litigated but also every issue that might have been raised and litigated in the first action.' " *Countrywide Fin. Corp.,* 214 Cal.App.4th at 1529, 154 Cal.Rptr.3d 873 (quoting *Mattson v. City of Costa Mesa,* 106 Cal.App.3d 441, 164 Cal.Rptr. 913, 916 (Cal.Ct.App.1980)); *see Bullock v. Philip Morris USA, Inc.,* 198 Cal.App.4th 543, 131 Cal.Rptr.3d 382, 393 (Cal.Ct.App.2011). If a matter is within

the scope of the prior action, related to the subject matter, and relevant to the issues, so that it could have been raised, the judgment is conclusive on it. *Countrywide Fin. Corp.,* 214 Cal.App.4th at 1529, 154 Cal.Rptr.3d 873 (citing *Villacres,* 117 Cal.Rptr.3d at 409). "The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, 'litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background.' " *Villacres,* 117 Cal.Rptr.3d at 409 (quoting *Interinsurance Exchange of the Auto. Club v. Superior Court,* 209 Cal.App.3d 177, 257 Cal.Rptr. 37, 39 (Cal.Ct.App.1989) (internal quotations and italics omitted)). "A party cannot by negligence or design withhold issues and litigate them in consecutive actions." *Aerojet–General Corp. v. American Excess Ins. Co.,* 117 Cal.Rptr.2d 427, 436 (Cal.Ct.App.2002). Res judicata should bar a claim if with diligence it could have been brought earlier. *Allied Fire Protection v. Diede Constr., Inc.,* 127 Cal.App.4th 150, 25 Cal.Rptr.3d 195, 200 (Cal.Ct.App.2005).

We conclude that BCG could have raised the claims asserted in this case in the California action. Both the libel-based claims and the claims based on disclosure of confidential information arise from the same factual background— Kinney's single internet post—and the current claims are within the scope of the California action, related to the subject matter and relevant to the issues. *See Countrywide Fin. Corp.,* 214 Cal.App.4th at 1529, 154 Cal.Rptr.3d 873; *Villacres,* 117 Cal.Rptr.3d at 409. The only reason BCG offers for not asserting the contract and fiduciary duty claims in the California action is that it had not "discovered" the employment contract. However, the alleged contract was one BCG prepared, presented to Kinney, and subsequently located in its files. BCG had knowledge of the contract and, with diligence, could have asserted the claims based on it in the prior action. *See Diede Constr.,* 25 Cal.Rptr.3d at 200. Similarly, BCG's claim in this case for violations of the Lanham Act is based on the same alleged false statements upon which the libel-related claims in the California action were founded, it could have been asserted in the California case, and BCG may not withhold issues and litigate them later. *See Countrywide Fin. Corp.,* 214 Cal.App.4th at 1529, 154 Cal.Rptr.3d 873; *Aerojet–General Corp.,* 117 Cal.Rptr.2d at 436. We therefore hold that BCG's claims are barred by res judicata and sustain Kinney's first issue.

**Sanctions**

*11 Because we conclude that BCG's claims are barred by res judicata, we need not reach the remainder of the parties' issues, with the exception of BCG's challenge to the trial court's award of sanctions under section 27.009 of the TCPA. *See* Tex.R.App. P. 47.1. Section 27.009(a)(2) provides that if the court orders dismissal, it "shall award to the moving party ... sanctions against the party who brought the legal action as the court determines sufficient to deter the party ... from bringing similar actions." Tex. Civ. Prac. & Rem.Code § 27.009(a)(2). In its third issue on cross-appeal, BCG contends that the sanctions amount was excessive and the trial court abused its discretion because it awarded the amount of $75,000 without any guidance from a determination of actual litigation costs and without providing a sufficient explanation for how it determined that amount.

We generally review a trial court's award of sanctions for an abuse of discretion. *See American Flood Research, Inc. v. Jones,* 192 S.W.3d 581, 583 (Tex.2006) (per curiam). A trial court abuses its discretion if its ruling is arbitrary, unreasonable, or without reference to any guiding rules and principles. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000) (per curiam). In determining whether the trial court abused its discretion, we must decide whether the sanctions were appropriate or just under a two-part inquiry. *American Flood Research,* 192 S.W.3d at 583. The appellate court must ensure that (1) there is a direct nexus between the improper conduct and the sanction imposed, *id.; Low v. Henry,* 221 S.W.3d 609, 614 (Tex.2007), and (2) less severe sanctions would not have been sufficient to promote compliance, *American Flood Research,* 192 S.W.3d at 583. We do not rely only on the trial court's findings but must independently review the entire record to determine if the trial court abused its discretion. *Id.*

Because the order reflects that the trial court ordered sanctions pursuant to the TCPA, we review the order under the language of section 27.009. *See* Tex. Civ. & Prac. Rem.Code § 27.009(a)(2); *Low,* 221 S.W.3d at 614 (reviewing order in light of chapter 10 of Civil Practices and Remedies Code because trial court's written order specifically ordered sanction pursuant to penalty provision of chapter 10); *cf. American Flood Research,* 192 S.W.3d at 583–84 (where order imposing sanctions neither referred to nor tracked any language of specific rule, analysis governed by language of any rule cited in motion). Section 27.009(a)(2) requires the trial court to award sanctions if it dismisses a claim pursuant to section 27.003 and gives the trial court broad discretion to determine what amount is sufficient to deter the party from

bringing similar actions in the future. *See* Tex. Civ. Prac. & Rem.Code § 27.009(a)(2). It does not expressly require the trial court to explain how it reached its determination. *Cf. id.* § 10.005 (in imposing sanction under chapter 10, court shall describe the sanctionable conduct and explain the basis for the sanction); Tex.R. Civ. P. 13 (good cause must be stated in sanction order).

*12 As we have already discussed, the record shows that BCG asserted claims that could have been asserted in the California suit. *See Countrywide Fin. Corp.,* 214 Cal.App.4th at 1529, 154 Cal.Rptr.3d 873; *Villacres,* 117 Cal.Rptr.3d at 409. While the sanction imposed was large, "the amount [of the sanction] alone does not render the order unjust." *Wal–Mart Stores v. Davis,* 979 S.W.2d 30, 47 (Tex. App .-Austin 1998, pet. denied). The record also shows a culmination of multiple actions, including an attempted arbitration, concerning claims for the same harm asserted under various legal theories and that one of the prior actions resulted in an award of attorney's fees against BCG in the amount of $45,000. *See Boelken,* 108 Cal.Rptr.3d 806, 230 P.3d at 348; *Villacres,* 117 Cal.Rptr.3d at 409. Given the history of the litigation, the trial court could have reasonably determined that a lesser sanction would not have served the purpose of deterrence. *See Stromberger v. Turley Law Firm,* 315 S.W.3d 921, 924 (Tex.App.-Dallas 2010, no pet.) (sanction awarded based on party's conduct over two-year period). In light of the trial court's findings and the record before us, as well as the broad discretion afforded the trial court by section 27.009, we conclude that the sanction has a direct relationship to BCG's sanctionable conduct and that the trial court did not abuse its discretion in determining that a lesser sanction would have been insufficient to deter further actions by BCG. *See* Tex. Civ. Prac. & Rem.Code § 27.009(a) (2); *American Flood Research,* 192 S.W.3d at 583.

In arguing that the trial court abused its discretion because it awarded sanctions without reference to the actual litigation costs, BCG relies on *Low,* in which the supreme court held that a determination of the amount of a penalty under chapter 10 of the Civil Practices and Remedies Code "should ... begin with an acknowledgment of the costs and fees incurred because of the sanctionable conduct[, which] provides a monetary guidepost of the impact of the conduct on the party seeking sanctions and the burdens on the court system." *See* 221 S.W.3d at 621. Although no court has addressed a sanctions award under the TCPA, because both chapter 10 and the TCPA allow for sanctions to deter future sanctionable conduct, *see* Tex. Civ. Prac. & Rem.Code §§

10.004(b), 27.009(a)(2), we assume without deciding that this guideline may reasonably apply to sanctions under the TCPA. However, the trial court expressly considered the prior litigation, and the record reflects that the California court awarded Kinney $45,000 in attorney's fees in that action. On the record before us, we conclude that there was sufficient evidence of the economic impact to Kinney of the sanctionable conduct of BCG over the course of litigation in two states to serve as a "guidepost" for the amount of the sanction. *See Low,* 221 S.W.3d at 621. Further, although unlike chapter 10 and rule 13, section 27.009 does not require the trial court to state the reasons for the sanction amount, the order nevertheless expressly recited the trial court's consideration of the prior litigation, which resulted in an award of attorney's fees against BCG, in deciding that a sanction of $75,000 was necessary to deter BCG from bringing similar actions in the future. *Cf. Low,* 221 S.W.3d at 620 (*absence* of explanation of how court determined amount when sanction is especially severe is inadequate). In light of the statutory language and the record before us, we cannot conclude that the trial court abused its discretion in awarding $75,000 in sanctions against BCG. We overrule BCG's third issue on cross-appeal.

## CONCLUSION

**\*13** Having concluded that we have jurisdiction over this appeal and cross-appeal, that BCG's claims are barred by res judicata, and that the trial court did not abuse its discretion in awarding sanctions in the amount of $75,000 against BCG, we reverse the trial court's order denying Kinney's motion to dismiss as to BCG's breach of contract and breach of fiduciary duty claims and render judgment dismissing those claims. We affirm the trial court's order in all other respects.

**Parallel Citations**

38 IER Cases 170, 42 Media L. Rep. 1812

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
|---|---|---|
| JOHN MOORE RENOVATION, LLC | § | |
| Plaintiffs, | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| Defendant. | § | 269TH JUDICIAL DISTRICT COURT |

## FINAL JUDGMENT

On July 16, 2013, the First Court of Appeals entered judgment in the original interlocutory appeal of this cause in favor of the Defendant The Better Business Bureau of Metropolitan Houston, Inc. ("Houston BBB") finding reversible error in the trial court's order dated October 3, 2012. On February 14, 2014, the Texas Supreme Court denied Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC's (collectively "Plaintiffs" or "John Moore") petition for review. On April 4, 2014, the First Court of Appeals issued its mandate that this case should be dismissed and certified its judgment to this Court for observance.

On July 21, 2014, the Houston BBB remaining claim for attorney's fees was tried to a jury. Plaintiffs appeared by their representative and by their attorneys of record and announced ready for trial. The Houston BBB appeared by its representative and by its attorneys of record announced ready for trial. A jury consisting of twelve qualified jurors were duly empaneled, and the jury reached a verdict on July 22, 2014.

The Charge of the Court, Questions, Answers, and the Verdict Certificate are incorporated herein for all purposes. Consistent with the jury's findings, the Court renders judgment for the Houston BBB and against Plaintiffs for the following amounts:

3821737

(i) **$106,369.28** for representation in the trial court before and during Houston BBB's original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(ii) **$81,360.80** for representation in the Court of Appeals for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(iii) **$37,982.08** for representation in the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid; and

(iv) **$24,289.28** for representation in the trial court after the original interlocutory appeal was decided, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid.

Having considered the foregoing, the Defendant's Motion for Entry of Final Judgment, including attachments, the Plaintiffs' response, including attachments, if any, Defendant's reply, if any, the admissible evidence, the arguments of counsel, the pleadings on file, the evidence presented at trial, the jury's verdict, and the judgment of the First Court of Appeals, the Court is of the opinion that the Motion should be GRANTED in its entirety and that Final Judgment be entered. It is therefore,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc.'s Motion for Entry of Final Judgment and for Award of Court Costs, Expenses, and Sanctions against Plaintiffs is hereby GRANTED in its entirety. It is further;

2

3821737

ORDERED, ADJUDGED AND DECREED that Plaintiffs claims are DISMISSED IN THEIR ENTIRETY WITH PREJUDICE, and that Plaintiffs TAKE NOTHING on their claims. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. have and recover from Plaintiffs, whom shall be jointly and severally liable for such amounts, as a reasonable fee for the necessary services of Houston BBB's attorneys in defending against John Moore's legal action:

(i)   **$106,369.28**   for representation in the trial court before and during Houston BBB's original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(ii)   **$81,360.80**   for representation in the Court of Appeals for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(iii)   **$37,982.08**   for representation in the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid; and

(iv)   **$24,289.28**   for representation in the trial court after the original interlocutory appeal was decided, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid,

for a total of $250,001.44, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, and which, based on the evidence admitted and considered in this cause, the Court finds to be just and equitable. It is further,

3

3821737

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. have and recover from Plaintiffs, whom shall be jointly and severally liable for such amount, $6,237.77, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, for the expenses incurred by the Houston BBB in defending against this legal action, an amount which, based on the evidence admitted and considered in this cause, the Court FINDS to be just and equitable. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. recover from Plaintiffs, whom shall be jointly and severally for such amounts, $415,000.00, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, as sanctions under Texas Civil Practice and Remedies Code § 27.009(a)(2). The Court finds that Plaintiffs brought this lawsuit to deter or prevent Defendant from exercising its right of free speech, that Plaintiffs have brought a subsequent lawsuit (Cause No. 2013-76215) for the same improper purpose. The Court takes judicial notice of all of the papers filed and proceedings in connection with Cause No. 2013-76215. In consideration of the above, including the award to Defendant of attorney's fees in this lawsuit, and all of the evidence admitted and considered in this cause, the Court finds a sanction against Plaintiffs under Section 27.009(a)(2) in the amount of $415,000 is directly related to Plaintiffs' improper conduct and to be appropriate, sufficient, and necessary to deter Plaintiffs from bringing similar actions described by Chapter 27 of the Texas Civil Practice and Remedies Code, and that lesser sanctions would be insufficient. It is further,

ORDERED, ADJUDGED AND DECREED that all costs of court expended or incurred in this cause are hereby taxed against Plaintiffs, whom shall be jointly and severally liable for

4

such amount, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid.

The Court orders execution to issue for this judgment.

**THIS IS A FINAL JUDGMENT.  ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.**

SIGNED this _____ day of _____, 2014.


_____
JUDGE PRESIDING


APPROVED AS TO FORM:

PORTER HEDGES LLP

By:___/s/ Jeffrey R. Elkin_____
Jeffrey R. Elkin, SBN 06522180
M. Harris Stamey, SBN 24060650
1000 Main Street, 36th Floor
Houston, Texas 77002-6336
Telephone:  (713) 226-6617
Telecopier:  (713) 226-6217
jelkin@porterhedges.com
mstamey@porterhedges.com

ATTORNEYS FOR DEFENDANT

3821737


Exhibit K

CAUSE NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| *Defendants* | § | 269th JUDICIAL DISTRICT |

CAUSE NO. 2013-76215

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| *Plaintiffs* | § | |
| v. | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC.; THE | § | HARRIS COUNTY, TEXAS |
| BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON | § | |
| EDUCATION FOUNDATION; | § | |
| DAN PARSONS; CHRIS CHURCH | § | |
| CHURCH ENTERPRISES, INC. | § | |
| A/K/A CHURCH SERVICES; GARY | § | |
| MILLESON; RONALD N. MCMILLAN | § | |
| D'ARTAGNAN BEBEL; MARK GOLDIE | § | |
| CHARLIE HOLLIS; AND STEVEN | § | |
| LUFBURROW | § | |
| *Defendants* | § | 269th JUDICIAL DISTRICT |

**PLAINTIFFS' MOTION TO CONSOLIDATE**
**AND**
**RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT AND FOR AWARD OF
COURT COSTS, EXPENSES, AND SANCTIONS**
**AND**
**PLAINTIFFS' MOTION TO DISREGARD THE FINDINGS OF THE JURY IN PART**

Defendants' motion for entry judgment is a transparent attempt to make an end run

around John Moore's claims in Cause No. 2013-76215 (the "second lawsuit"). After

preventing John Moore from amending its complaint in Cause No. 2012-35162 (the "first

Certified Document Number: 61880272 - Page 1 of 18

lawsuit") to join new claims suggested by the documents produced in discovery, the Houston BBB now seeks to rush to judgment in the hope that a final decision rendered in the first lawsuit will defeat John Moore's meritorious claims in the second lawsuit. It would have been preferable and efficient to bring the claims in a single suit, and they should not be resolved piecemeal to the potential detriment of John Moore. In the interests of fairness and efficiency, the claims in Cause No. 2013-76215 should be consolidated into Cause No. 2012-35162 and decided one time on their merits.

At the very least, the attorneys' fees judgment (whether interlocutory or final) should not be rendered in the amount requested by Defendants. The evidence is legally insufficient to support the amount of fees awarded by the jury under the authority governing the recovery of attorneys fees. In the alternative, the Court should reduce the attorneys' fees in the interests of justice and equity. Finally, no sanctions are appropriate in this case.

## ARGUMENT

The two lawsuits should be consolidated into one, and if an interlocutory judgment on attorneys' fees is rendered, it should be for a reduced amount. And sanctions should not be awarded by any means.

## I. THE SECOND LAWSUIT (CAUSE NO. 2013-76215) SHOULD BE CONSOLIDATED WITH THE FIRST LAWSUIT (CAUSE NO. 2012-35162).

The court of appeals' mandate in the first lawsuit does not require this Court to render a final judgment of dismissal. It only requires the Court to conduct "further proceedings" that are consistent with its opinion. Ex. A (Mandate). As the claims made

2

Certified Document Number: 61880272 - Page 2 of 18

in the second lawsuit were not addressed in any respect by the court of appeals, they may be pursued in the first lawsuit without coming into conflict with the court of appeals opinion, judgment or mandate. Consolidating the two Causes and hearing John Moore's unadjudicated claims is not inconsistent with this mandate.

### A. The Court May Consolidate Matters with Common Questions of Fact or Law.

Under the Texas Rules of Civil Procedure, the Court has the authority to consolidate these two matters.

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

TEX. R. CIV. P. 174(a); *see also* HARRIS CTY. LOC. R. 3.2.3 (motion to consolidate is to be heard in the lower-numbered case). While the Court has discretion under this rule, it is not unbounded. *In re Ethyl Corp.*, 975 S.W.2d 606, 610 (Tex. 1998). The Court must exercise its discretion "within limits created by the circumstances of the particular case." *Id.* While it is obvious that these limits restrain a Court's discretion to order consolidation, they apply equally to limit the Court's discretion to refuse consolidation.

The claims in two causes share common issues of fact and law when "they all relate to substantially the same subject matter." *Owens-Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 716 (Tex. App.—Dallas 1997, no writ). In *Martin*, the claims by eighteen different plaintiffs were consolidated for trial because they all alleged their harm was caused by the same product, were given the same (ineffectual) warning, were

3

represented by the same lawyers, and were subject to the same law. *Id.* The harm to each plaintiff was different. *Id.* The court of appeals held that the claims were properly consolidated. *Id.* at 720.

The purpose of the consolidation rule is to "further convenience, to avoid prejudice, and to promote the ends of justice." *In re Ethyl Corp.*, 975 S.W.2d at 610. Indeed, consolidation **must be ordered** when failure to do so would result in injustice. *See id.* ("the paramount objective of preventing injustice obtains whether the question is one of separate trials or of consolidation"). It may not be ordered when consolidation would cause confusion or prejudice and render the jury unable to find the facts based on the evidence. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 207 (Tex. 2004). The Houston BBB cannot simply rely on dissimilarities between the cases, it must show that a consolidation "will materially affect the fairness of a trial." *Id.* at 208. No confusion or prejudice will result from this consolidation, but an injustice will result in this case if consolidation is not ordered.

**B.  The Common Questions of Fact in These Cases Make Consolidation Permissible; the Injustice to John Moore Makes It Mandatory.**

Both of these cases involve the same events; the same conduct by the Houston BBB and its agents; the same harm to John Moore. There are obvious and ubiquitous questions of fact in common. Consolidation is proper.

**1.  The two cases involve common questions of fact.**

The Houston Court of Appeals considered a somewhat similar case twenty years ago. *Lone Star Ford v. McCormick*, 838 S.W.2d 734 (Tex. App.—Houston [1st Dist.]

Certified Document Number: 61880272 - Page 4 of 18

1992, writ denied). In that case two employees sued their employer for breach of their employment contracts and tortious interference. *Id.* at 737. Thus, the claims involved two separate legal breaches, but they were based on the same course of conduct by the employer that was directed toward the two employees. *Id.* Therefore, the trial court consolidated their claims and rendered judgment after a jury trial. *Id.* The defendant challenged the consolidation. The appellate court looked at the two plaintiffs' claims to determine whether they concerned "the same or substantially the same transaction, occurrence, subject matter, or question." *Id* at 738. As they did, the court of appeals upheld the order consolidating the two causes.

First the Houston BBB has judicially admitted that Cause No. 2013-76215 concerns the same transaction, occurrence, subject matter, or question.

> Despite John Moore's pleading to the contrary (Petition at ¶ 18), this lawsuit is nothing more than a continuation of the First Legal Action. . . . John Moore has merely taken **the same set of background facts and circumstances** that were adjudicated in the First Legal Action and tried to recast them into different, non-defamation causes of action.
>
> . . .
>
> John Moore cannot avoid the application of Chapter 27 of the Court of Appeals' decision by simply filing a separate lawsuit that does nothing more than try to recast **the same background events and circumstances** into different causes of action than those asserted in [the] First Legal Action.

Ex. B at 9, 15 (Motion to Dismiss, Cause No. 2013-76215) (emphasis added). An assertion of fact in a live pleading that is not pleaded in the alternative and that is deliberate, clear, and unequivocal is a formal judicial admission. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Houston First Am. Sav. v.*

5

*Musick*, 650 S.W.2d 764, 767 (Tex. 1983). The effect of a judicial admission is conclusive. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). The Houston BBB is barred from disputing that the two cases involve the same transactions, occurrences, and subject matter. *Id.* Therefore, consolidation is proper.

Second, even without the judicial admission, there are ample examples that the two cases share common questions of fact. *Compare* Ex. C at 2-10 (Original Petition, Cause No. 2012-35162) *with* Ex. D at 5-14, 15-23 (First Amended Original Petition, Cause No. 2013-76215). For example, in both cases, John Moore's claims are based on the damages suffered when the defendants' conduct (1) caused it to lose business beginning no later than April 2012, resulting in lost sales of almost $7 million; (2) caused it to expend $47,000 to alter the graphics on its fleet of service trucks; and (3) caused it to prematurely lose the benefit of a $1.1 million investment in custom graphics on those service trucks. *See* Resp. to Mot. to Dismiss at 53 (Cause No. 2013-76215). Thus, the two causes involve the same damages.

Furthermore, in both cases, John Moore alleges that the defendants concerted conduct was intended to harm John Moore for the benefit of other Houston BBB members. This harmful conduct included:

- the cancelation of Houston BBB programs that benefited John Moore such as the advertising cooperative;

- an attack on John Moore's independent advertising campaigns;

6

- manipulation of the Houston BBB business rating system to give John Moore an artificially low rating;

- the orchestration of votes on the Membership Committee and the Board of Directors to force John Moore to resign from the Houston BBB;

- a campaign to prevent John Moore from becoming a member of any other Better Business Bureau; and

- bringing an unmeritorious trademark infringement lawsuit against John Moore in federal court.

*See* Response to Motion to Dismiss at 2-10 (Cause No. 2013-76215); *see* Ex. C at 2-10; Ex. D at 5-14, 15-23.

### 2.    An injustice would be done if the cases are not consolidated.

When this Court denied the Houston BBB's motion to dismiss, it recognized that John Moore's claims in the second lawsuit are viable, *i.e.*, they meet the evidentiary test set out in Chapter 27 of the Civil Practice and Remedies Code. The Houston BBB seeks to avoid liability on these viable claims by asserting legally suspect *res judicata* or collateral estoppel arguments following an entry of judgment in the first lawsuit. *See* Ex. B at 9, 15. At the very least, these arguments will cause John Moore to incur unnecessary expense and delay the resolution of those claims. At worst, these claims will prevent John Moore from asserting meritorious claims concerning a very real injury.

As the Court will recall, John Moore did not desire to multiply litigation by filing a second suit. After discovery had begun in the first lawsuit, John Moore became aware of new claims that it had not asserted in its original petition. It attempted to amend its

7

Certified Document Number: 61880272 - Page 7 of 18

pleadings to add the claims for restraint of trade, breach of contract, and deceptive trade practices. But the Houston BBB objected and argued that a later-enacted statute applied retroactively to stay all proceedings in the lawsuit. The Court struck the amended petition.

Because limitations had not yet run, John Moore preserved these new claims by filing a second lawsuit, Cause No. 2013-76215. These claims should not be barred by a resolution of the first lawsuit, but there are no certainties in this world. John Moore's position is that a final judgment in the first lawsuit will not bar its claims in the second suit (1) because no judgment existed at the time the claims were asserted that would prevent them from being filed, *see Citizens Ins. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007); (2) because of the stay asserted by the Houston BBB, the claims could not be joined in that case, *see Finger v. Southern Refrigeration Servs.*, 881 S.W.2d 890, 895-96 (Tex. App.—Houston [1st Dist.] 1994, writ denied); and (3) because a decision in one part of a lawsuit that was divided into separate parts has no res judicata or collateral estoppel effect on the other part. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). Thus, John Moore does not believe that *res judicata* would apply.

However, nothing will prevent the Houston BBB from asserting the defense if the cases are kept separate and a final judgment is rendered in the first lawsuit. John Moore will, at the very least, be required to defend itself against the argument that its claims are precluded. At worst, if John Moore were to lose the argument, then its meritorious claims in the second lawsuit will never be determined on their merits. Even without the

8

Certified Document Number: 61880272 - Page 8 of 18

effects of *res judicata*, a separate judgment in the first lawsuit will ultimately result in two separate appeals, increasing the cost to both parties, the burden to the courts, and the inefficiency of the process. Any of these situations would cause an injustice to John Moore and prejudice it in the pursuit of its claims.

On the other hand, the need to contest the issue of *res judicata* at all would be eliminated by consolidating the two cases, thereby avoiding prejudice to any party. This would also result in a single appeal, further increasing efficiency. Once consolidated, any judgment on the amount of attorneys' fees would be interlocutory and could not have *res judicata* effect on John Moore's claims made in the second suit, and all of these matters could be appealed at one time.

John Moore's claims in Cause No. 2013-76215 share a common nucleus of fact with the claims in Cause No. 2012-35162. Therefore, consolidation is within the discretion of this Court. The Houston BBB's naked attempt to bar John Moore's claims in the second lawsuit (which this Court has determined to be supported by sufficient evidence under Chapter 27) would cause an injustice by preventing John Moore from a resolution of its claims on the merits. The Court should order a consolidation.

**II.     IF AN INTERLOCUTORY JUDGMENT IS RENDERED TODAY, IT SHOULD BE FOR A REDUCED AMOUNT.**

Should the Court consolidate the two actions as argued above, a judgment on the attorneys' fees issue would be premature and unnecessary. However, should the Court elect to sign an interlocutory judgment on the attorneys' fees issue, the judgment should be for far less than the amount found by the jury.

9

**A.      There Is No Legally Sufficient Evidence to Support the Full Amount of the Jury's Award.**

The Anti-SLAPP statute mandates the award of "reasonable" attorneys' fees in an amount that satisfies "justice and equity." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Texas jurisprudence has always considered reasonableness and necessity together. *See*, *e.g.*, *El Apple I, Ltd. v. Oivas*, 370 S.W.3d 757, 762-63 (Tex. 2012) (considering necessity of the fees as a component of reasonableness). Therefore, the Houston BBB must establish that the fees it is requesting are both reasonable and necessary.

For the Court to conduct a meaningful review, the Houston BBB "must provide sufficient details of the work performed." *Id.* at 764. This includes, "at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Id.*

The *El Apple* requirements have been elaborated upon to require "evidence of the time spent on specific tasks." *Long v. Griffin*, __ S.W.3d __, 2014 WL 1643271, at *3 (Tex. April 25, 2014). When a party uses bulk billing, it is impossible to determine whether the time spent on a specific task was reasonable and necessary. For example, the second entry in the Houston BBB's invoices illustrate the problem:

> Continue detailed review and analysis of Original Petition; research current Anti-SLAPP litigation information; receive and review correspondence from L. Hood requesting removal of all references to John Moore from BBB web-site.

Ex. F at p.1. This time entry indicates that 2.2 hours were spent on these issues, but there is no way to determine how that time is broken down. Did the timekeeper spend 2.0 hours reviewing correspondence and the balance on the petition and research? Was the

10

bulk of the time spent on research?  There is no way to know.  Therefore, there is no way to determine if the time was well-spent or wasted.

Similarly, when a party over-redacts the time entries, the result is gibberish that does not guide the fact-finder.  The first entry on the second page of Invoice # 400271 is an example of this problem:

> Telephone conference with [BLANK] regarding [BLANK] motions to dismiss; revise [BLANK] in support of motion to dismiss, revise motion; communications to and from Ms. Christensen regarding [BLANK].

Ex. F at p.7.  This entry actually combines the bulk billing problem with the redaction problem.  There is no way to determine what the telephone conference was regarding, what was revised, or what the communications with Ms. Christensen related to.  How can a factfinder determine whether these tasks were reasonable and necessary without knowing what they are?  They cannot.

Houston BBB's evidence is inadequate and does not meet the *El Apple* requirements to the extent it uses bulk billing and does not satisfy the *Long v. Griffin* standard to the extent it does not specify the particular tasks.  Block billing and heavy redactions do not permit the fact finder even to break the hours spent down into general categories such as discovery, research, pleadings, witnesses, etc.  Even if this kind of general breakdown were possible, it is inadequate under Supreme Court precedent.  *See El Apple*, 370 S.W.3d at 763 (holding that such categorization "provides none of the specificity needed for the trial court to make a meaningful lodestar determination.").

The billing invoices provided by Houston BBB in support of its award for attorneys' fees include hundreds of time entries.  Ex. F.  As indicated by the examples

11

above, not all of the entries identify the time spent on a specific task as required by the Texas Supreme Court because they contain block billing and/or redactions that obscure the nature of the work performed. Of the hundreds of time entries, only 158 avoid combining multiple tasks and actions into a single time entry (*i.e.*, block billing) or avoid redactions that obscure one or more of the tasks that are described. Ex. E (Affidavit of Amelia Irving). To the extent block billing and heavy redactions make it impossible to determine whether the time was well-spent or wasted, the entries are legally insufficient evidence.

Attached to this response is a copy of Defendants Exhibit 3 with all of the legally insufficient time entries struck through. Ex. F. These entries are legally insufficient evidence, and the fact finder could not rely on them to make a finding as to the reasonable and necessary attorney's fees. *El Apple I, Ltd.*, 370 S.W.3d at 762-63; *Long*, 2014 WL 1643271, at *3. Therefore, there should be no attorneys' fees awarded for these amounts. The remaining entries satisfy the *El Apple* and *Long* standards and are arguably legally sufficient to support an award.

The total dollar amount of the entries that are not fatally defective is $72,413.50. Ex. G. Because the invoices as a whole are insufficient to support a finding that all of the fees included therein are reasonable and necessary, the award of attorneys' fees should be reduced to a maximum of $72,413.50.

12

**B.**     **The Attorneys' Fees Should Be Reduced in the Interest of Justice and Equity.**

When Moore filed its initial lawsuit on June 18, 2012, the Anti-SLAPP statute had been on the books for one year. *See* TEX. CIV. PRAC. & REM. CODE § 27.001 (effective June 17, 2011). In determining the appropriate causes of action to assert in the lawsuit, John Moore understandably concluded that the statute did not apply to its claims because this case involved a business relationship, and the statute explicitly stated that its purpose was related to "participation in government." TEX. CIV. PRAC. & REM. CODE § 27.002. The statute, with its protection of participation in government, appeared to apply in the governmental context where citizens required protection from illegal suppression of such rights by the filing of strategic lawsuits, not to a commercial dispute in which John Moore is able to show a real injury arising out of the Houston BBB's conduct.

Virtually none of the questions raised by the statute had been definitively addressed by the courts at that time. There was simply no authority. Plaintiffs, such as John Moore, were blindsided by the broad scope of actions and activities found to be protected under the statute as the case law developed. Indeed, John Moore's suit and the related appeal was a test case decided during this developmental phase of the law.

As noted, John Moore conscientiously identified the causes of action which were appropriate given the underlying dispute. The suit appeared to be one involving purely commercial interests which was specifically exempted from the application of the statute. TEX. CIV. PRAC. & REM. CODE § 27.010(b). When John Moore filed its lawsuit, it was impossible to envision the tortuous path that this case would ultimately take, much of it

13

caused by the Houston BBB's intransigence and unwillingness to take responsibility for the economic harm that its actions were causing for John Moore.

Given the newness of the statute, the unaddressed issues present at the time Moore filed its lawsuit, and the expansion of the activity covered under the statute as the case law progressed, Moore requests that the Court reduce the attorneys' fees in the interest of justice and equity. Moore requests that the award of attorneys' fees be reduced to a maximum of $72,413.50 in the interest of justice and equity.

### C. Sanctions Are Not Appropriate Here.

Under the Anti-SLAPP statute, the trial court has discretion to determine what amount is sufficient to deter the party from bringing similar actions in the future. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(2). John Moore, however, has not engaged in any course of action which needs to be deterred under the statute. The Houston BBB primarily relies on *Kinney v. BCG Attorney Search, Inc.* to support its contention that sanctions are appropriate in this matter. 2014 WL 1432012 at \*12 (Tex. App.—Austin, April 11, 2014, pet. filed). The Houston BBB's reliance is misplaced because John Moore has not engaged in the types of activity which were at issue in *Kinney*. John Moore has **not** brought a second lawsuit that violates the Anti-SLAPP statute. *Id*. at \*2. John Moore has **not** brought a second lawsuit that asserts non-viable claims. *Id*. at \*2.

John Moore has no history of continually bringing actions which assert nonviable claims for conduct protected by the Anti-SLAPP statute. *See Stromberger v. Turley Law Firm*, 315 S.W.3d 921, 924 (Tex. App.—Dallas 2010, no pet.) (finding that sanctions were appropriate based on a continued course of conduct over a two-year period). The

14

initial lawsuit filed by John Moore arguably asserted viable causes of action, particularly in light of the undeveloped state of the Anti-SLAPP statute. It was not John Moore's intention to bring multiple lawsuits. John Moore would have not filed a second suit were it not for The Houston BBB's actions.

Following the First Court of Appeals' decision, John Moore filed an amended petition in the first lawsuit which asserted causes of actions suggested by evidence gathered during discovery. On The Houston BBB's motion, the court struck the amended petition. Thus, The Houston BBB's actions forced Moore to assert these causes of action in a separate suit. It is self-serving for the Houston BBB to now complain that John Moore is a vexatious litigant, having forced John Moore into this position. In any event, this Court has recognized that the causes of action asserted in the second lawsuit are viable by virtue of its denial of The Houston BBB's Motion to Dismiss in that lawsuit.

Sanctions are also inappropriate for all of the reasons expressed in the previous section requesting a reduction in the amount of attorneys' fees in the interests of justice and equity.

As noted above, the trial court has broad discretion to determine what amount is sufficient to <u>deter</u> the party from bringing similar actions. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(2). John Moore's conduct does not approach the type of activity where sanctions might be appropriate. The facts demonstrate that deterrence should not be a concern in John Moore's case, and that sanctions are unnecessary.

15

Certified Document Number: 61880272 - Page 15 of 18

**D. There Is No Legally Sufficient Evidence to Support an Award of Expenses and the Houston BBB Waived the Issue by Failing to Obtain a Finding from the Jury.**

The Houston BBB did not request and did not obtain a finding as to the amount of "other expenses" incurred in this matter. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1) (allowing recovery of "other expenses"). When a party has the burden of proof on an issue, the party must submit a requested instruction to preserve the right to seek a recovery on the issue. *W.O. Bankston Nissan, Inc. v. Walters¸* 754 S.W.2d 127, 128 (Tex. 1988). The Houston BBB has the burden of proof to establish the amount of "other expenses" to be recovered under section 27.009(a)(1). Therefore, the Houston BBB has waived the determination of this issue. *Id.*

Even if the Houston BBB has not waived the question of the proper amount of "other expenses" to be awarded, it failed to present legally sufficient evidence in support of a finding. A successful party is only entitled to taxable costs. TEX. R. CIV. P. 151. First, it has not yet been determined whether the Houston BBB will be completely successful in this litigation such that it would be entitled to an award of costs because John Moore has claims remaining against the Houston BBB.

Second, it cannot be determined from the Houston BBB's evidence whether the costs and expenses it seeks are taxable. The only evidence of expenses is the Schedule admitted as Defendants' Exhibit 4. The Schedule lists the date, invoice number, and amount of various expenses and costs, but nothing indicates that the costs and expenses are taxable costs or expenses. TEX. CIV. PRAC. & REM. CODE § 37.007. Therefore, there is legally insufficient evidence to support an award of expenses.

16

Certified Document Number: 61880272 - Page 17 of 18

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC respectfully request that this Court consolidate Cause No. 2013-76215 with this Cause and set the remaining claims in the consolidated cases for a jury trial after an appropriate discovery period. Furthermore, Plaintiffs request that this Court, if it renders a judgment (whether interlocutory or final) for attorneys fees, expenses, and costs, disregard the findings of the jury and award fees only in a reduced amount (to a maximum of $72,413.50); deny or defer the question of costs and expenses; and deny the request for sanctions entirely. Plaintiffs also request all such other and further relief to which they may be justly entitled at law or in equity.

Respectfully submitted,

JOHNSON, TRENT, WEST & TAYLOR, LLP

By: _/s/ Lori Hood_

Lori Hood
Texas Bar No. 09943430
Brian P. Johnson
Texas Bar No. 10685700
Tamara Madden
Texas Bar No. 00783720
919 Milam Street, Suite 1700
Houston, Texas 77002
(713) 222-2323
(713) 222-2226 (*facsimile*)
lhood@johnsontrent.com
bjohnson@johnsontrent.com
tmadden@johnsontrent.com

17

## CERTIFICATE OF CONFERENCE

On this, the 7th day of August, 2014, the undersigned contacted Harris Stamey, counsel for the Better Business Bureau of Metropolitan Houston and was informed that the Defendant opposed this motion.

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record pursuant to Rule 21 and Rule 21(a) of the TEXAS RULES OF CIVIL PROCEDURE on this 7th day of August, 2014.

Jeffrey R. Elkin                                                                                    *Via ECF*
M. Harris Stamey
Porter Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

*/s/ Lori Hood*
LORI HOOD

346439.1-08052014

18

Certified Document Number: 61880272 - Page 18 of 18



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    April 20, 2015

Certified Document Number:        61880272 Total Pages:  18

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit L

CAUSE NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| *Defendants* | § | 269th JUDICIAL DISTRICT |

### NOTICE OF HEARING

Please take note that a hearing is to be held on **Friday, August 8, 2014 at 11:00 a.m.** in the above-styled case in open court before the 269th Judicial District Court on the 13th Floor of the Harris County Civil Courthouse to consider Defendants' Motion to Consolidate and Motion to Disregard the Findings of the Jury in Part.

Respectfully submitted,

JOHNSON, TRENT, WEST & TAYLOR, LLP

By: */s/ Lori Hood*

Lori Hood
Texas Bar No. 09943430
Brian P. Johnson
Texas Bar No. 10685700
Tamara Madden
Texas Bar No. 00783720
919 Milam Street, Suite 1700
Houston, Texas 77002
(713) 222-2323
(713) 222-2226 (*facsimile*)
lhood@johnsontrent.com
bjohnson@johnsontrent.com
tmadden@johnsontrent.com

Certified Document Number: 61880303 - Page 1 of 2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record pursuant to Rule 21 and Rule 21(a) of the TEXAS RULES OF CIVIL PROCEDURE on this 7th day of August, 2014.

Jeffrey R. Elkin                                          *Via ECF*
M. Harris Stamey
Porter Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002


                                        */s/ Lori Hood*
                                        LORI HOOD

346927.1-08072014

Certified Document Number: 61880303 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 20, 2015

Certified Document Number:        61880303 Total Pages: 2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



Exhibit M

**FILED**
Chris Daniel
District Clerk

AUG 08 2014

Time:_____
Harris County, Texas

By_____
Deputy

3/7/2014 4:44:32 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 662518
By: FULLER, LESLIE G

P.7
II A.

CAUSE NO. 2013-76215

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| Plaintiffs, | § | |
| V. | § | |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC.; THE | § | |
| BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON | § | |
| EDUCATION FOUNDATION; DAN | § | HARRIS COUNTY, TEXAS |
| PARSONS; CHRIS CHURCH; CHURCH | § | |
| ENTERPRISES, INC. A/K/A CHURCH | § | |
| SERVICES; GARY MILLESON; | § | |
| RONALD N. MCMILLAN; | § | |
| D'ARTAGNAN BEBEL; MARK GOLDIE; | § | |
| CHARLIE HOLLIS; and STEVEN | § | |
| LUFBURROW | § | |
| Defendants. | § | 269TH JUDICIAL DISTRICT COURT |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On this day came on to be considered Defendants The Better Business Bureau of Metropolitan Houston, Inc., The Better Business Bureau of Metropolitan Houston Education Foundation, Dan Parsons, Chris Church, Church Enterprises, Inc., Gary Milleson, Ronald N. McMillan, Mark Goldie, Charlie Hollis, and Steven Lufburrow's Motion to Dismiss the above-referenced case in its entirety ("Motion").✱ The Court, having reviewed the Motion, any response and reply thereto, the evidence presented, the pleadings on file, the arguments of counsel, and the applicable law, finds the Motion well taken and should be GRANTED in its entirety ✱ It is ⌐for all the reasons raised in the motion⌐ therefore,

ORDERED that, pursuant to Section 27.003 of the Texas Civil Practice and Remedies Code, all claims and causes of action brought by Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC are hereby DISMISSED with prejudice against refiling. It is further,

1

3644753

✱ The Court takes judicial notice that a Final Judgment was entered in Cause No. 2012-35162; John Moore Services, Inc. etal. v The Better Business Bureau of Metropolitan Houston, Inc. on August 8, 2014. A copy of the Final Judgment in that case is attached to this Order as Exhibit A.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Certified Document Number: 61943380 - Page 1 of 7

A scheduling conference to determine how to proceed on Defendants' claims for attorney's fees, expenses, and sanctions will be held at 9:00 a.m. on Friday, August 29, 2014 in the 269th District Court of Harris County, Texas.

ORDERED that, pursuant to Section 27.009(a)(1) of the Texas Civil Practices and Remedies Code, the Defendants The Better Business Bureau of Metropolitan Houston, Inc., The Better Business Bureau of Metropolitan Houston Education Foundation, Dan Parsons, Chris Church, Church Enterprises, Inc., Gary Milleson, Ronald N. McMillan, Mark Goldie, Charlie Hollis, and Steven Lufburrow shall recover from Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC their court costs, reasonable attorneys' fees, and other expenses incurred in defending against this lawsuit. The Court will determine the costs, attorneys' fees, and expenses to be awarded to Defendants by submission on _____, 2014, at 8 a.m., and Defendants are ordered to submit evidence in support of such recovery within 10 days prior to that date. It is further,

ORDERED that, pursuant to Section 27.009(a)(2) of the Texas Civil Practice and Remedies Code, monetary sanctions are imposed against Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC to be paid to Defendants The Better Business Bureau of Metropolitan Houston, Inc., The Better Business Bureau of Metropolitan Houston Education Foundation, Dan Parsons, Chris Church, Church Enterprises, Inc., Gary Milleson, Ronald N. McMillan, Mark Goldie, Charlie Hollis, and Steven Lufburrow. The Court will determine the amount of the monetary sanctions by submission on _____, 2014, at 8 a.m., and Defendants are ordered to submit argument and evidence in support of such recovery within 10 days prior to that date.

SIGNED this 11th day of August, 2014.

PRESIDING JUDGE

2

3644753

Certified Document Number: 61943380 - Page 2 of 7

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| Plaintiffs, | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| Defendant. | § | 269ᵀᴴ JUDICIAL DISTRICT COURT |

## FINAL JUDGMENT

On July 16, 2013, the First Court of Appeals entered judgment in the original interlocutory appeal of this cause in favor of the Defendant The Better Business Bureau of Metropolitan Houston, Inc. ("Houston BBB") finding reversible error in the trial court's order dated October 3, 2012. On February 14, 2014, the Texas Supreme Court denied Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC's (collectively "Plaintiffs" or "John Moore") petition for review. On April 4, 2014, the First Court of Appeals issued its mandate that this case should be dismissed and certified its judgment to this Court for observance.

On July 21, 2014, the Houston BBB remaining claim for attorney's fees was tried to a jury. Plaintiffs appeared by their representative and by their attorneys of record and announced ready for trial. The Houston BBB appeared by its representative and by its attorneys of record announced ready for trial. A jury consisting of twelve qualified jurors were duly empaneled, and the jury reached a verdict on July 22, 2014.

The Charge of the Court, Questions, Answers, and the Verdict Certificate are incorporated herein for all purposes. Consistent with the jury's findings, the Court renders judgment for the Houston BBB and against Plaintiffs for the following amounts:



1

3821737

(i) **$106,369.28** for representation in the trial court before and during Houston BBB's original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(ii) **$81,360.80** for representation in the Court of Appeals for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(iii) **$37,982.08** for representation in the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid; and

(iv) **$24,289.28** for representation in the trial court after the original interlocutory appeal was decided, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid.

Having considered the foregoing, the Defendant's Motion for Entry of Final Judgment, including attachments. the Plaintiffs' response, including attachments, if any, Defendant's reply, if any, the admissible evidence, the arguments of counsel, the pleadings on file, the evidence presented at trial, the jury's verdict, and the judgment of the First Court of Appeals, the Court is of the opinion that the Motion should be GRANTED in its entirety and that Final Judgment be entered. It is therefore,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc.'s Motion for Entry of Final Judgment and for Award of Court Costs, Expenses, and Sanctions against Plaintiffs is hereby GRANTED in its entirety. It is further;

2

3821737

ORDERED, ADJUDGED AND DECREED that Plaintiffs claims are DISMISSED IN THEIR ENTIRETY WITH PREJUDICE, and that Plaintiffs TAKE NOTHING on their claims. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. have and recover from Plaintiffs, whom shall be jointly and severally liable for such amounts, as a reasonable fee for the necessary services of Houston BBB's attorneys in defending against John Moore's legal action:

(i) **$106,369.28** for representation in the trial court before and during Houston BBB's original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(ii) **$81,360.80** for representation in the Court of Appeals for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(iii) **$37,982.08** for representation in the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid; and

(iv) **$24,289.28** for representation in the trial court after the original interlocutory appeal was decided, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid,

for a total of $250,001.44, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, and which, based on the evidence admitted and considered in this cause, the Court finds to be just and equitable. It is further,

3

3821737

Certified Document Number: 61943380 - Page 5 of 7

*take nothing on its claim for expenses.*

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. have and recover from Plaintiffs, whom shall be jointly and severally liable for such amount, $6,237.77, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, for the expenses incurred by the Houston BBB in defending against this legal action, an amount which, based on the evidence admitted and considered in this cause, the Court FINDS to be just and equitable. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. recover from Plaintiffs, whom shall be jointly and severally for such amounts, ~~$415,000.00~~ *$6,000.00*, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, as sanctions under Texas Civil Practice and Remedies Code § 27.009(a)(2). The Court finds that Plaintiffs brought this lawsuit to deter or prevent Defendant from exercising its right of free speech, that Plaintiffs have brought a subsequent lawsuit (Cause No. 2013-76215) for the same improper purpose. The Court takes judicial notice of all of the papers filed and proceedings in connection with Cause No. 2013-76215. In consideration of the above, including the award to Defendant of attorney's fees in this lawsuit, and all of the evidence admitted and considered in this cause, the Court finds a sanction against Plaintiffs under Section 27.009(a)(2) in the amount of ~~$415,000~~ *$6,000.00* is directly related to Plaintiffs' improper conduct and to be appropriate, sufficient, and necessary to deter Plaintiffs from bringing similar actions described by Chapter 27 of the Texas Civil Practice and Remedies Code, and that lesser sanctions would be insufficient. It is further,

ORDERED, ADJUDGED AND DECREED that all costs of court expended or incurred in this cause are hereby taxed against Plaintiffs, who shall be jointly and severally liable for

4

Certified Document Number: 61943380 - Page 6 of 7

3821737

such amount, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid.

The Court orders execution to issue for this judgment.

**THIS IS A FINAL JUDGMENT. ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.**

SIGNED this 8th day of August, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

PORTER HEDGES LLP

By:___/s/ Jeffrey R. Elkin_____
Jeffrey R. Elkin, SBN 06522180
M. Harris Stamey, SBN 24060650
1000 Main Street, 36th Floor
Houston, Texas 77002-6336
Telephone: (713) 226-6617
Telecopier: (713) 226-6217
jelkin@porterhedges.com
mstamey@porterhedges.com

ATTORNEYS FOR DEFENDANT

5

3821737

Certified Document Number: 61943380 - Page 7 of 7



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    April 20, 2015

Certified Document Number:        61943380 Total Pages:  7

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Exhibit N

CAUSE NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC., | § | |
| | § | |
| *Defendant.* | § | 269th JUDICIAL DISTRICT |

## CHARGE OF THE COURT

**Members of the Jury:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict   You may discuss the case with other jurors only when you are all together in the jury room

Remember my previous instructions  Do not discuss the case with anyone else, either in person or by any other means.   Do not do any independent investigation about the case or conduct any research.   Do not look up any words in dictionaries or on the Internet.  Do not post information about the case on the Internet   Do not share any special knowledge or experiences with the other jurors   Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use.  You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations.  Your notes are not evidence.   Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating.  The bailiff will give your notes to me promptly after collecting them from you.  I will make sure your notes are kept in a safe, secure location and not disclosed to anyone.   After you complete your deliberations, the bailiff will collect your notes.  When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

CONFIRMED FILE DATE: 7/22/2014

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**FILED**
Chris Daniel
District Clerk

JUL 2 2 2014

Time:_____
Harris County, Texas
By_____
Deputy

1

108

## I. Instructions for Answering the Questions

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "Yes" or "No" to all questions unless you are told otherwise. A "Yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless you are told otherwise.

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

   A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

2

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## II. DEFINITIONS

As used in this Charge, the following words have the following meanings:

1) "Houston BBB" means The Better Business Bureau of Metropolitan Houston, Inc.

2) "John Moore" means John Moore Services, Inc and John Moore Renovations, LLC.

3

## III. QUESTIONS

### Question No. 1

What is a reasonable fee for the necessary services of Houston BBB's attorneys in defending against John Moore's legal action, stated in dollars and cents?

You are instructed that the following factors should be considered when determining the amount of attorneys' fees:

a.  the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

b.  the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

c   the fee customarily charged in the locality for similar services;

d.  the amount involved and the results obtained;

e.  the time limitations imposed by the client or the circumstances;

f.  the nature and length of the professional relationship with the client,

g   the experience, reputation and ability of the lawyer or lawyers performing the services; and

h.  whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

a.  For representation in the trial court before and during Houston BBB's original interlocutory appeal.

Answer: $ _106,369.28_

b.  For representation in the Court of Appeals for the original interlocutory appeal.

Answer: $ _81,360.80_

c.  For representation at the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal.

Answer: $ _37,982.08_

4

111

d.    For representation in the trial court after the original interlocutory appeal was decided.

Answer: $ 24,289.28

e.    For representation after this trial in the Court of Appeals.

Answer: $ Ø

f.    For representation after this trial at the petition-for-review stage in the Supreme Court of Texas.

Answer: $ Ø

g.    For representation after this trial at the merits-briefing stage in the Supreme Court of Texas.

Answer: $ Ø

h.    For representation after this trial through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer. $ Ø

5

112

## IV. INSTRUCTIONS REGARDING THE PRESIDING JUROR

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror

2. The presiding juror's duties are to:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations—meaning to manage the discussions and see that you follow these instructions;

   c. give written questions or comments to the bailiff, who will give them to the judge;

   d. write down the answers on which you agree;

   e. get the signatures for the verdict certificate, and

   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## V. INSTRUCTIONS FOR SIGNING THE VERDICT CERTIFICATE

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

3. If 11 jurors agree on every answer, those 11 jurors sign the verdict.

4. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

5. All jurors should deliberate on every question You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

Hon Dan Hinde
Judge, 269th District Court

6

113

## CERTIFICATE

We, the jury, have answered the foregoing questions as indicated and return our answers into court as our verdict.

I certify that the jury was unanimous in answer to the following questions:

Answer "All" or list question, including subparts:  _**All**_

_Clyde E. Coxie Jr_
Juror Presiding

_CLyDE E. CoxiE JR._
Printed Name of Juror Presiding

If the answers to some questions were not unanimous, the jurors who agreed to those answers must certify as follows.

We agree to the answers to the following questions:

List questions, including subparts: _____

| | SIGNATURE | NAME PRINTED |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| 11. | | |

7

114



Exhibit O

| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| Plaintiffs, | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | |
| Defendant. | § | 269TH JUDICIAL DISTRICT COURT |

## FINAL JUDGMENT

On July 16, 2013, the First Court of Appeals entered judgment in the original interlocutory appeal of this cause in favor of the Defendant The Better Business Bureau of Metropolitan Houston, Inc. ("Houston BBB") finding reversible error in the trial court's order dated October 3, 2012. On February 14, 2014, the Texas Supreme Court denied Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC's (collectively "Plaintiffs" or "John Moore") petition for review. On April 4, 2014, the First Court of Appeals issued its mandate that this case should be dismissed and certified its judgment to this Court for observance.

On July 21, 2014, the Houston BBB remaining claim for attorney's fees was tried to a jury. Plaintiffs appeared by their representative and by their attorneys of record and announced ready for trial. The Houston BBB appeared by its representative and by its attorneys of record announced ready for trial. A jury consisting of twelve qualified jurors were duly empaneled, and the jury reached a verdict on July 22, 2014.

The Charge of the Court, Questions, Answers, and the Verdict Certificate are incorporated herein for all purposes. Consistent with the jury's findings, the Court renders judgment for the Houston BBB and against Plaintiffs for the following amounts:

1

3821737

115

RECORDER'S MEMORANDUM
This instrument is of poor quality at the time of imaging

(i)    **$106,369.28** for representation in the trial court before and during Houston BBB's original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(ii)   **$81,360.80** for representation in the Court of Appeals for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(iii)  **$37,982.08** for representation in the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid; and

(iv)   **$24,289.28** for representation in the trial court after the original interlocutory appeal was decided, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid.

Having considered the foregoing, the Defendant's Motion for Entry of Final Judgment, including attachments, the Plaintiffs' response, including attachments, if any, Defendant's reply, if any, the admissible evidence, the arguments of counsel, the pleadings on file, the evidence presented at trial, the jury's verdict, and the judgment of the First Court of Appeals, the Court is of the opinion that the Motion should be GRANTED in ~~its entirety~~ *in part* and that Final Judgment be entered. It is therefore,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc.'s Motion for Entry of Final Judgment and for Award ~~of Court~~ *in part* Costs, Expenses, and Sanctions against Plaintiffs is hereby GRANTED in ~~its entirety~~ It is further;

2

3821737

ORDERED, ADJUDGED AND DECREED that Plaintiffs claims are DISMISSED IN THEIR ENTIRETY WITH PREJUDICE, and that Plaintiffs TAKE NOTHING on their claims. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. have and recover from Plaintiffs, whom shall be jointly and severally liable for such amounts, as a reasonable fee for the necessary services of Houston BBB's attorneys in defending against John Moore's legal action:

(i) **$106,369.28** for representation in the trial court before and during Houston BBB's original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(ii) **$81,360.80** for representation in the Court of Appeals for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid;

(iii) **$37,982.08** for representation in the petition-for-review stage to the Supreme Court of Texas for the original interlocutory appeal, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid; and

(iv) **$24,289.28** for representation in the trial court after the original interlocutory appeal was decided, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid,

for a total of $250,001.44, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, and which, based on the evidence admitted and considered in this cause, the Court finds to be just and equitable. It is further,

3

3821737

*take nothing on its claim for expenses.*

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. have and recover from Plaintiffs, whom shall be jointly and severally liable for such amount, $6,237.77, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, for the expenses incurred by the Houston BBB in defending against this legal action, an amount which, based on the evidence admitted and considered in this cause, the Court FINDS to be just and equitable. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant The Better Business Bureau of Metropolitan Houston, Inc. recover from Plaintiffs, whom shall be jointly and severally for such amounts, $6,000.00 $415,000.00 plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid, as sanctions under Texas Civil Practice and Remedies Code § 27.009(a)(2). The Court finds that Plaintiffs brought this lawsuit to deter or prevent Defendant from exercising its right of free speech, that Plaintiffs have brought a subsequent lawsuit (Cause No. 2013-76215) for the same improper purpose. The Court takes judicial notice of all of the papers filed and proceedings in connection with Cause No. 2013-76215. In consideration of the above, including the award to Defendant of attorney's fees in this lawsuit, and all of the evidence admitted and considered in this cause, the Court finds a sanction against Plaintiffs under Section 27.009(a)(2) in the amount of $6,000.00 $415,000 is directly related to Plaintiffs' improper conduct and to be appropriate, sufficient, and necessary to deter Plaintiffs from bringing similar actions described by Chapter 27 of the Texas Civil Practice and Remedies Code, and that lesser sanctions would be insufficient. It is further,

ORDERED, ADJUDGED AND DECREED that all costs of court expended or incurred in this cause are hereby taxed against Plaintiffs, whom shall be jointly and severally liable for

4

3821737

118

such amount, plus post-judgment interest thereon, at the statutory rate of 5% per annum until paid.

The Court orders execution to issue for this judgment.

**THIS IS A FINAL JUDGMENT. ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.**

SIGNED this 8th day of August, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

PORTER HEDGES LLP

By:___/s/ Jeffrey R. Elkin_____
Jeffrey R. Elkin, SBN 06522180
M. Harris Stamey, SBN 24060650
1000 Main Street, 36th Floor
Houston, Texas 77002-6336
Telephone: (713) 226-6617
Telecopier: (713) 226-6217
jelkin@porterhedges.com
mstamey@porterhedges.com

ATTORNEYS FOR DEFENDANT

5

3821737

119